## Pre-Disciplinary Interview Cover Sheet

Employee: Eric Poweleit                           Date: 4/29/21

EIN: 03611244

---

Location: Loveland Post Office

Interviewer: Bryan Mulholland        Title: Supervisor

Representative present: Carla Dedden        Title: Union Rep Rural

Others present: Eric (Jamie) Poweleit

---

This meeting is an Pre-Disciplinary Investigative Interview. I am advising you that the results of this interview may lead to corrective action and/or disciplinary action up to and including, Removal from the Postal Service.

This meeting is an Investigative Interview giving you your Due Process rights for the charge:

_Threats being made_

Do you know the term "Due Process" and understand its meaning? It can be simplified to mean that this is your day in court, your opportunity to discuss the issue stated above.

1. NAME: Janie Poweleit

2. On ~~xxxx~~ 4/3/21 were you assigned to Rt 02?
   Yes I was

3. Are you aware of the Postal Service
Zero Tolerance Policy?
   Yes, I've tried to take advantage of it numerous times.

4. The Zero Tolerance Policy ~~xxxxx~~ is based
on the belief that NO employee should have
to work in an atmosphere of fear and
intimidation. Why on April 3, 2021 did you
state to another employee that "you were going
to "Burn this mother fucker to the ground"
and take everybody down," with management
being the first to go?

          Never said any of that.

5. Zero Tolerance means that every act
or Threat of Violence, regardless of the initiato
Also on April 3, 2021, you made statements
of Harrasment to another employee while on
the work room floor, Causing that employee
to engauger management to stop your commer
and actions, why did you continue your
actions toward that employee causing
mental harm to them?

I have no ~~idea~~ idea which employee or
instance you are reffering to so I do
not have a response.

6. On April 14, 2021 the postal Inspectors
made a visit to you, they spoke to you
and also told you that it was not
adviseable to have contact with other
employers. After being told this you have
made Contact with them. Please explain
You actions? They didn't tell me I couldn't
talk to other employees. I was never told I couldn't

00177

to the post office that I was being placed on Ef

7. On 4/5/2021 employees reported eratic behaviur from you. Staring, Laughing, being Combative ~~with~~ when speaking to them. ~~Please~~ explain your actions?

I was not. I was humilated in front of my office by my Post Master.

8. On ~~the multiple~~ Occasions ( 3 different manag
Management spoke to you during your
altercations with other employees. You, as
Well as the other employees, were instructed
to work in your cases quietly. Why on
4/3/21, & 4/5/21 did you fail to properly
Conduct yourself within the zero tolerance
Policy?

Neither time was I given a
direct order.

Affidavit B
Page 75 of 146

9. Management has offered you EAP Prior, would you like EAP Now?

No

10. On April 14, 2021 an ~~Imip team~~ Imip team was here at the Loveland Post office, why did you stand at the door way to the Conference room to argue with witnesses' coming out of the Imip investigation?

I didn't. I saw Winnie here and asked her what she was doing here. That was it.

11. Do you have anything to add about the above questions?

I would like to get examples of the alleged situations at some point in time so that I can have the opportunity to defend myself. I have not been given the opportunity to defend myself once.

Start Time: 5:30    End Time: 5:42

Interviewer: Bryan Mulholland          4/29/2021

Union Representative: Carla Dedden

Employee:

Jessica Maggard
Concurring Official



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET ~~FOR STEP 1 MEETING~~

**Question Number**

1  Q  What is your name and position with USPS? Why were you concurring official?

A  Jessica Maggard - P/M Waynesville
I was OIC at Loveland at time of request for discipline.

2  Q  Who was the issuing official?
Bryan Muhlholland  Supervisor

A  ↓ Customer service

3  Q  Did you instruct him on what level of discipline to request?

A  N/A

Postmaster/Designee  Jessica Maggard    Date 6/4/21

Union Steward  Carla B Dedden    Date 6/4/21

Page 1 of 5

cc: file

00182



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

4

Q Did higher authority instruct you to concur with Bryan Muhlholland's request for a removal?

A No

Q What evidence and information did you review before you determined to concur? Did this evidence provide needed info for you to concur.

A I reviewed the following:
IMIP Report, employee statements, prior management statements, + PDI, Yes it Did.

Q Did you participate in the investigation?

A Not investigation itself until I received request from discipline from issuing authority (Supv.) Brian Muhlholland.

Postmaster/Designee _Jessica Maggard_ Date 6/4/21

Union Steward _Carla B Delder_ Date 6/4/21

Page 2 of 5

cc: file

00183

Affidavit B
NRLCA September 2007
Page 79 of 146

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET ~~FOR STEP 1 MEETING~~

Question
Number

Q Did you participate in the PDI?

A No

Q Did DIG or anyone instruct you to concur with the request for removal?

A No

Q Did you conduct investigation of your own?

A Only after I received request for discipline by issuing discipline supervisor, Bryan Muhlholland.

Postmaster/Designee _Jessica Maggard_   Date _6/4/21_

Union Steward _Carla B Dedden_   Date _6/4/21_

Page _3_ of _5_

cc: file

00184

Affidavit B
Page 80 of 146
NRLCA September 2007



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET ~~FOR STEP 1 MEETING~~

**Question Number**

10

Q Can you explan how removal of grievant is corrective and not punitive?

A Employee been given numerous adventures to correct their actions (discussions, EAP etc.) but has failed to work accordingly to Code of Ethics required by USPS & Zero tolerance policy.

11

Q Was the discipline progressive.

A No

12

Q How many LWOP days because of E/P was taken by grievant?

A 2 Weeks

Postmaster/Designee _Jessica Maggard_ Date _6/4/21_

Union Steward _Carla B Dedde_ Date _6/4/21_

Page 4 of 5

cc: file

Affidavit B
NRLCA September 2007
Page 81 of 146

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET ~~FOR STEP 1 MEETING~~

**Question Number**

**13**

Q  Did you put grievant on admin pay after two weeks on LWOP?

A  Yes

**14**

Q  Is grievant receiving the additional 30 Calendar days (5 days/week) as removal states?

A  Yes!

**15**

Q  According to your answers above, is grievant reasoning a total of 6 weeks admin leave pay?

A  Yes

Postmaster/Designee  _Jessica Maggard_   Date  6/4/21

Union Steward  _Carla B Dehler_   Date  6/4/21

Page 5 of 5

cc: file

00186

Affidavit B
Page 82 of 146

Eric Poweleit (Jamie) signed the PDI as Jamie Poweleit.

Eric (Jamie) was asked by Jessica Maggard (OIC at Loveland) to please write a statement saying my name is still Eric Poweleit but I go by Jamie Poweleit. I have not legally changed my name from Eric Poweleit to Jamie Poweleit. Also, I have not changed my name with the USPS.

The enclosed two statements are what were sent to management.

Management at the United States Postal Service
have been aware of my transgender female status, as
Well as my name that matches my identity, Jamie,
Since the begining of my transition. Management
Knew of my gender identity before they were ever
told by me. My depression had come to the point
of suicidal wishes as I was coming out as myself, to
those close to me, about my transgender status. In December
of 2019 I decided to go the hospital for my depression
because I didn't want to feel like I wanted to die anymore.
After a month inpatent/outpatient care, I started preparing
for my transition but ultimately never got to tell the
world who I was because my Supervisor Ali Herrera
exposed my medical information to my workplace traumatizing
me, I subsequently filed for another month of FMLA protection
due to my trauma.

My current Postmaster Jessica Maggard was also
Postmaster at the time of this occurence. She was also
aware Ali had ruined my life, but at said time
she told me not to worry because Ali wouldn't be
there when I returned. I'm not sure if the trauma
aknowledged by Jessica was investigated but I do know
my life was ruined by this illegal incident, yet he
still has a job and comes to my office to stare at me
when he can. Furthermore Postmaster Maggard addressed
my office in January 2020 about my transgender status
so I would be treated respectfully at work.
In August of 2020 I began presenting my true
self to work after starting my medical transition in June.
Many including management refused to address me properly,
Some still do to this day. As of April 6th 2021,
my Postmaster Jessica Maggard still referenced

me as Eric. My name is not legaly changed, I do
still deserve the same respect others get being called
the names they wish. At every point the Postal Service has
needed my legal name they have respectfully asked
me to sign accordingly without objection from me.

Eric (Jamie) Poweleit

4-30-2021

Management at the United States Postal Service have been aware of my transgender female status, as well as my name that matches my identity, Jamie, since the begining of my transition. Management knew of my gender identity before they were ever told by me. My depression had come to the point of suicidal wishes as I was coming out as myself, to those close to me, about my transgender status. In December of 2019 I decided to go the hospital for my depression because I didn't want to feel like I wanted to die anymore. After a month inpatient/outpatient care, I started preparing for my transition but ultimately never got to tell the world who I was because my Supervisor Ali Herrara exposed my medical information to my workplace traumatizing me, I subsequently filed for another month of FMLA protection due to my trauma.

My current Postmaster Jessica Maggard was also Postmaster at the time of this occurence. She was also aware Ali had ruined my life, but at said time she told me not to worry because Ali wouldn't be there when I returned. I'm not sure if the trauma aknowledged by Jessica was investigated but I do know my life was ruined by this illegal incident, yet he still has a job and comes to my office to stare at me when he can. Furthermore Postmaster Maggard addressed my office in January 2020 about my transgender status so I would be treated respectfully at work.

In August of 2020 I began presenting my true self to work after starting my medical transition in June. Many including management refused to address me properly, some still do to this day. As of April 6th 2021, my postmaster Jessica Maggard still referenced

me as Eric. My name is not legally changed, I do still deserve the same respect others get being called the names they wish. I have used my name Jamie on many forms and notices for the last nine months. At any point the Postal Service has needed my legal name, they have respectfully asked me to sign accordingly without objection from me.

On 4-29-21 I came in for my third round of accusatory questions, also known as a pre disciplinary interview. Before the first accusation was directed towards me, my supervisor Brian Mulholland asked my name, I told him Jamie Poweleit, he aknowledged me as Jamie & proceeded with his accusations. I was once again questioned without any chance to understand the allegations against me. No situations the Postal Service are accusing me of have been presented to me. I've only been asked why I did things I never did. As of 5-1-21 I still havent been provided the opportunity to defend myself. In the 4-29-21 accusation meeting I signed my name Jamie on the handwritten forms Brian was writing on. If these were legal documents, they did not look the part nor was I informed by my Supervisor, like I have been in the past.

Eric (Jamie) Poweleit

5-1-2021

Affidavit B
Page 87 of 146

I was made aware of a lock being installed on women's restroom. When I asked carrier's "why"? Connie Ernst said "ERIC POWLETT (Jamie James) said I complained about him using womens restroom, I never said this. I wasnt even here then another carrier said "Paul Glendin" & Sammy were also saying this. This ~~wokes~~ slandering of accusations must stop! I went to Jessica Maggard at once to clear this up! My supervisor Larry Mahoney asked me to write a statement reguarding todays events! I knew nothing about a lock said nothing. People are trying to intentionally cause a workroom conflict & "I dont like it at all" not in these trying times. If we need to get Union involved or attorney please advise me in advance.

Jacquli K Braden

Management statements:

Affidavit B
Page 89 of 146

**Maggard, Jessica L - Waynesville, OH**

| | |
|---|---|
| **From:** | Herrera, Ali X - Erlanger, KY |
| **Sent:** | Saturday, May 8, 2021 6:08 AM |
| **To:** | Maggard, Jessica L - Waynesville, OH |
| **Subject:** | Statement for Jamie |

**Importance:** High

I was working in Loveland in 2019 as the 204B on duty during the time that Jamie (R002) was out on leave. Jamie did not request leave, but her wife called and informed me that she would not be coming to work and was not able to provide any information as to why Jamie could not come to work or how long she would be out. I attempted to call Jamie multiple times and left voicemails each time, but she never responded or reached back out. Her substitute carrier, Sammy, informed me that he had been in contact with her and that she was okay. I asked Sammy to have Jamie call me so we could discuss when she would be returning to work.

After a couple of weeks, Jamie had still not contacted me or informed me when she would be returning. A few employees started coming to me and showed me Facebook photos of Jamie, who at the time identified as Eric (he/him), wearing women's clothes. Each time, I immediately told the carriers to put their phones away and to stop bringing it up and sharing the photo. I told them that I did not want to see the photos or hear any rumors about what was happening. I tried to keep Jamie's personal information private and keep things as professional as possible.

I continued to schedule Sammy in place of Jamie to cover her route as I waited for her to contact me. Every time someone asked why Jamie was not back to work or asked any question about her situation, I responded with "I do not know, and I have no idea when Eric (now Jamie) will be back." As this situation was unfolding, I was in the process of transferring to the Hamilton office. Jamie did not contact me and did not return to work until after I had left the Loveland office.

Sincerely,

Ali Herrera

Supervisor Customer Service

Erlanger KY 41018

1

00194

Affidavit B
Page 90 of 146

Jessica Maggard (OIC) notes:

(3)

Employee Poweleit has brought in facebook posts from employees pages to Confront them about their transphobic beleifs.

Employee Poweleit has asked PM Jessica Maggard to ask people (other employees) to stop beleiving in their homophobi transphobic beleifs. That they have hatered in their hearts and they don't have the rights to beleive that way any longer.

Employee Poweleit has asked for her own bathroom. When management tried to be all inclusive with the bathroon facilities

Employee Poweleit asked for her own position to be a training employee far all LBGTQ employees.

Employee Poweleit makes statements and then doesn't know what was said. She gets mad to the point of no one calming her down and lashes out at whoever is near her at the time.

Affidavit B
Page 92 of 146

combative behavior. Eric (Jamie) was standing at her case, not working, yelling at me and calling me transphobic. I asked her again to get in her case and work quietly. She stepped back out of the case and told me I couldn't treat them like this. that I embarassed her infront of everyone. I asked her again to quit being loud and combative. She turned around picked up her things and announced to the whole office yelling that we were discriminating against her. I walked closer to her case, she said because she was transgender that we were doing all this. I explained to her it had nothing to do with her being transgender. It was because of her improper conduct and not following instruction. She yelled she was sick and she was leaving for the day. I asked her to fill out a 3971, she ignored me and kept walking, I asked if she is failing to follow management instruction? She stated she never filled them out before. I stated she had and needed to be filled out so she could be paid correctly. She filled out the 3971 and threw it on the floor. As she was walking out she yelled to the workroom floor that it was her birthday and thanks for all the Birthday wishes" It had been a great Birthday thanks to all of us transphobic people." Eric (Jamie) left the office. I was also approached shortly after by Jacquie Allen a clerk who had been on vacation, and was asked if her

On 4/6/21 Carla Dedden the Rural Union
Steward appraoched me when I arrived at work
Asked me about having a meeting with
Eric (Jamie) and her. I stated sure and
All 3 of us went to my office. Eric (Jamie) again
wanted to ask questions about the bathroom
facilities. asking for names of Employees and
threating Osha on me. She accused me of
following transphobic beleifs of other employers.
Eric (Jamie) stated she wanted her own bathroom
(family) facility installed, She became very verbally
abusive to the point I had to stop the meeting
and return her to her case to complete her Job
for the day.

Apon going through the Postmasters desk at
the loveland Post Office I was made aware that
this behavior from Eric (Jamie) had escalated. There
was previous statements made months prior. ~~made~~ JM.
~~made~~ ~~made~~ ~~made~~ ~~made~~
Management ~~due~~ ~~JM~~ held a Pdi with (Jamie) Eric on 4-29-21
after placing Eric (Jamie) on Emergency placement
on 4-14-21. Eric (Jamie) signed the PDI has Jamie
which is not her Employee mame. I requested
Carla dedden to have Eric (Jamie) write a statement
that he infact signed her PDI. as. Jamie

Email and her statement is enclosed as well.
Along with the other statements found by
A/Postmaster Jessica Maggard from prior.

Affidavit B
Page 95 of 146

Held a Service talk this morning. Explained
to Rural, City and Clerks about the Locks
on the Bathroom / Locker rooms. Told all Employe
about both Rooms now being uni-sex and that
the locker rooms will be locked if someone
decides to change. I also stated the the
inner doors to the Bathroom stalls may also
be used if you did not want to use the
outter door lock. This way each person could
make a decision on which they would like
to do. I also spoke about reverses, stop
the clock the scans, gas cards, and scanners.

Jamie was there for this meeting. She
started to aggresivley argue on the floor
again about the bathroom / Lockeroom situation.
I explained to the whole meeting why the
Locks had to go on the Doors, and that
it is now a uni-sex facility the locks
were installed for privacy due to the Changing
Rooms. No other employee had an

or statements at the time when I asked it
there were any.

Jessica Maggard

Notice of Removal letter was sent via certified mail and signed for via PS 3811.

LOVELAND POST OFFICE
OHIO VALLEY DISTRICT

**UNITED STATES**
**POSTAL SERVICE**

May 17, 2021

NOTICE OF REMOVAL                                        rem: hdp

ERIC POWELEIT
18 MIAMIVIEW DR
LOVELAND, OHIO 45140

RURAL CARRIER                    Certified #: 7020 1810 0001 3430 5551
EMPLOYEE IN: 03611244            Tracking #: 9505 5161 5858 7138 5005 32

You are hereby notified that you will be removed from the United States Postal Service no
sooner than 30 days from the receipt of this notice. The reason for this action is:

## IMPROPER CONDUCT

You have received training and instructions on the Postal Service's policy on Zero Tolerance.
Contrary to these instructions and training, you have violated the Postal Service's policy on
Zero Tolerance.

Charge #1:
On April 3, 2021 you were involved in a verbal confrontation with another employee. You
were told more than once by management to "break it up". Also, you made the threatening
statement that you were going to "burn this mother fucker to the ground" and that you were
"going to take everybody down, naming management as the first to go".

Charge #2:
On April 5, 2021 you were on the workroom floor, yelling at management, calling them
transphobic. You were instructed by management to quit yelling and work quietly in your
case. You failed to follow this instruction. You continued to be loud and combative with
your voice. You claimed that you were sick and that you were leaving. I instructed you fill
out a 3971. You refused at first but then did fill one out and threw it on the floor as you
walked by the supervisors desk yelling "thanks for all the birthday wishes, it had been a great
birthday thanks to all of us transphobic people".

Your actions are a direct violation of the  Joint Statement of Violence in the workplace (Zero
Tolerance policy, JSOV).

Your improper conduct while performing your duties constitutes a violation of USPS
Standards of Conduct as expressed in the **Employee and Labor Relations Manual (ELM).**

**ELM Section 665.13 Discharge of Duties**
Employees are expected to discharge their assigned duties conscientiously and effectively.
DISC

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## REQUEST FOR INFORMATION

DATE: May 26, 2021

CERTIFIED MAIL # Hand Delivered            >>>>>>>>>>>>>>>
Return Receipt Requested

RE: Eric Poweleit - Grievance #45140-LS-3-2

POSTMASTER: Brenda Schubert

CITY: Loveland                          ZIP: 45140

Dear Sir/Madam:

Under Article 17.3 and Article 31.2 of the USPS/NRLCA National Agreement, the National Rural Letter Carriers' Association requests all written and electronic records, documents, files, and materials in the possession of, or under the control of, the United States Postal Service pertaining to this case, including evidence of who made the decision, and whether there was review and concurrence under Article 16.6 of the USPS/NRLCA National Agreement, if this is a suspension or removal issue.

Please include all personal notes and files of all USPS Personnel, Postal Inspectors and Special Agents of the Inspector General, that are in the possession of, or under the control of, The United States Postal Service.

We make this request for the purpose of administering the Collective Bargaining Agreement, and resolving the grievance at the lowest possible step.

Specifically requested, but not to the exclusion of also receiving all other records, files, documents, materials, and other pertinent information, are the following:

PS4240 - Copies of Originals for PP 9 to present
PS1314 - For Eric Poweleit from PP 9 to present
Statements written by employees of the Loveland
  Post Office used for Removal Issued
Any other Paperwork, Letters, or E-mails which
  were utilized for Removal Issued
Copy of Notice of Removal for Eric Poweleit
Copy of Request for Discipline Showing Review
  and Concurrence

PDI used to Determine Removal
Postal Inspectors Investigation Paperwork
PS Form 50 for Grievant
Any Managerial Notes used for Removal

In order to have sufficient time to prepare for the next step of the Grievance procedure, I would appreciate receiving this information no later than the close of business, on 5/29/21.

Send to:

Carla B. Dedden
742 Wards Corner Road
Loveland, OH 45140

Respectfully,

*Carla B. Dedden*

Local Steward
National Rural Letter Carriers' Association

cc: File

00204

Affidavit B
Page 100 of 146

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## REQUEST FOR INFORMATION

DATE: May 26, 2021

CERTIFIED MAIL #   Hand Delivered                     >>>>>>>>>>>>> *OH 45140*
                      Return Receipt Requested                       ROUND DATE THIS FORM HERE

RE:   Eric Poweleit - Grievance #45140-LS-3-2

POSTMASTER:   Brenda Schubert

CITY:  Loveland                                 ZIP:  45140

Dear Sir/Madam:

Under Article 17.3 and Article 31.2 of the USPS/NRLCA National Agreement, the National Rural Letter Carriers' Association requests all written and electronic records, documents, files, and materials in the possession of, or under the control of, the United States Postal Service pertaining to this case, including evidence of who made the decision, and whether there was review and concurrence under Article 16.6 of the USPS/NRLCA National Agreement, if this is a suspension or removal issue.

Please include all personal notes and files of all USPS Personnel, Postal Inspectors and Special Agents of the Inspector General, that are in the possession of, or under the control of, The United States Postal Service.

We make this request for the purpose of administering the Collective Bargaining Agreement, and resolving the grievance at the lowest possible step.

Specifically requested, but not to the exclusion of also receiving all other records, files, documents, materials, and other pertinent information, are the following:

PS4240 - Copies of Originals for PP 9 to present          PDI used to Determine Removal
PS1314 - For Eric Poweleit from PP 9 to present           Postal Inspectors Investigation Paperwork
Statements written by employees of the Loveland           PS Form 50 for Grievant
  Post Office used for Removal Issued                      Any Managerial Notes used for Removal
Any other Paperwork, Letters, or E-mails which
  were utilized for Removal Issued
Copy of Notice of Removal for Eric Poweleit
Copy of Request for Discipline Showing Review
  and Concurrence

In order to have sufficient time to prepare for the next step of the Grievance procedure, I would appreciate receiving this information no later than the close of business, on 5/29/21.

Send to:

Carla B. Dedden
742 Wards Corner Road
Loveland, OH  45140

Respectfully,

*Carla B Dedden*

Local Steward
National Rural Letter Carriers' Association          00205

LOVELAND OH 45140
Received
MAY 27 2021
USPS

5/27/2021



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## AUTHORIZATION AND RELEASE
## OF INFORMATION AGREEMENT

This constitutes my consent and authorization to the disclosure and/or furnishing of any relevant and necessary information and/or records to _Carla Derden_ STEWARD of the _Ohio_ RURAL LETTER CARRIERS' ASSOCIATION, by any person, corporation, agency, or association concerning my personal history, medical history, employment, or any other matter relevant and necessary for reaching a conclusion to the grievance filed.

This authorization and release is executed with full knowledge and understanding that the _Ohio_ RURAL LETTER CARRIERS' ASSOCIATION will take measures to protect the aforementioned information against unauthorized disclosure to any parties not having a legitimate need for it in the discharge of the official business of processing grievances.

I hereby RELEASE the aforementioned person, Association, and/or its representative(s) from any and all liability for damages of any kind or nature which may at any time result to me on account of compliance, or any attempts at compliance with this authorization, except for damages resulting from knowingly providing false or misleading information or records about me.

A copy of this authorization shall be as effective and valid as the original.

4/17/2021
Date

Eric (Jamie) Poweleit
Grievant's Name

Grievant's Signature

GRIEVANT'S ADDRESS: 18 Miamiview dr

CITY / STATE / ZIP CODE: Loveland OH 45140

TELEPHONE NUMBER: 513-600.2915

EMPLOYEE ID NUMBER: 244

EMERGENCY CONTACT NAME: ███

TELEPHONE NUMBER: 513-███

45140-65-3.2

cc: Grievant
File

NRLCA/September 2007

**UNITED STATES POSTAL SERVICE ®**   4540-LS-3-2   **USPS-NRLCA Joint Step 1 Grievance Form**

| 1a. Grievant's Name (Last, first, middle Initial)<br>Poweleit, Eric J. | | 1b. Grievant's EIN (Employee Id Number)<br>████ 1244 |
|---|---|---|
| 1c. Grievant's Title, Designation Code, and Route No.<br>Rural Carrier  Des/Act 71-0  RR 02 | | 1d. Telephone No. (include area code)<br>513-600-2915 |
| 1e. Grievant's Mailing Address<br>18 Miami View Drive, Loveland, OH  45140 | | |
| 2a. Post Office<br>Loveland | 2b. Branch/Station<br>N/A | 2c. Telephone No. (include area code)<br>513-683-8052 |
| 3a. Date of Incident<br>May 17, 2021 | 3b. Date of Step 1 Discussion with<br>(Filing date)   May 26, 2021 | 3c. Was Grievance Timely? (Explain)<br>Yes |

4. Issue (Complaint)
Why did I receive a Notice of Removal dated May 17, 2021 for Improper Conduct?

5. Contract Provisions (Articles at issue)
Article 5, Article 16.1, 16.4, 16.6, 19.1, EL-921 Page 30 (but not limited to)

6. Full, Detailed Statement of Undisputed Facts (Attachments, as necessary)
Grievant is the regular rural carrier on rural route 2 in the Loveland Post Office. Grievant has no discipline in his file. Grievant has been employed with the USPS since April 29, 2006. Grievant became a regular carrier on February 7, 2015. Grievant received a Notice of Removal dated May 17, 2021 for Improper Conduct. Grievant was put on EP on April 14, 2021 after finishing his route. Grievant was on LWOP through April 29, 2021. Grievant started on admin pay on May 1, 2021 through May 15, 2021. Grievant was continued on admin pay for additional 30 days after the issuance of removal letter dated May 17, 2021. Grievant on admin pay to date. Grievant has no active discipline in his file.

7. Management's Full, Detailed Statement of Disputed Facts (Attachments, as necessary)

See Attached

8. Management Contentions

See Attached

9. Union's Full, Detailed Statement of Disputed Facts (Attachments, as necessary)
Grievant has worked on rural route 2 full time since 2015 with no incidents in his history. Local Management put in for a request for removal on May 4, 2021 and was concurred by higher authority on May 4, 2021 which then in turn took labor relations too long to issue the removal letter dated May 17, 2021 which is untimely.

10. Union Contentions
The employer violated Article 5 when it issued the grievant the removal without just cause. Article 16.1 was violated by the employer as this removal is neither progressive nor corrective. Article 16.1, 16.4, 19.1 were violated because mangement failed to cite any specific violations committed by the grievant. EL-921 page 30 was violated because district labor relations was untimely in issuing the removal after getting the request from local management.

11. Remedy Sought by the Union
The Notice of Removal dated May 17, 2021 for Improper Conduct be rescinded and expunged from the grievant's records and the grievant be made whole for all lost wages and benefits.

| 12a. Disposition (Check one)<br>☐ Settled  ☒ Denied  ☐ Withdrawn  ☐ Sustained  ☐ Other (Specify) | 12b. Date of Disposition<br>6-1-21 |
|---|---|
| 13. Signature of Installation Head of Designee and Telephone No.<br>_(signature)_  (513) 683-8052 | 14. Signature of Union Step 1 Official and Telephone No.<br>_Carla B. Dedden_  513-683-____ |

PS Form 8191, March 2007

00207

# USPS–NRLCA Joint Step 1 Grievance Form

| 1a. Grievant's Name (Last, first, middle initial) | 1b. Grievant's EIN (Employee Id Number) |
|---|---|
| Poweleit, Eric, J | 244 |

| 1c. Grievant's Title, Designation Code, and Route No. | 1d. Telephone No. (include area code) |
|---|---|
| regular rural carrier R+2 Loveland | 513-660-2415 |

**1e. Grievant's Mailing Address**
18 Miamiview dr. Loveland OH 45140

| 2a. Post Office | 2b. Branch/Station | 2c. Telephone No. (include area code) |
|---|---|---|
| Loveland | N/A | 513-683-8057 |

| 3a. Date of Incident 4/17/21 5/17/21 | 3b. Date of Step 1 Discussion with (Filing date) | 3c. Was Grievance Timely? (Explain) |
|---|---|---|
| OBO | BM 5/26/2021 | yes |

**4. Issue (Complaint)**

Why did I receive a notice of removal dated 4/17/2001 for improper conduct?

OBO 5/17/2021

**5. Contract Provisions (Articles at issue)**

**6. Full, Detailed Statement of Undisputed Facts (Attachments, as necessary)**

See attachments

**7. Management's Full, Detailed Statement of Disputed Facts (Attachments, as necessary)**

See attachments

**8. Management Contentions**

See attachments

**9. Union's Full, Detailed Statement of Disputed Facts (Attachments, as necessary)**

See Attached

**10. Union Contentions**

See Attached

**11. Remedy Sought by the Union**

See Attached

| 12a. Disposition (Check one) ☐ Settled ☒ Denied ☐ Withdrawn ☐ Sustained ☐ Other (Specify) | 12b. Date of Disposition 6/1/21 |
|---|---|
| **13.** Signature of Installation Head of Designee and Telephone No. 513-683-8052 | **14.** Signature of Union Step 1 Official and Telephone No. Carla B Debba 513-683-4 |

PS Form 8191, March 2007

00208

DATE: 05/27/2021

Management Formal A denied
Grievant: Eric Poweleit
Issue: Notice of Removal 05/17/2021

"Just Cause" is a term of art used by arbitrators to determine if the employer has met their
burden of proof in issuing discipline to an employee.
Arbitrators have held that there are six components to establishing 'just cause'. If the employer
can answer 'yes' to each of the questions and provide evidence of each, then just cause will
have been successfully established.

Q) Is there a rule?

A) Yes.

**ELM 665.24 Violent and/or Threatening Behavior**
The Postal Service is committed to the principle that all employees have a basic right to a safe
and humane working environment. In order to ensure this right, it is the unequivocal policy of
the Postal Service that there must be no tolerance of violence or threats of violence by anyone
at any level of the Postal Service. Similarly, there must be **no tolerance of harassment,**
intimidation, threats, or bullying by anyone at any level. Violation of this policy may result in
disciplinary action, including removal from the Postal Service.

Q) Is the rule reasonable?

A) Yes.

**The Joint Statement on Violence and Behavior in the Workplace:**
Which states in relevant parts: "there is no excuse for and will be no tolerance of
violence or any threats of violence by anyone at any level of the Postal Service; and that
there is **no excuse for and will be no tolerance of harassment,** intimidation, threats, or
bullying by anyone... Those who do not treat others with dignity and respect will not be
rewarded or promoted. Those whose unacceptable behavior continues will be removed
from their positions...**Our intention is make the workroom floor a safe, more
harmonious, as well as a more productive workplace.** We pledge our efforts to these
objectives."

Q) Is the rule consistently enforced?

A) Yes. Improper conduct is always addressed and is a genuine cause for issuance of corrective
action in the USPS.

Q) Was a thorough investigation completed?

A) Yes. The employee was given a pre-disciplinary interview and was given an opportunity to explain why they acted in a manner of harassment and hostility towards the postal service and their coworkers. There was also an IMIP investigation completed in relation to harassment allegations. Witnesses were interviewed by management, and statements were taken from numerous witnesses. Management has given the employee every opportunity to correct and rectify their hostile and harassing behavior. See statements.

Q) Is the severity of the discipline appropriate?

A) Yes. Article 16.5 of the NRLCA establishes that an employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to discharge the employee, the emergency action taken under this section may be made the subject of a separate grievance.

Q) Was the discipline taken in a timely manner?

A) Yes. The grievant had an incident on 4/03/2021 and then again on 4/5/2021. An investigation was started by management and confirmed by witness statement on 4/14/2021 that there were grounds to place employee Poweleit on Emergency Placement effective immediately until a full investigation could be completed.

Having successfully shown that management has met the six components of 'just cause' there can be no finding other than the disciplinary action taken against this employee is contractually appropriate and correct.

6-1-21

Lawrence Malone
Supervisor, Customer Service
Loveland Post Office
200 Loveland Madeira Rd
Loveland Oh 45140
(513) 683-8052

Affidavit B
Page 106 of 146

DATE: 05/27/2021

Management Formal A denied
Grievant: Eric Poweleit
Issue: Notice of Removal 05/17/2021

"Just Cause" is a term of art used by arbitrators to determine if the employer has met their burden of proof in issuing discipline to an employee.
Arbitrators have held that there are six components to establishing 'just cause'. If the employer can answer 'yes' to each of the questions and provide evidence of each, then just cause will have been successfully established.

Q) Is there a rule?

   A) Yes.

   **ELM 665.15 Obedience to Orders**
   Employees must obey the instructions of their supervisors.

Q) Is the rule reasonable?

A) Yes. Management has the right to instruct their employees in relation to the operational needs of the postal service and the safety of all its employees.

Q) Is the rule consistently enforced?

A) Yes. Employees are instructed daily in regards to their safety and the operational needs of the postal service.

Q) Was a thorough investigation completed?

A) Yes. The employee was given a pre-disciplinary interview and was given an opportunity to explain why they acted in a manner of harassment and hostility towards the postal service and their coworkers. There was also an IMIP investigation completed in relation to harassment allegations. Witnesses were interviewed by management, and statements were taken from numerous witnesses. Management has given the employee every opportunity to correct and rectify their hostile and harassing behavior. See statements.

Affidavit B
Page 107 of 146

Q) Is the severity of the discipline appropriate?

A) Yes. Article 16.5 of the NRLCA establishes that an employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to discharge the employee, the emergency action taken under this section may be made the subject of a separate grievance.

Q) Was the discipline taken in a timely manner?

A) Yes. The grievant had an incident on 4/03/2021 and then again on 4/5/2021. An investigation was started by management and confirmed by witness statement on 4/14/2021 that there were grounds to place employee Poweleit on Emergency Placement effective immediately until a full investigation could be completed.

Having successfully shown that management has met the six components of 'just cause' there can be no finding other than the disciplinary action taken against this employee is contractually appropriate and correct.

6-1-21

Lawrence Malone
Supervisor, Customer Service
Loveland Post Office
200 Loveland Madeira Rd
Loveland Oh 45140
(513) 683-8052

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

**1**

Q  What is your name and title? How long in the position?

A  Larry Malone (Supv. Customer Service) 2 plus years

**2**

Q  Did you issue the discipline to grievant. If no, why? Who requested it?

A  No! Brian Muhlholland did the PDI and issued you discipline Brian is on vacation this week.

**3**

Q  What information was used by Brian Muhlholland did he consider to request the removal given?

A  The investigation, the first-hand knowledge and statements

Postmaster/Designee _____  Date 6/1/21

Union Steward  Carla B Dedde  Date 6/1/21

Page 1 of 6

cc: file

00213

Affidavit B
Page 109 of 146
NRLCA October 12, 2007

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

4

Q Did higher authority instruct Brian muhlholland to request a removal?

A No!

5

Q Was PDI conducted and by whom?

A Conducted by Brian Muhlholland.

6

Q Who was present at PDI?

A Brian Muhlholland (Supv. Customer Service) Carla Dedden (local steward) & Eric Poweleit (regular rural route 2 regular carrier)

Postmaster/Designee _____ Date 6/1/21

Union Steward _Carla B Dedden_ Date 6/1/21

Page 2 of 6

cc: file

00214

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

**7**

Q Who investigated the incidents?

A IMIP team, Postal Inspectors, and Brian Muhlholland.

**8**

Q Were OIG or Postal Inspections involved in the investigation? Did they give instructions on what type of disciplinary action?

A Yes! No!

**9**

Q Did any other department in the postal service do an investigation?

A Safety came out to employees along with EAP.

Postmaster/Designee _____    Date 6/1/21

Union Steward  Carla B Dedder    Date 6/1/21

Page 3 of 6

cc: file

Affidavit B
Page 13 of 146
CM-NRLCA-2007



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

10

Q Was EAP brought in for Jamie or anyone else?

A EAP came in for service, talk and offered their services to all employees at the Loveland Post office.

11

Q Who completed the proposal for disciplinary action?

A Brian Muhlholland

12

Q Did a higher level review the proposal for discipline? Who was this?

A Yes! Jessica Maggard (OIC).

Postmaster/Designee _____ Date 6/1/21

Union Steward Carla B. Dedden Date 6/1/21

Page 4 of 6

cc: file

Affidavit B
Page 41 of 46
NRLCA-Spohn-000007



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

13

Q Did Concurring official instruct Brian Muhlholland on type of discipline to issue?

A No! Not to my Knowledge.

14

Q Who prepared discipline letter?

A Labor prepared

15

Q Was lesser discipline considered by Brian Muhlholland?

A Not to my Knowledge

Postmaster/Designee _____ Date 6-1-21

Union Steward _Carla B Dedder_ Date 6/1/21

Page 5 of 6

cc: file

Affidavit B
Page 113 of 146
NRLCA September 2007



# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## QUESTION AND ANSWER SHEET FOR STEP 1 MEETING

**Question Number**

16

Q How is this discipline corrective rather than punitive?

A Due to the severity of the investigation results.

17

Q Was grievant made aware their action could result in discipline? When?

A Yes! In the PDI

18

Q

A

Postmaster/Designee _____ Date 6/1/21

Union Steward Carla B Dedden Date 6/1/21

Page 6 of 6

cc: file

Affidavit B
Page 114 of 146
NRLCA September 2007

| 01 | Effective Date | | Notification of Personnel Action | 02 | Social Security Number |
|---|---|---|---|---|---|
| | 02-27-2021 | | **UNITED STATES POSTAL SERVICE**® | | ██████ |

**EMPLOYEE INFORMATION** U. S. Postal Service

| | | | | | | |
|---|---|---|---|---|---|---|
| 03 | Employee Name-Last | POWELEIT | 38 | Probation Expir Date | |
| 04 | Employee Name-First | ERIC | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | J | 40 | Pay Location | 000 |
| 06 | Mailing Address Street/Box/Apts | 18 MIAMIVIEW DR | 41 | Rural Carrier-Route | 00002 |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | LOVELAND | 43 | Rural Carr-Pay Type | K - 5 DAY HEAVY ROUTE |
| 08 | Mailing Address-State | OH | 45 | Rural Carr-FLSA | B |
| 09 | Mailing Address-Zip+4 | 45140- | 46 | Rural Carr-Commit | Y |
| 10 | Date of Birth | 04-05-1980 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | 46 |
| 12 | Sex | | 49 | Rural Carr-Miles | 24 |
| 13 | Ethnicity–Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2325-01XX |
| 15 | Leave Comp Date | 02-07-2015 | 52 | Position title | RURAL CARRIER |
| 16 | Enter on Duty Date | 04-29-2006 | 53 | Labor Dist Code | 2500 |
| 17 | Retirement Comp Date | 02-07-2015 | 54 | Designation/Activity | 71/0 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | 02-07-2015 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | **SALARY INFORMATION** | | |
| 23 | Leave Data Category | 6.00 - HOURS/PP | 59 | Pay Rate Code | P |
| 24 | Leave Data-Chg PPYR | 05 2030 | 60 | Rate Schedule Code | R - RURAL |
| 25 | Leave Data-Type | 1 - ADVANCE AL - EARN SL | 61 | Grade/Step | 00/02 |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 71946.00 |
| 27 | reserved for future use | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | E - FERS-FRAE | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | | 65 | Next Step PPYR | 10 2021 |
| 30 | Life Insurance | C0 - Basic Only | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| **POSITION INFORMATION** | | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 38-4620 | 69 | Protected RSC | |
| 33 | Employ Office-Name | LOVELAND PO | 70 | Protected Grade/Step | / |
| 34 | Employ Office-Address | POSTMASTER LOVELAND PO 200 LOVELAND MADEIRA RD | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | 0 |
| 35 | Duty Station-Fin No | 38-4620 | 73 | Protected RC Miles | 0 |
| 36 | Duty Station-Name | LOVELAND PO | 74 | RC Guaranteed Salary | 0.00 |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |
| **NATURE OF PERSONNEL ACTION** | | | | | |
| 77 | Nature of Action Code | 998 | 78 | Authority | 39-USC Sect 1001 |
| 79 | Description | CRAFT COLA INCREASE | | | |

| 80 | Code | | 81 | Code | | 82 | Code | | 83 | Code | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 84 | Remarks | | | | | | | | | | |

PERSON ID:03611244 PERS ASSGN:03611244

| 85 | Authorization MANAGER, HUMAN RESOURCES SHARED SERVICE CENTER | 86 | Processed Date | 02-27-2021 |
|---|---|---|---|---|
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

Affidavit B
Page 115 of 146

Lee Bossa correspondence with Jessica Maggard (OIC) and IMIP results.

**Maggard, Jessica L - Waynesville, OH**

| | |
|---|---|
| **From:** | Bossa, Lee O - Columbus, OH |
| **Sent:** | Tuesday, May 18, 2021 10:57 AM |
| **To:** | Maggard, Jessica L - Waynesville, OH |
| **Subject:** | RE: IMIP-Loveland-Poweleit |
| **Attachments:** | [Untitled].pdf |

Here you are.

**From:** Maggard, Jessica L - Waynesville, OH
**Sent:** Tuesday, May 18, 2021 10:39 AM
**To:** Bossa, Lee O - Columbus, OH <Lee.O.Bossa@usps.gov>
**Subject:** RE: IMIP-Loveland-Poweleit

Lee

Your attachment is blank , can you please send me a new one so that is may get the information please.

Jessica L Maggard
A/ Postmaster
200 Loveland Maderia Rd
Loveland Oh 45068
513-683-8052 office
513-374-5896 cell

**From:** Bossa, Lee O - Columbus, OH
**Sent:** Tuesday, May 18, 2021 8:55 AM
**To:** Patterson, Kelly D - Cincinnati, OH <kelly.d.patterson@usps.gov>; Maggard, Jessica L - Waynesville, OH
<Jessica.L.Maggard@usps.gov>; Mulholland, Bryan P - Loveland, OH <Bryan.P.Mulholland@usps.gov>
**Cc:** Dawson, Erika M - Cincinnati, OH <erika.m.dawson@usps.gov>; Dearman, Christopher J - Cincinnati, OH
<Christopher.J.Dearman@usps.gov>; Lansaw-Bridges, Brigitte R - Miamitown, OH <Brigitte.R.Lansaw-Bridges@usps.gov>
**Subject:** IMIP-Loveland-Poweleit
**Importance:** High

Attached is the full IMIP Report for the investigation that was conducted at the Loveland Post Office beginning
4/8/2021, which was concluded on the 4/21/2021.

The investigation was conducted based on allegations of a hostile work environment created by Alleged Harassers (AH),
Postmaster Jessica Maggard and Supervisor Bryan Mulholland against alleged Victim (AV) Rural Carrier Jaime Poweleit.

Below is a brief explanation of the allegation and the finding for the allegation. The findings letters will be mailed to the
Alleged Victim and Alleged Harasser. The AV makes the claim that the AH behavior is the result of their "transphobic"
behavior.

Allegation 1: AV claims she is being subjected to a "hostile work environment" as a result of locks being installed on the
restrooms.

**Determination 1:** Unsubstantiated. The investigation found that the locks were installed on the restrooms because the restrooms also serve as changing rooms for the employees and the locks were installed to prevent others from walking in on employees while they are changing clothes. The Postmaster also reported that both restrooms have been converted to unisex to accommodate the AV.

**Allegation 2:** the AV alleges that she is being subjected to a hostile work environment as a result of being "singled out" by management and other employees. The AV cites an incident which occurred on 4/3/2021 in which a heated verbal exchange took place on the workroom floor between the AV and other employees and the supervisor subsequently intervened and instructed all of the employees back to their cases and duties.

**Determination 2:** Unsubstantiated. The witnesses all reported that the AV was the individual that caused the disruption on 4/3/2021 and was the only employee that refused to follow the supervisors instructions.

**Allegation 3:** The AV claims that management and other employees still refer to her by her former name "Eric".

**Determination 3:** Substantiated. Witnesses stated that they do occasionally still refer to the AV as "Eric" due to the AV's use of that name for many years prior to the gender transition. They explain that this is not a derogatory term and is only out of force of habit.

The above and attached information is being provided for review and determination of possible corrective action.

Lee Bossa
A/Manager, Labor Relations
Ohio 2 District
Ph: (614) 469-4499
Fax: (202) 268-0672

Affidavit B
Page 118 of 146

May 18, 2021

Jessica L Maggard
200 Loveland Madeira Rd
Loveland Oh 45068

Ms. Maggard,

The investigation was conducted based on allegations of a hostile work environment created by Alleged Harassers (AH), Postmaster Jessica Maggard and Supervisor Bryan Mulholland against alleged Victim (AV) Rural Carrier Jaime Poweleit.

Below is a brief explanation of the allegation and the finding for the allegation. The findings letters will be mailed to the Alleged Victim and Alleged Harasser. The AV makes the claim that the AH behavior is the result of their "transphobic" behavior.

<u>Allegation 1</u>: AV claims she is being subjected to a "hostile work environment" as a result of locks being installed on the restrooms.

<u>Determination 1</u>; Unsubstantiated. The investigation found that the locks were installed on the restrooms because the restrooms also serve as changing rooms for the employees and the locks were installed to prevent others from walking in on employees while they are changing clothes. The Postmaster also reported that both restrooms have been converted to unisex to accommodate the AV.

<u>Allegation 2</u>: the AV alleges that she is being subjected to a hostile work environment as a result of being "singled out" by management and other employees. The AV cites an incident which occurred on 4/3/2021 in which a heated verbal exchange took place on the workroom floor between the AV and other employees and the supervisor subsequently intervened and instructed all of the employees back to their cases and duties.

<u>Determination 2</u>: Unsubstantiated. The witnesses all reported that the AV was the individual that caused the disruption on 4/3/2021 and was the only employee that refused to follow the supervisor's instructions.

<u>Allegation 3</u>: The AV claims that management and other employees still refer to her by her former name "Eric".

<u>Determination 3</u>: Substantiated. Witnesses stated that they do occasionally still refer to the AV as "Eric" due to the AV's use of that name for many years prior to the gender transition. They explain that this is not a derogatory term and is only out of force of habit.

Lee Bossa
A/Manager, Labor Relations
Ohio 2 District

OSHA Paperwork

**U.S. Department of Labor**     Occupational Safety and Health Administration
Cincinnati Area Office
36 Triangle Park Drive
Cincinnati, OH 45246



April 9, 2021

George Carrington
George.H.Carrington@usps.gov
United States Postal Service
200 Loveland Madeira Road
Loveland, OH 45140

RE: OSHA Complaint No. 1755198

Dear George Carrington:

On Apr 9, 2021, the Occupational Safety and Health Administration (OSHA) received a notice of alleged
workplace hazard(s) at your worksite at:

> 200 Loveland Madeira Road
> Loveland, OH 45140

We notified you by telephone of these alleged hazards on April 9, 2021. The specific nature of the
alleged hazards is as follows:

> The employer has converted the women's five toilet bathroom and the men's three toilet bathroom
> into two unisex bathrooms with locks on each of the main entry doors. Because these are
> conventional toilet stalls with gaps and an open bottom and top, the employees are allowed to
> lock the main door when they go to the bathroom. The office has 40 employees, and this requires
> that three toilets are available.

We have not determined whether the hazards, as alleged, exist at your workplace, and we do not intend to
conduct an inspection at this time. However, because allegations of violations and/or hazards have been
made, we request that you immediately investigate the alleged conditions and make any necessary
corrections or modifications. Please advise me in writing, no later than **April 16, 2021,** of the results of
your investigation. You must provide supporting documentation of your findings. This includes any
applicable measurements or monitoring results; photographs/video that you believe would be helpful; and
a description of any corrective action you have taken or are in the process of taking, including
documentation of the corrected condition. Please feel free to contact the office at (513) 841-4132 if you
have any questions or concerns.

This letter is not a citation or a notification of proposed penalty which, according to the Occupational
Safety and Health Act, may be issued only after an inspection or investigation of the workplace. It is our
goal to assure that hazards are promptly identified and eliminated. Please take immediate corrective
action where needed. **If we do not receive a response from you by April 16, 2021 indicating that
appropriate action has been taken or that no hazard exists and why, an OSHA inspection will be
conducted.** An inspection may include a review of the following: injury and illness records, hazard
communication, personal protective equipment, emergency action or response, bloodborne pathogens,
confined space entry, lockout/tagout, and related safety and health issues.

Please also be aware that OSHA conducts random inspections to verify that corrective actions asserted by the employer have actually been taken.

If you need assistance in resolving the issues alleged in this complaint, you may contact the OSHA on-site consultation service. This program offers free and confidential assistance to small and medium-sized businesses in all states across the country, with priority given to high-hazard worksites. If necessary, a consultant will visit your workplace and assess the validity of the complaint item(s). In addition, you will be provided with methods of correcting the hazard, where applicable. To discuss or request these services, contact the consultation project in your respective state. The addresses and telephone numbers may be found by entering your state in the form at the OSHA Consultation Directory website: http://www.osha.gov/dcsp/smallbusiness/consult_directory.html

You are requested to post a copy of this letter where it will be readily accessible for review by all of your employees, and to return a copy of the signed Certificate of Posting (Attachment A) to this office. In addition, you are requested to provide a copy of this letter and your response to a representative of any recognized employee union or safety committee that exist at your facility. Failure to do this may result in an on-site inspection. The complainant has been furnished a copy of this letter and will be advised of your response. Section 11(c) of the Occupational Safety and Health Act provides protection for employees against discrimination because of their involvement in protected safety and health activity.

If you have any questions regarding this matter, please contact our office. The contact information is listed on the first page of this document. Your interest in the safety and health of your employees is appreciated.

Sincerely,

Ken E. Montgomery
Area Director

Affidavit B
Page 122 of 146

Attachment A

**CERTIFICATE OF POSTING**
**OSHA NOTIFICATION OF ALLEGED HAZARD(S)**

Employer Name:     United States Postal Service
Complaint Number: 1755198

Date of Posting:     *04-10-2021*

Date Copy Given to an Employee Representative:     *4-10-2021*

On behalf of the employer, I certify that a copy of the complaint letter received from the Occupational
Safety and Health Administration (OSHA) was posted in a place where it is readily accessible for review
by all employees, or near such location where the violation occurred, and such notice has been given to
each authorized representative of affected employees, if any.  This notice was or will be posted for a
minimum of ten (10) days or until the hazardous conditions referenced in the letter are corrected.

_____
Signature

*Supervisor Customer Service*
Title

*Loveland Post Office (USPS)*
Employer/Establishment name

**U.S. Department of Labor**

Occupational Safety and Health Administration
Cincinnati Area Office
36 Triangle Park Drive
Cincinnati, OH 45246



April 19, 2021

George Carrington
United States Postal Service
200 Loveland Madeira Road
Loveland, OH 45140

RE: OSHA Complaint No. 1755198

Dear Mr. Carrington:

This is to advise you that based on the information that you have provided to this office, the complaint referenced above will be officially closed unless the information is disputed by the complainant.

Please feel free to contact me at (513) 841-4132 if you have any questions or concerns, or visit www.osha.gov, which contains OSHA's standards, letters of interpretation, publications, and other information related to occupational safety and health. Thank you for your cooperation with this inquiry and your continued interest in safety and health.

Sincerely,

Ken E. Montgomery
Area Director

Affidavit B
Page 125 of 146

Grievant's therapist statement:



The Counseling and Cooperative Parenting Center of Ohio, LLC

**CCPC·OHIO**

8559 S. Mason Montgomery Road, Suite 25
Mason, OH 45040
513-229-8980-P; 513-229-8935-F www.ccpc-ohio.com

April 26, 2021

To whom it may concern,

Eric Poweleit (referred to as Jamie with the correct pronouns for the remainder of this letter) has been participating in individual therapy with this therapist since January 2020 She utilized therapy to build coping skills and develop plans to be successful in a work environment that she identified as transphobic. She processed several incidents of harassment and targeting. Jamie reported her workplace became less supportive after she came out Over the past 15 months, she has not reported being involved in any legal issues She has not expressed any violent or aggressive thoughts or plans about anyone The majority of her work in therapy has focused on coping the challenges that are associated with being transgender

Michael Johnson, LPCC-S
Therapist

Page 1 of 1

Grievant's PS 3971 day walked off workroom floor.

UNITED STATES
POSTAL SERVICE®

# Request for or Notification of Absence

| Employee's Name (Print last, first, MI.) | | Employee ID | Date Submitted (MM/DD/YYYY) | No. of Hours Requested | | SCHEDULED | UNSCHEDULED | PP | Year |
|---|---|---|---|---|---|---|---|---|---|
| Poweleit Eric T | | 6606 | 04-05-2021 | 8 | | | | | |
| Installation (For postmaster's leave, show city, state, and ZIP Code) Loveland | | N/S Day | Pay Loc. No. | D/A Code | From: Date | Hour | | | |
| Time of Call or Request | Scheduled Reporting Time 7:45 | If Needed, Employee Can Be Reached At: ☐ Do not call | Thru: Date | Hour | | | | | |

| | | | | | | | Day | Init. | Hours |
|---|---|---|---|---|---|---|---|---|---|
| Type of Absence | Documentation (For official use only) | Revised Schedule for (Date) | Approved in Advance ☐ Yes ☐ No | | | | Sat 01 | | |
| ☐ Annual | ☐ FMLA Requested (Certification review – HRSSC) | | | | | | Sun 02 | | |
| ☐ Holiday/AL Lv Exch | ☐ For COP Leave (CA1 on file) | Begin Work | | | | | Mon 03 | | |
| ☑ Carrier 701 Route | ☐ For Advanced Sick Leave (PS 1221 on file) | | | | | | | | |
| ☐ LWOP (See reverse) | ☐ For Military Leave (Orders reviewed) | Lunch Out | Lunch In | | | | Tue 04 | | |
| ☑ Sick (See reverse) | ☐ For Court Leave (Summons reviewed) | End Work | | | | | Wed 05 | | |
| ☐ Late | ☐ For Higher Level (PS 1723 on file) | Total Hours | | | | | Thur 06 | | |
| ☐ COP (See reverse) | ☐ Scheme Training Testing Qualifying (Memo on file) | | | | | | Fri 07 | | |
| ☐ Other _____ | | | | | | | | | |

Remarks (Do not enter medical information. See Privacy Act Statement on reverse of this form.)

| | | Sat 08 | | |
|---|---|---|---|---|

I understand that the annual leave authorized in excess of the amount available to me during the leave year will be charged to LWOP.

| Employee's Signature and Date | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified | | Sun 09 | | |
|---|---|---|---|---|---|---|
| [signature] 4-5 | | Jessical Maggard 4/5/2021 | | Mon 10 | | |

| Official Action on Application (Return copy of signed request to employee.) | | | Tue 11 | | |
|---|---|---|---|---|---|
| ☐ Approved | Do not check an FMLA box until you verify the FMLA designation. | Signature of Supervisor and Date | Wed 12 | | |
| ☑ Disapproved (Give reason below) | ☐ FMLA Designation is PENDING | Jessical Maggard 4/6/2021 | Thur 13 | | |
| Employee walked off the floor | ☐ FMLA Protected | | | | |
| | ☐ Not FMLA Protected | ☐ Continued on reverse | Fri 14 | | |

PS Form **3971**, October 2017 (Page 1 of 2) PSN 7530-02-000-9136

**Warning:** The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both (18 U.S.C. 1001).

Affidavit B
Page 130 of 146

513.364 Medical Documentation or Other Acceptable Evidence

When employees are required to submit medical documentation, such documentation should be furnished by the employee's attending physician or other attending practitioner who is performing within the scope of his or her practice. The documentation should provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her normal duties for the period of absence. Normally, medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.

Supervisors may accept substantiation other than medical documentation if they believe it supports approval of the sick leave request.

513.365 Failure to Furnish Required Documentation

If acceptable substantiation of incapacitation is not furnished, the absence may be charged to annual leave, LWOP, or AWOL.

*Note-your medical documentation should state, example "Unable to perform his/her assigned duties" until said date to return to work.  Management needs to have documentation to clarify you are incapacitated during the time period of missed work.


**UNITED STATES**
**POSTAL SERVICE ®**

5/7/2021

Eric (Jamie) Poweleit,

Per the postal regulations, as of the date April 29,2021, we have placed you on ADMIN Leave. The leave will start on May 1,2021 due to your "k" day being on Friday 4/30/2021. This does put you into a pay status. You still are not permitted to come to work however. If you have any questions, please fill free to call the A/Postmaster Jessica Maggard or you may contact your Union Steward.

Jessica Maggard
*Jessica Maggard*
A/Postmaster

Loveland Post Office

200 Loveland Maderia rd

Loveland Oh 45140

513-683-8052

Affidavit B
Page 132 of 146

**U.S. Postal Service®**
**Rural Carrier Trip Report**

Post Office, State and ZIP + 4®
LOVELAND PO, OH 45140-9998

| | DesAct and Name | EIN |
|---|---|---|
| Regular Carrier | 71- ERIC J POWELEIT | ■1244 |
| Regular Relief Carrier | 78- SAMUEL MCKEE VI | ■3711 |

| Finance Number | Route 'L' or 'Non L' | Type | Number | Weekly Route Standard (Hours:Minutes) | Weekly Hours (Evaluated) | Daily Hours (Evaluated) |
|---|---|---|---|---|---|---|
| 384620 | L | K | 002 | 55:31 | 46 | 09.20 |

| Length (Miles) | Regular Boxes | Central. Boxes | Stops | Collection Compartments | Weekly Dismounts | Weekly Diem. Dist. | Locked Pouch Stops | Vehicle |
|---|---|---|---|---|---|---|---|---|
| 23.80 | 460 | 462 | 479 | 0 | 119 | 0 | 0 | G |

| Official Schedule of Carrier | Reports | Leaves | Returns | Ends |
|---|---|---|---|---|
| | 07:45 | 10:27 | 17:05 | 17:15 |

**Guarantee Period**

| | Pay Period 09 |
|---|---|
| Began: Saturday, October 10, 2020 | From 04/10/2021 |
| Through: Friday, October 08, 2021 | Throu 04/23/2 |

Cumulative Work Hours for Regular Carrier for Guarantee Period (Hours.Hundredths)

| | |
|---|---|
| Beginning of Pay Period | |
| Current Pay Period | |
| End of Pay Period | |

| AMS Delivery Data | Other | Curb | NDCBU | Other Central | Boxes Vacant Over 90 Days |
|---|---|---|---|---|---|
| Residential | 3 | 442 | 475 | | Families |
| Businesses | | 12 | | | Businesses |
| Det Box/NPU | | | | | |

### Carrier's Actual Daily Time Record

| Day of Week | Date | Reported to Post Office (2) | Left Office to Service Route (3) | Returned to Post Office (4) | Comp Work at Post Office (5) | Lunch Period Actual Time O or S (6) | Regular (7) | Relief (8) | Daily Overtime (9) | Initials of Manager Verifying Entries (10) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sat. | 04/10/2021 | 07:45 | 10:30 | 14:25 | 14:35 | S-30 | 6.33 | | | | |
| Mon. | 04/12/2021 | 07:45 | 11:30 | 16:05 | 16:20 | S-30 | 8.08 | | | | |
| Tue. | 04/13/2021 | 07:45 | 13:15 | 16:45 | 16:55 | S-30 | 8.67 | | | | |
| Wed. | 04/14/2021 | 07:45 | 10:30 | 14:05 | 14:15 | S-30 | 6.00 | | | | |
| Thu. | 04/15/2021 | 07:50 | 10:30 | 15:55 | 16:00 | L | | 8.17 | | | 78-SAMUEL MCKEE VI; |
| Fri. | 04/16/2021 | | | | | K | | 8.98 | | | ; SPLIT ROUTE (5) |
| | Weekly Work Hours | | | | | | 29.08 | 17.15 | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |
| Sat. | 04/17/2021 | 07:45 | 11:00 | 15:20 | 15:30 | S-15 | L | 7.50 | | | 78-SAMUEL MCKEE VI; |
| Mon. | 04/19/2021 | 07:45 | 11:00 | 16:35 | 16:43 | L | | 8.97 | | | 78-SAMUEL MCKEE VI; |
| Tue. | 04/20/2021 | 07:45 | 10:00 | 14:15 | 14:30 | S-30 | L | 6.25 | | | 78-ALEXANDRIA GLATTE; |
| Wed. | 04/21/2021 | 07:45 | 10:20 | 15:04 | 15:14 | S-20 | L | 7.15 | | | 78-SAMUEL MCKEE VI; |
| Thu. | 04/22/2021 | 07:45 | 10:00 | 14:00 | 14:04 | L | | 6.32 | | | 78-SAMUEL MCKEE VI; |
| Fri. | 04/23/2021 | 07:45 | 11:00 | 15:50 | 16:00 | S-20 | K | 7.92 | | | 78-SAMUEL MCKEE VI; |
| | Weekly Work Hours | | | | | | | 44.10 | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |

REMARKS: Explain any failure to serve the entire route; include miles actually served. State cause for any deviation from schedule. If regular carrier was absent, give name of relief.

I certify that this report is correct, and that entries have been made promptly daily.

| Carrier's Signature | Date (MM/DD/YYYY) | I certify that all entries have been completed and verified. Postmaster or Designated Supervisor's Signature | Date (MM/DD/YYYY) |
|---|---|---|---|
| | | | |

PS Form e4240, May 2016 (Page 1 of 1) PSN 7530-02-000-9206

00237

Affidavit B
Page 133 of 146

| U.S. Postal Service® **Rural Carrier Trip Report** | Post Office™, State and ZIP + 4© | | | | Guarantee Period | | | Pay Period 10 |
|---|---|---|---|---|---|---|---|---|

LOVELAND PO, OH 45140-9998

| | | | | |
|---|---|---|---|---|
| | | Began: Saturday, October 10, 2020 | | From |
| DesAct and Name | EIN | Through: Friday, October 08, 2021 | | 04/24/2021 |

| Regular Carrier | 71- ERIC J POWELEIT | ███244 |
|---|---|---|
| Regular Relief Carrier | 78- SAMUEL MCKEE VI | ███711 |

Cumulative Work Hours for Regular Carrier for Guarantee Period (Hours.Hundredths)

| Finance Number | Route | | | Weekly Route Standard (Hours:Minutes) | Weekly Hours (Evaluated) | Daily Hours (Evaluated) | |
|---|---|---|---|---|---|---|---|
| | 'L' or 'Non L' | Type | Number | | | | |
| 384620 | L | K | 002 | 55:31 | 46 | 09.20 | |

| Beginning of Pay Period | |
|---|---|
| Current Pay Period | |
| End of Pay Period | |

| Length (Miles) | Regular Boxes | Central. Boxes | Stops | Collection Compartments | Weekly Dismounts | Weekly Dism. Dist. | Locked Pouch Stops | Vehicle |
|---|---|---|---|---|---|---|---|---|
| 23.80 | 460 | 462 | 479 | 0 | 119 | 0 | 0 | G |

| AMS Delivery Data | Other | Curb | NDCBU | Other Central | Boxes Vacant Over 90 Days |
|---|---|---|---|---|---|
| Residential | 3 | 442 | 476 | | Families |
| Businesses | | 13 | | | Businesses |

| Official Schedule of Carrier | Reports | Leaves | Returns | Ends |
|---|---|---|---|---|
| | 07:45 | 10:27 | 17:05 | 17:15 |

| Det Box/NPU | |
|---|---|

00238

| Day of Week | | Date | Reported to Post Office | Left Office to Service Route | Returned to Post Office | Comp Work at Post Office | Lunch Period Actual Time O or S | Regular | Relief | Daily Overtime | Initials of Manager Verifying Entries | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | |
| Week 1 | Sat. | 04/24/2021 | | | | | | L | 17.72 | | | SPLIT ROUTE (4) |
| | Mon. | 04/26/2021 | 07:45 | 11:55 | 18:00 | 18:21 | | L | 10.60 | | | 78-SONAL V PARANJAPE; |
| | Tue. | 04/27/2021 | 07:45 | 09:45 | 15:55 | 16:34 | O-125 | L | 6.73 | | | 78-SAMUEL MCKEE VI; |
| | Wed. | 04/28/2021 | 07:45 | 10:30 | 16:30 | 16:30 | | L | 8.75 | | | 78-TIMOTHY POHL; |
| | Thu. | 04/29/2021 | 07:45 | 10:45 | 14:46 | 14:51 | | L | 7.10 | | | 78-SAMUEL MCKEE VI; |
| | Fri. | 04/30/2021 | 07:45 | 11:30 | 17:40 | 18:03 | | K | 10.30 | | | 78-SONAL V PARANJAPE; |
| | | | Weekly Work Hours | | | | | | 61.20 | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |
| Week 2 | Sat. | 05/01/2021 | 07:45 | 10:30 | 15:32 | 15:42 | | O | 7.95 | | | 78-SAMUEL MCKEE VI; |
| | Mon. | 05/03/2021 | 07:50 | 10:45 | 15:50 | 16:00 | | O | 8.17 | | | 78-SAMUEL MCKEE VI; |
| | Tue. | 05/04/2021 | 07:45 | 10:00 | 14:30 | 14:38 | | O | 6.88 | | | 78-SAMUEL MCKEE VI; |
| | Wed. | 05/05/2021 | 07:45 | 10:00 | 15:30 | 15:50 | S-30 | O | 7.58 | | | 78-ALEXANDRIA GLATTE; |
| | Thu. | 05/06/2021 | 07:50 | 10:00 | 14:40 | 14:46 | S-10 | O | 6.77 | | | 78-SAMUEL MCKEE VI; |
| | Fri. | 05/07/2021 | 07:45 | 10:00 | 15:30 | 16:00 | S-15 | K | 8.00 | | | 78-TIMOTHY POHL; |
| | | | Weekly Work Hours | | | | | | 45.35 | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |

I certify that this report is correct, and that entries have been made promptly daily.

I certify that all entries have been completed and verified.

| Carrier's Signature | Date (MM/DD/YYYY) | Postmaster or Designated Supervisor's Signature | Date (MM/DD/YYYY) |
|---|---|---|---|

PS Form e4240, May 2016 (Page 1 of 1) PSN 7530-02-000-9206

| U.S. Postal Service® **Rural Carrier Trip Report** | | | Post Office **, State and ZIP + 4® LOVELAND PO, OH 45140-9998 | | | | | Guarantee Period | | | | | Pay Period **11** | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Began: Saturday, October 10, 2020 | | | | | From | Throu |
| | | DesAct and Name | | | | EIN | | Through: Friday, October 08, 2021 | | | | | 05/08/2021 | 05/21/2 |
| Regular Carrier | | | 71- ERIC J POWELEIT | | | ████244 | | Cumulative Work Hours for Regular Carrier for Guarantee Period (Hours.Hundredths) | | | | | | |
| Regular Relief Carrier | | | 78- SAMUEL MCKEE VI | | | ████711 | | | | | | | | |

| Finance Number | Route | | | Weekly Route Standard (Hours:Minutes) | Weekly Hours (Evaluated) | Daily Hours (Evaluated) | | Beginning of Pay Period | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 'L' or 'Non L' | Type | Number | | | | | Current Pay Period | | | | | | |
| 384620 | L | K | 002 | 55:31 | 46 | 09.20 | | End of Pay Period | | | | | | |

| Length (Miles) | Regular Boxes | Central. Boxes | Stops | Collection Compartments | Weekly Dismounts | Weekly Dism. Dist. | Locked Pouch Stops | Vehicle | AMS Delivery Data | Residential | Other | Curb | NDCBU | Other Central | Boxes Vacant Over 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23.80 | 460 | 462 | 479 | 0 | 119 | 0 | 0 | G | | 3 | | 442 | 476 | | Families |
| Official Schedule of Carrier | | Reports | Leaves | Returns | Ends | | | | Businesses | | | 13 | | | Businesses |
| | | 07:45 | 10:27 | 17:05 | 17:15 | | | | Det Box/NPU | | | | | | |

| Day of Week | | Date | Carrier's Actual Daily Time Record (Exact hour and minutes) | | | | (Min.) Lunch Period Actual Time O or S | Total Actual Daily Work Hours (Less Lunch) (Hours.Hundredths) | | Daily Overtime | Initials of Manager Verifying Entries | REMARKS Explain any failure to serve the entire route; include miles actually served. State cause for any deviation from schedule. If regular carrier was absent, give name of relief. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Reported to Post Office | Left Office to Service Route | Returned to Post Office | Comp Work at Post Office | | Regular | Relief | | | |
| | | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | |
| Week1 | Sat. | 05/08/2021 | 07:45 | 10:10 | 16:05 | 16:15 | | O | 8.50 | | | 78-SAMUEL MCKEE VI; |
| | Mon. | 05/10/2021 | 07:55 | 10:30 | 16:45 | 16:55 | S-25 | O | 8.58 | | | 78-SAMUEL MCKEE VI; |
| | Tue. | 05/11/2021 | 07:45 | 10:00 | 13:20 | 13:24 | | O | 5.65 | | | 78-SAMUEL MCKEE VI; |
| | Wed. | 05/12/2021 | 08:00 | 10:50 | 14:36 | 15:10 | S-35 | O | 6.55 | | | 78-KATHRYN DOUGLAS; |
| | Thu. | 05/13/2021 | 07:55 | 10:45 | 16:17 | 16:27 | | O | 8.53 | | | 78-SAMUEL MCKEE VI; |
| | Fri. | 05/14/2021 | 07:45 | 10:30 | 15:05 | 15:13 | | K | 7.47 | | | 78-SAMUEL MCKEE VI; |
| | | | | | Weekly Work Hours | | | | 45.32 | | Regular Carrier Weekly Overtime | Regular Carrier Sunday Hours |
| Week2 | Sat. | 05/15/2021 | 07:45 | 11:40 | 17:45 | 18:05 | | O | 10.33 | | | 78-SONAL V PARANJAPE; |
| | Mon. | 05/17/2021 | 07:45 | 11:00 | 16:40 | 16:50 | | O | 9.08 | | | 78-SAMUEL MCKEE VI; |
| | Tue. | 05/18/2021 | 07:45 | 10:00 | 14:02 | 14:12 | | O | 6.45 | | | 78-SAMUEL MCKEE VI; |
| | Wed. | 05/19/2021 | 07:45 | 10:00 | 15:30 | 15:40 | | O | 7.92 | | | 78-SAMUEL MCKEE VI; |
| | Thu. | 05/20/2021 | 08:10 | 10:30 | 15:35 | 15:45 | | O | 7.58 | | | 78-SAMUEL MCKEE VI; |
| | Fri. | 05/21/2021 | 07:50 | 11:00 | 16:05 | 16:15 | S-25 | K | 8.00 | | | 78-SAMUEL MCKEE VI; |
| | | | | | Weekly Work Hours | | | | 49.37 | | Regular Carrier Weekly Overtime | Regular Carrier Sunday Hours |

I certify that this report is correct, and that entries have been made promptly daily.

| Carrier's Signature | Date (MM/DD/YYYY) | I certify that all entries have been completed and verified. | |
|---|---|---|---|
| | | Postmaster or Designated Supervisor's Signature | Date (MM/DD/YYYY) |

PS Form e4240, May 2016 (Page 1 of 1) PSN 7530-02-000-9206

00239

Page 135 of 146

Affidavit B

INCOMPLETE

| U.S. Postal Service® **Rural Carrier Trip Report** | | Post Office °, State and ZIP code LOVELAND PO, OH 45140-9998 | | | | Guarantee Period | | | | Pay Period **12** |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | Began: Saturday, October 10, 2020 | | | From | Throu |
|---|---|---|---|---|---|---|---|---|---|---|

| | DesAct and Name | | EIN | | | Through: Friday, October 08, 2021 | | | 05/22/2021 | 06/04/2 |
|---|---|---|---|---|---|---|---|---|---|---|
| Regular Carrier | 71- ALBERT M CORNELL | | 217 | | | | Cumulative Work Hours for Regular Carrier for Guarantee Period (Hours.Hundredhe) | | | |
| Regular Relief Carrier | VACANT | | 88888888 | | | | | | | |

| Finance Number | Route | | | Weekly Route Standard (Hours:Minutes) | Weekly Hours (Evaluated) | Daily Hours (Evaluated) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 'L' or 'Non L' | Type | Number | | | | Beginning of Pay Period | | | |
| 384620 | L | K | 001 | 55:23 | 46 | 09.20 | Current Pay Period | | | |
| | | | | | | | End of Pay Period | | | |

| Length (Miles) | Regular Boxes | Central. Boxes | Stops | Collection Compartments | Weekly Dismounts | Weekly Dism. Dist. | Locked Pouch Stops | Vehicle | AMS Delivery Data | Other | Curb | NDCBU | Other Central | Boxes Vacant Over 90 Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36.75 | 632 | 6 | 634 | 0 | 6 | 0 | 0 | G | Residential | 1 | 639 | 6 | | Families |
| | | | | | | | | | Businesses | | 4 | | | Businesses |

| Official Schedule of Carrier | Reports | Leaves | Returns | Ends | Det Box/NPU |
|---|---|---|---|---|---|
| | 07:45 | 10:21 | 16:44 | 16:49 | |

| Day of Week | | Date | Carrier's Actual Daily Time Record (Exact hour and minutes) | | | | (Min.) | Total Actual Daily Work Hours (Less Lunch) (Hours.Hundredths) | | Daily Overtime | Initials of Manager Verifying Entries | REMARKS Explain any failure to serve the entire route; include miles actually served. State cause for any deviation from schedule. If regular carrier was absent, give name of relief. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Reported to Post Office | Left Office to Service Route | Returned to Post Office | Comp Work at Post Office | Lunch Period Actual Time O or S | Regular | Relief | | | |
| | | | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) |
| Week1 | Sat. | 05/22/2021 | 07:45 | 11:10 | 17:40 | 17:55 | | A | 10.17 | | | 78-SONAL V PARANJAPE; |
| | Mon. | 05/24/2021 | 07:45 | 10:10 | 15:15 | 15:35 | S-20 | 7.50 | | | | |
| | Tue. | 05/25/2021 | 08:00 | 10:25 | 14:05 | 14:15 | S-25 | 9.20 | 5.83 | | | 78-ADAM M DWAILEEBE; DACA P |
| | Wed. | 05/26/2021 | 07:45 | 09:45 | 14:10 | 14:30 | S-15 | 6.50 | | | | |
| | Thu. | 05/27/2021 | | | | | | | | | | |
| | Fri. | 05/28/2021 | | | | | | | | | | |
| | | | | | Weekly Work Hours | | | | 23.20 | 16.00 | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |
| Week2 | Sat. | 05/29/2021 | | | | | | | | | | |
| | Mon. | 05/31/2021 | | | | | - POSTAL HOLIDAY - | | | | | |
| | Tue. | 06/01/2021 | | | | | | | | | | |
| | Wed. | 06/02/2021 | | | | | | | | | | |
| | Thu. | 06/03/2021 | | | | | | | | | | |
| | Fri. | 06/04/2021 | | | | | | | | | | |
| | | | | | Weekly Work Hours | | | | | | Regular Carrier Weekly Overtime | | Regular Carrier Sunday Hours |

I certify that this report is correct, and that entries have been made promptly daily.

| Carrier's Signature | Date (MM/DD/YYYY) | I certify that all entries have been completed and verified. Postmaster or Designated Supervisor's Signature | Date (MM/DD/YYYY) |
|---|---|---|---|

PS Form e4240, May 2016 (Page 1 of 1) PSN 7530-02-000-9206


**UNITED STATES**
**POSTAL SERVICE**®

# UNITED STATES POSTAL SERVICE
# DIVERSITY AND INCLUSION STATEMENT

It is the policy of the U.S. Postal Service® to promote the diversity and inclusion of our employees, the customers we serve, and the suppliers we do business with so that we might achieve a competitive advantage in the global marketplace.

Diversity and inclusion in the Postal Service™ means that we will build an inclusive environment that respects the uniqueness of every individual and encourages the contributions of people from different backgrounds, experiences, and perspectives.

Diversity and inclusion is key to our corporate success because it affects every aspect of the organization—employees, customers, and the business. Our investment in a strong diversity program creates a positive work environment that recognizes the contributions of all our employees, and it provides us with a strategic advantage.

The Postal Service will focus on diversity and inclusion in the recruitment, development, and retention of employees. When developing succession plans and making promotions, the Postal Service will strongly support diversity, thereby creating an even playing field for all employees. To ensure that the Postal Service meets the needs of the diverse communities it serves, it will eliminate barriers and create products and services designed to increase customer satisfaction, ease-of-use, and revenue. The Postal Service will ensure that all qualified suppliers have the opportunity to compete for its contracts that are competitively awarded, and we will require that our local purchasing policies support local business communities and encourage economic development of diverse groups.

All employees share the responsibility for achieving diversity goals. For diversity and inclusion to be successfully integrated into the Postal Service, diversity and inclusion initiatives must continue to be guided by leadership's full commitment. All executives, managers, and supervisors are responsible and accountable for managing and integrating diversity and inclusion into the business management processes.

To build mutual respect into all of our relationships, employees at all levels must value the differences and cultures of others. This requires treating everyone with dignity and having compassion for others. These actions are critical to diversity and inclusion becoming an integral part of the organization; not only do they benefit each employee, they also enhance our standing in the national and global marketplaces.

By valuing diversity and inclusion, the Postal Service will achieve maximum corporate success and positive recognition as a world-class business leader. For more information about diversity and inclusion, please visit USPS LiteBlue: *https://liteblue.usps.gov*. Click on **Diversity and Inclusion** under the subtitle **Hot topics**.

Louis DeJoy
Postmaster General/CEO

Affidavit B
Page 137 of 146

DISTRICT MANAGER
OHIO VALLEY DISTRICT

 **UNITED STATES
POSTAL SERVICE**

March, 2020

MEMORANDUM FOR ALL OHIO VALLEY DISTRICT EMPLOYEES

SUBJECT: Zero Tolerance Policy

Acts and threats of violence in the workplace are among the most serious and frustrating
problems facing the Postal Service and its employees. Incidents of workplace violence seriously
impact the reputation, credibility, and morale of the Postal Service and its employees.

We wish to make it absolutely clear to all employees our policy on acts and threats of violence
remains as follows:

> THERE WILL BE ZERO TOLERANCE OF
> ACTS OR THREATS OF VIOLENCE
> IN OUR WORKPLACE

This includes, but is not limited to:
- Any act of physical violence
- Any actual implied or veiled threat made seriously or in jest
- Any type of vulgar language which would lead to a hostile workplace

Any allegation of a Postal Service employee threatening, assaulting or committing any such
conduct against postal employees or customers will result in in a thorough investigation which
may result in disciplinary action, up to and including removal from the Postal Service. Any
employee who has been subjected to a threat or an assault is by this policy instructed to
immediately report the incident to a manager or supervisor and to the Inspection Service.
Employees are also encouraged to report any unusual situation that has the potential to cause
workplace violence. Threats of suicide are considered acts of violence. Reports to the
Inspection Service, at the request of the employee who reports the incident, will be handled
anonymously.

Every Postal Service employee has the right to perform his or her assigned duties in an
atmosphere free of threats, assaults, and other acts of workplace violence. We are committed
in the effort to ensure a safe working environment for all employees. The Zero Tolerance Policy
is designed to provide you with a workplace in which you can feel safe and secure.

Jean C. Lovejoy
District Manager,
Ohio Valley District

James Shaffer
Major Metro Plant Manager
Columbus P&DC

1591 DALTON AVENUE
CINCINNATI, OH 45234-9990

00242

DISTRICT MANAGER
OHIO VALLEY DISTRICT



**UNITED STATES**
**POSTAL SERVICE**

March, 2020

MEMORANDUM FOR ALL EMPLOYEES, OHIO VALLEY DISTRICT

SUBJECT: Sexual Harassment Policy -- Mandatory Service Talk

The United States Postal Service is committed to providing a work environment free of sexual harassment in any form. Sexual harassment is improper and unlawful conduct which undermines the employment relationship as well as employee morale. Sexual harassment will not be tolerated in the Ohio Valley District.

The following are examples of forms of sexual harassment that *will not be tolerated* in the workplace:

- Making or threatening to make employment decisions based on an employee's submission to, or rejection of, sexual advances or requests for sexual favors

- Deliberate or repeated unsolicited remarks with a sexual connotation or physical contact of a sexual nature which is unwelcome to the recipient

- Verbal harassment – jokes, threats, sexual remarks (from subtle hints to direct propositions), inappropriate comments on personal appearance

- Physical harassment – inappropriate touching, blocking or impeding an employee's movement to communicate sexual jokes, threats, comments; or, for the purpose of engaging in inappropriate touching, casual kissing, hugging or touching other than in an emergency (i.e. preventing an injury)

- Other forms of harassment – leaving notes of an implicit or explicit sexual nature, displaying "pinups," sexist cartoons, pictures, or magazines that are offensive

- A sustained hostile and abusive work environment that changes the terms and conditions of one's employment

Employees who engage in sexual harassment should expect serious disciplinary action as intolerable behavior such as this warrants moving beyond normal progressive discipline. When it is identified, we will take immediate, corrective action.

All postal employees are charged with the responsibility for preventing sexual harassment in the workplace. If sexual harassment occurs, managers and supervisors are responsible for taking immediate and appropriate corrective action.

In the Ohio Valley District, we strive for a work environment that allows everyone to put forth their best effort. Employees experiencing this type of inappropriate behavior are not afforded this opportunity.

Any instances of sexual harassment must be reported immediately to an impartial supervisor, manager or Deborah O'Neal, Manager, Human Resources at 513-684-5567 or doneal@usps.gov.

Jean C. Lovejoy
District Manager
Ohio Valley District

James Shaffer
Major Metro Plant Manager
Columbus P&DC

1591 DALTON AVENUE
CINCINNATI, OH 45234-9990

00243

Affidavit B
Page 139 of 146

 **UNITED STATES**
**POSTAL SERVICE**

February 18, 1998

PCES EXECUTIVES

SUBJECT: Voice of the Employee—Workplace Relationships

During the last several years, the Postal Service has attempted to address and resolve the complex issues associated with the workplace environment and the relationships with our employees and their representatives. Recently, we have made some progress and enjoyed certain successes. We need to build on that momentum and continue to strive to improve workplace relationships and to treat each individual with dignity and respect. To ensure success in this critical area, all managers and supervisors must take the lead and set a positive example to continue to improve workplace relationships at all levels of the Postal Service. Not only does this make sense but it is the right thing to do as well.

From our standpoint, we believe that our approach in focusing on the Voice of the Employee has several key elements:

## EMPLOYEE TREATMENT

While the vast majority of managers and supervisors are capable concerning all aspects of their jobs, *renewed emphasis must be placed on treating all employees with dignity and respect.* Each of us knows how we wish to be treated. We must provide that same treatment to our employees at all levels of the organization. As stated at the National Executive Conference in Norman, Oklahoma, each of us is responsible for ensuring that we recognize our employees when they do a great job. Conversely, when employees make mistakes, we are responsible for ensuring that we and the employees learn from those mistakes. To the extent that any manager or supervisor cannot treat employees consistent with this philosophy, appropriate counseling should be conducted, followed by relevant training as necessary. If the manager or supervisor does not accept training or is not successful, other appropriate corrective action should be considered.

## CONTRACT COMPLIANCE

Emphasis must be placed on the corporate objective that all managers and supervisors must give the highest priority to compliance with our collective bargaining agreements with the various unions. No manager or supervisor at any level of this organization has the authority to override the terms of those agreements. Those collective bargaining agreements represent the commitment of the Postal Service—that is, the commitment of each of us—to abide by the terms contained therein, in our dealings with our employees. Appropriate corrective action should be considered for any manager or supervisor who knowingly, or repeatedly, violates the clear terms of any of those agreements.

475 L'Enfant Plaza SW
Washington DC 20260

Affidavit B
Page 140 of 146

- 2 -

In keeping with that responsibility, all managers and supervisors are expected to resolve meritorious employee complaints and/or grievances at the lowest possible level. That includes handling grievances within the contractual time limits and promptly implementing any settlements agreed to or remedies awarded. Managers or supervisors who have questions regarding the legitimacy of a complaint or grievance should avail themselves of the necessary labor relations guidance and support.

Compliance with contractual terms and prompt resolution of meritorious cases will enable us to concentrate our efforts on vigorously defending those cases in which we believe no violation has occurred. It will also lend support to our statements to the unions that the filing of repetitive or frivolous grievances is not conducive to a mature collective bargaining relationship and must be halted at once.

## COMMUNICATIONS

Responsible managers are to ensure that they are conducting regularly scheduled Labor-Management Committee meetings as outlined in our collective bargaining agreements. These meetings are excellent communications vehicles to address, resolve, or diffuse local issues. Additionally, whenever necessary, managers should communicate with local union officials to keep them informed of local matters which they should be aware.

While these key elements may seem ambitious, their accomplishment is critical to the continued success of the Postal Service. Additionally, there can be no doubt that this is the correct direction for us to pursue as an organization.

We are counting on each of you to assure that this focus on the Voice of the Employee is communicated to all operations managers and supervisors within your respective areas and that they vigorously pursue its accomplishment.

Marvin Runyon
Postmaster General

Michael S. Coughlin
Deputy Postmaster General

William J. Henderson
Chief Operating Officer
and Executive Vice President



# JOINT STATEMENT ON VIOLENCE AND BEHAVIOR IN THE WORKPLACE

We all grieve for the Royal Oak victims, and we sympathize with their families, as we have grieved and sympathized all too often before in similar horrifying circumstances. But grief and sympathy are not enough. Neither are ritualistic expressions of grave concern or the initiation of investigations, studies, or research projects.

The United States Postal Service as an institution and all of us who serve that institution must firmly and unequivocally commit to do everything within our power to prevent further incidents of work-related violence.

This is a time for a candid appraisal of our flaws and not a time for scapegoating, fingerpointing, or procrastination. It is a time for reaffirming the basic right of all employees to a safe and humane working environment. *It is also the time to take action to show that we mean what we say.*

We openly acknowledge that in some places or units there is an unacceptable level of stress in the workplace; that there is no excuse for and will be no tolerance of violence or any threats of violence by anyone at any level of the Postal Service; and that there is no excuse for and will be no tolerance of harassment, intimidation, threats, or bullying by anyone.

We also affirm that every employee at every level of the Postal Service should be treated at all times with dignity, respect, and fairness. The need for the USPS to serve the public efficiently and productively, and the need for all employees to be committed to giving a fair day's work for a fair day's pay, does not justify actions that are abusive or intolerant. *"Making the numbers" is not an excuse for the abuse of anyone.* Those who do not treat others with dignity and respect will not be rewarded or promoted. Those whose unacceptable behavior continues will be removed from their positions.

We obviously cannot ensure that however seriously intentioned our words may be, they will not be treated with winks and nods, or skepticism, by some of our over 700,000 employees. But let there be no mistake that we mean what we say and we will enforce our commitment to a workplace where dignity, respect, and fairness are basic human rights, and where those who do not respect those rights are not tolerated.

Our intention is to make the workroom floor a safer, more harmonious, as well as a more productive workplace. We pledge our efforts to these objectives.

D.C. Nurses Association

Federation of Postal Police Officers

National Association of Letter Carriers

National Postal Mail Handlers Union

United States Postal Service

National Association of Postal Supervisors

National Association of Postmasters of the United States

National League of Postmasters of the United States

National Rural Letter Carriers' Association

Dated: February 14, 1992

**PLEASE POST ON BULLETIN BOARDS IN ALL INSTALLATIONS**


UNITED STATES
POSTAL SERVICE ®

June 29, 2020

## Postal Service's Policy on Workplace Harassment

The United States Postal Service® (Postal Service™) is committed to providing a work environment free of harassment based upon race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, uniformed (military) service, or in reprisal for an employee's or applicant's complaint about, or opposition to, discrimination or participation in any process or proceeding designed to remedy discrimination. The Postal Service's workplace must be one in which all employees are treated with dignity and respect by supervisors, subordinates, and coworkers. Supervisors and managers will take prompt action to prevent, address, and remedy workplace conduct that is contrary to this policy.

### Prohibited Activities

Harassment is unwelcome verbal or physical conduct, which is so severe or pervasive that it interferes with or changes the conditions of one's employment by creating a hostile, intimidating, or abusive working environment. Examples may include, but are not limited to, making offensive or derogatory comments or engaging in physically threatening, intimidating, or humiliating behavior based upon race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, past, present, or future uniformed (military) service, or in reprisal for an employee's or applicant's complaint about or opposition to discrimination or participation in any process or proceeding designed to remedy discrimination. These activities are prohibited by the Postal Service's policy and may amount to harassment in violation of federal antidiscrimination laws. Violation of this policy may result in disciplinary action up to and including termination. The Postal Service is committed to providing its employees a safe, productive, and inclusive workplace and will tolerate nothing less.

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature such as, but not limited to: making or threatening to make employment decisions based on an employee's submission to, or rejection of, sexual advances or requests for sexual favors; deliberate or repeated unsolicited remarks with a sexual connotation or physical contact of a sexual nature that is unwelcome to the recipient; or behavior that creates a sustained hostile or abusive work environment so severe or pervasive that it unreasonably interferes with or changes the conditions of one's employment.

Although not every instance of inappropriate behavior may fit the legal definition of harassment, such behavior in the workplace undermines morale and violates the Postal Service's standards of conduct. Disciplinary action may result even if the conduct does not constitute harassment under the law.

### Management Responsibility

All managers and supervisors are responsible for preventing harassment and inappropriate behavior that could lead to illegal harassment, and must respond promptly when they learn of any such conduct. Any manager or supervisor who receives a complaint must see that a prompt and thorough investigation is conducted. Investigations of all forms of harassment must be done in accordance with the "Initial Management Inquiry Process (IMIP)." Materials are available in Publication 552, *Manager's Guide to Understanding, Investigating, and Preventing Harassment.* When harassment or inappropriate conduct is found, managers must take prompt and effective corrective action.

- 2 -

**Employees' Rights and Responsibilities**

Postal Service employees who believe that they are the victims of harassment prohibited under this policy (i.e., harassment based on race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, uniformed (military) service, or in reprisal for an employee's or applicant's complaint about or opposition to discrimination or participation in any process or proceeding designed to remedy discrimination) or who have witnessed such harassment or inappropriate conduct, should bring the situation to the attention of a supervisor, a manager, or the manager of Human Resources. Refer to Publication 553, *Employee's Guide to Understanding, Preventing, and Reporting Harassment* for further information. In accordance with this policy, supervisors, managers, managers of Human Resources, or the next higher level manager (HQ and HQ-field units) are responsible for ensuring that direct and prompt action is taken to investigate and, where appropriate, remedy such misconduct when brought to their attention. The Postal Service will protect the confidentiality of harassment complainants to the fullest extent possible.

Employment discrimination or reprisal for engaging in an Equal Employment Opportunity (EEO)-protected activity is prohibited. Employees may request pre-complaint counseling through the online Postal Service EEO efile application at *https://efile.usps.com* or in writing by providing their name, Social Security or employee identification number, address, and telephone number to: National EEO Investigative Services Office—EEO Contact Center, Post Office Box 21979, Tampa, FL 33622-1979. In addition, bargaining unit employees may seek relief through the relevant grievance-arbitration procedures, and if applicable, non-bargaining unit employees may use the grievance procedures described in Section 652.4, *Employee and Labor Relations Manual.*

Allegations involving any possible criminal misconduct should, at a minimum, be reported to law enforcement authorities as follows: any physical misconduct relating to workplace harassment (i.e., any physical assault, threat of a physical assault, or stalking) should be reported to the United States Postal Inspection Service® (USPIS®); use of any electronic device, computer, or Internet to transmit threatening or harassing communications, obscene or indecent images and materials, should be reported to the Office of Inspector General (OIG).

Reprisal against employees who raise a claim of harassment, report inappropriate conduct, or provide evidence in any investigation is illegal and can result in disciplinary action, and should be referred to the USPIS or OIG as appropriate.

The Postal Service does not tolerate any type of harassment, inappropriate conduct, or reprisal in the workplace.

Louis DeJoy

Affidavit B
Page 144 of 146

# NATIONAL RURAL LETTER CARRIERS' ASSOCIATION

## STEP 2 GRIEVANCE APPEAL

TO BE SENT VIA CERTIFIED MAIL TO THE MANAGER, HUMAN RESOURCES AT THE APPROPRIATE DISTRICT OFFICE

DATE  June 5, 2021                                    CERTIFIED #  7018-0680-0000-3475-0948
                                                                          (RETURN RECEIPT REQUESTED)

POST OFFICE  Loveland                                USPS DISTRICT  Ohio 2

PO ZIP CODE  45140

MANAGER, HUMAN RESOURCES  Deborah O'Neal

GRIEVANT  Eric Poweleit

ISSUE  Notice of Removal

VIOLATION  Article 5,16.1,16.4,16.6,19.1, EL921 Page 30 (but not limited to)

REMEDY  The Notice of Removal dated May 17, 2021 for Improper Conduct be rescinded and
expunged from the grievant's records and the grievant be made whole for all lost
wages and benefits.

This will serve as notice to appeal the subject named grievance(s) to Step 2 of the grievance-arbitration procedure.

Article 15.3 of the USPS-NRLCA National Collective Bargaining Agreement states that the Employer's Step 2 Representative will meet with the District Representative or designee within ten days of receipt of the Step 2 Appeal.

Please contact the District Representative/Designee indicated below to set a meeting date.

Respectfully,

*Carla B. Dedden*

Local Steward
National Rural Letter Carriers' Association

DISTRICT REP / DESIGNEE    Cathy Funderburgh

ADDRESS    PO Box 96

CITY, STATE, ZIP    Clifton, OH  45316

PHONE    937-265-5477

cc: District Representative
    Grievant
    Local Steward
    Installation Head
    File

NRLCA/November 2012

ERIC POWELEIT
RURAL CARRIER
EIN: 03611244

NOTICE OF REMOVAL

**ELM Section 665.15 Obedience of Orders**
Employees must obey the instructions of their supervisors.

**ELM Section 665.16 Behavior and Personal Habits**
Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal employees be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off-duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute.

**Although there are no other elements of discipline in your file, I find this offense egregious enough to warrant this action.**

You have the right to file a grievance under the Grievance-Arbitration procedure as set forth in Article 15, Section 2, of the National Agreement, within fourteen (14) days of your receipt of this notice. If this action is reversed or modified on appeal, back pay may be allowed unless the appropriate award of decision specifies otherwise, only if you have made reasonable efforts to obtain alternate employment during the potential back pay period. The documentation that you must maintain and present to support a back pay claim is described in Part 436 of the Employee and Labor Relations Manual.

_____
Bryan Mulholland
Supervisor Customer Service

I have received the original letter:

_____  _____  _____
(Signature)                       (Date)               (Time)

DISC                                                                    2