**UNITED STATES POSTAL SERVICE**

# EEO Investigative Affidavit (Witness)

| Page Number | Number of Pages | Case Number |
|---|---|---|
| 1 | 7 | 4J-450-0002-21 |

1. Affiant's Name (First, Middle, Last)
Lawrence Malone

2. Employing Postal Service Facility
Loveland Post Office

3. Position Title
Supervisor Customer Service

4. Position Level
*EAS -17*

5. Postal Address and ZIP + 4
200 Loveland Madeira Rd
Loveland, OH 45140-9998

6. Unit Assigned
*45140*

### Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency becomes aware of a violation of law, to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### USPS Standards of Conduct

Postal Service regulations require all Postal Service employees to cooperate in any Postal Service investigation. Failure to supply the requested information could result in disciplinary action in accordance with ELM 665.3 and 665.6.

7. Statement (Continue on Form 2569 if additional space is required)

1. What is your full name?   *Lawrence L. Malone III*

2. Please state your position title, level, location, telephone number and email address.
*Supervisor Customer Service, EAS Level 17, Loveland Post office
(513) 683-8052   Lawrence.L.Malone@USPS.Gov.*

3. During the timeframe of this complaint, please identify your organizational relationship to the Complainant (i.e. Supervisor, Manager, etc.)?
*Supervisor*

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | *7/13/2021* |

PS Form 2568-B, October 2018

00251

| UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit** *(Continuation Sheet)* | 2 | 7 | 1F-914-0031-20 |

4. Identify the name and title of your immediate supervisor.

*Brenda Schubert, A/Postmaster*

## SEX ALLEGATION

5. Identify your **sex**. *Male*

6. What do you believe Complainant's **sex** to be? **How** and **when** (approximate date) did you become aware of Complainant's sex?

   *Male, personnel file states to that. (February 2019) Drivers license stated that. I have never been made officially aware, of the complaintant's sex other than through official documents at work.*

7. What do you believe Complainant's **sexual orientation** to be? **How** and **when** (approximate date) did you become aware of Complainant's sexual orientation?

   *I don't know. Have never been made aware of complainants sexual orientation.*

CLAIM 1: COMPLAINANT'S SUPERVISOR THREATENED HIM WITH DISCIPLINE AND THEN PROVIDED HIM WITH THE STATEMENT HE WROTE CONCERNING THE JANUARY 21ST INCIDENT WHICH HE BELIEVES CONTAINS FALSE INFORMATION

8. Complainant alleges you threatened him with discipline on January 21, 2021 and then on February 17, 2021 you provided him with the statement you wrote concerning the January 21st incident which Complainant believes contains false information. Complainant stated the incident involved a coworker who was feeling suicidal. He stated you accused him of failing to follow orders and stated you told him he was yelling at the coworker. Did this interaction occur

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed 07/13/2021

PS Form 2569, March 2001

00252

Affidavit C
Page 2 of 11

| UNITED STATES POSTAL SERVICE® EEO Investigative Affidavit (Continuation Sheet) | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 3 | 7 | 1F-914-0031-20 |

as the Complainant described? If so, explain in detail what led up to this interaction and why you threatened him with discipline on January 21, 2021 and then on February 17, 2021 you provided him with the statement you wrote concerning the January 21st incident which Complainant believes contains false information. *See pg.- # 8*

a. If this is not accurate as Complainant alleges, please explain in detail what you did say in your interaction with the Complainant on January 21, 2021.

*See Page #8*

9. If not already explained above, what led up to the conversation in which this alleged threat took place?

*See Pg.# 8*

10. Did Complainant respond to the alleged threat of discipline? If yes, what was his response?

*Yes, the Complainant stated that I was treating him unfairly and continued to argue his side of the story. I told Eric Poweleit that I was not going to continue to argue. He had been given instructions and was to follow them. Eric Poweleit then returned to his work station mumbling in a low tone that I could not understand without further incident.*

11. What was/were the reason(s), if any, provided to the Complainant for the alleged threat of discipline?

*See statement on pg.# 8*

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed
7-13-2021

PS Form 2569, March 2001

00253

Affidavit C
Page 3 of 11

| **UNITED STATES POSTAL SERVICE** ® | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| EEO Investigative Affidavit *(Continuation Sheet)* | | 4 | 7 | 1F-914-0031-20 |

12. Did Complainant disagree with these reasons? If so, please explain why he disagreed.

Yes, Eric howdeit kept stating that I was treating him unfairly and that he was only concerned with a fellow coworker. I said if you were concerned with her well being why were you yelling at her.

13. What Postal policies, regulations and/or rules are relevant to this issue? *(Please provide copies of any policies, regulations and/or rules cited.)* Explain how they applied in this case.

Refer the The Employee Labor Manual. Employees are to work quietly and diligently while on the workroom floor.

14. Was Complainant's **sex** a factor in how you interacted with the Complainant on January 21, 2021? If so, explain in detail.

No

15. Was Complainant's **sexual orientation** a factor in how you interacted with the Complainant on January 21, 2021? If so, explain in detail? If so, explain in detail.

No

16. Did Complainant file a grievance or any other type of complaint regarding this issue?

None that I am aware of. The complainant did name me in an EEO.

   a. If so, at what stage is the grievance/complaint?

No settlement reached at mediation.

   b. If a final decision was reached, what was the result?

Not aware of any final decision at this time.

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature | Date Signed 7-13-2021 |

PS Form 2569, March 2001

00254

Affidavit C
Page 4 of 11

| UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|
| EEO Investigative Affidavit *(Continuation Sheet)* | 5 | 7 | 1F-914-0031-20 |

*(Please provide a copy of any relevant documentation.)*

See E.L.M. Employee Labor Manual.

## HARASSMENT ALLEGATION

17. Did Complainant (or anyone acting on behalf of Complainant) tell you that your or anyone else's actions constituted harassment and/or a hostile work environment for him/her? If so, provide the following:

a. When were you told?

b. Who told you?

*No, Other than the EEO, No one else to my knowledge, acting on the Complaintants behalf, has brought anything to my attention,*

c. What specifically were you told?

d. What was your response/action?

(If in writing, please provide a copy.)

18. Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about harassment/hostile work environment? If so, provide the following:

a. Who was told?

b. When were they told?

*NO, Other than the EEO, No one else to my knowledge, acting on the complaintants behalf has brought anything to managements attention,*

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed  7-13-2021

PS Form 2589, March 2001

| | | | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** | | | | 6 | 7 | 1F-914-0031-20 |
| EEO Investigative Affidavit *(Continuation Sheet)* | | | | | | |

c. What specifically were they told?

d. What was their response/action?

(If in writing, please provide a copy.)

19. Was an investigation conducted into Complainant's allegations of harassment/hostile work environment? If so, by whom and when?

*Yes, the IMIP team did an Investigation.*

20. To your knowledge, what was the outcome of the investigation? Please provide a copy of the report.

*See report date 4/8/2021 - 4/21/2021 attached @ end of report. After litigation hold notice.*

21. Was Complainant informed of the outcome? If yes, how?

*Yes, via Mail.*

22. Was any corrective or preventative action necessary? If so, what action was taken?

*- EAP was brought in to address all employees through their services.*

23. If no investigation was conducted, please explain why.

24. Have you received training on anti-harassment/hostile work environment while employed by the agency? If so, when?

*Yes, I receive training approximately 4 times per year.*

25. Is the agency anti-harassment/hostile work environment policy posted in your facility?

*Yes*

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | 7-19-2021 |

PS Form 2569, March 2001

| UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit** *(Continuation Sheet)* | **7** | **7** | 1F-914-0031-20 |

26. Do you have anything relevant to add that has not already been addressed regarding the accepted claim(s) of this complaint? If so, please explain.

None at this time.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed
7-13-2021

PS Form 2569, March 2001

00257

Affidavit C
Page 7 of 11

**UNITED STATES**
**POSTAL SERVICE** ®

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 8 | 8 | 4J-450-0002-21 |

Question #8a. & 9

During this alleged threat, I arrived on the scene at Rural Route #2 and Rural Route #3 Loveland Post office. I had been called to the scene because I heard yelling. When I arrived on the scene, I witnessed employee Eric Poweleit and employee Katie Douglas arguing to the point that it disrupted the entire workroom floor. They were yelling at each other. I immediately asked both employees to refrain from engaging each other and to return to their duties. Eric Poweleit continued to be argumentative and caused them both to start arguing again. I made the decision to remove both employees from the workroom floor and to talk to them in the postmaster's office. I instructed both employees that they could return to work only if they agreed to stop the arguing. I instructed both employees that if the could not follow these instructions that they would both be disiplined. Katie Douglas apologized for the incident and agreed to return to work with out further incident. Both employees were notified this incident would be documented as an official discussion and that if no further incidents between them occured it would be thrown out. No further incidents occured between Eric Poweleit & Katie Douglas to my knowledge. The official discussion was thrown out as agreed around the end of March. No statements were provided to either party.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed
7-13-2021

 **UNITED STATES POSTAL SERVICE®**

## Certification

Case Number

4J-450-0002-21

I have read the proceeding attached statement, consisting of __ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### USPS Standards of Conduct

Postal Service regulations require all Postal Service employees to cooperate in any Postal Service investigation. Failure to supply the requested information could result in disciplinary action, in accordance with ELM 665.3 and 665.6.

### Oath or Affirmation

Subscribed and (sworn) (affirmed) before me on the _____ day of_____, 20____.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

_____
Signature of EEO Complaints Investigator

_____
Signature of Affiant

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

Signature of Affiant

Date Signed

7-13-2021

*Report*

Attached is the full IMIP Report for the investigation that was conducted at the Loveland Post Office beginning 4/8/2021, which was concluded on the 4/21/2021.

The investigation was conducted based on allegations of a hostile work environment created by Alleged Harassers (AH), Postmaster Jessica Maggard and Supervisor Bryan Mulholland against alleged Victim (AV) Rural Carrier Jaime Poweleit.

Below is a brief explanation of the allegation and the finding for the allegation. The findings letters will be mailed to the Alleged Victim and Alleged Harasser. The AV makes the claim that the AH behavior is the result of their "transphobic" behavior.

<u>Allegation 1</u>: AV claims she is being subjected to a "hostile work environment" as a result of locks being installed on the restrooms.

1

## Report Continued

**Determination 1:** Unsubstantiated. The investigation found that the locks were installed on the restrooms because the restrooms also serve as changing rooms for the employees and the locks were installed to prevent others from walking in on employees while they are changing clothes. The Postmaster also reported that both restrooms have been converted to unisex to accommodate the AV.

**Allegation 2:** the AV alleges that she is being subjected to a hostile work environment as a result of being "singled out" by management and other employees. The AV cites an incident which occurred on 4/3/2021 in which a heated verbal exchange took place on the workroom floor between the AV and other employees and the supervisor subsequently intervened and instructed all of the employees back to their cases and duties.

**Determination 2:** Unsubstantiated. The witnesses all reported that the AV was the individual that caused the disruption on 4/3/2021 and was the only employee that refused to follow the supervisors instructions.

**Allegation 3:** The AV claims that management and other employees still refer to her by her former name "Eric".

**Determination 3:** Substantiated. Witnesses stated that they do occasionally still refer to the AV as "Eric" due to the AV's use of that name for many years prior to the gender transition. They explain that this is not a derogatory term and is only out of force of habit.

The above and attached information is being provided for review and determination of possible corrective action.



**UNITED STATES**
**POSTAL SERVICE** ®

# EEO Investigative Affidavit *(Witness)*

| | Page Number | Number of Pages | Case Number |
|---|---|---|---|
| | 1 | 9 | 4J-450-0002-21 |

| 1. Affiant's Name *(First, Middle, Last)* | 2. Employing Postal Service Facility |
|---|---|
| Bryan Mulholland | Loveland Post Office |

| 3. Position Title | 4. Position Level | 5. Postal Address and ZIP + 4 | 6. Unit Assigned |
|---|---|---|---|
| Supervisor Customer Service | 17 | 200 Loveland Madeira Rd Loveland, OH 45140-9998 | 384620 |

## Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

## USPS Standards of Conduct

Postal Service regulations require all Postal Service employees to cooperate in any Postal Service investigation. Failure to supply the requested information could result in disciplinary action in accordance with ELM 665.3 and 665.6.

7. Statement *(Continue on Form 2569 if additional space is required)*

1. What is your full name?

Bryan Patrick Mulholland

2. Please state your position title, level, location, telephone number and email address.

Supervisor, Customer Service EAS Level 17
Loveland Post Office 45140 - (513) 683-8052
bryan.p.mulholland@usps.gov

3. During the timeframe of this complaint, please identify your organizational relationship to the Complainant (i.e. Supervisor, Manager, etc.)?

Supervisor

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature | Date Signed 7/16/2021 |

PS Form **2568-B**, October 2015

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE** ® EEO Investigative Affidavit *(Continuation Sheet)* | | **2** | **9** | 1F-914-0031-20 |

4. Identify the name and title of your immediate supervisor.

Brenda Schubert, OIC of Loveland Post Office 45140

## SEX ALLEGATION

5. Identify your **sex**.

Male

6. What do you believe Complainant's **sex** to be? **How** and **when** (approximate date) did you become aware of Complainant's sex?

I am unaware of the complainants sex.

7. What do you believe Complainant's **sexual orientation** to be? **How** and **when** (approximate date) did you become aware of Complainant's sexual orientation?

I do not know what the complainants sexual orientation is.

CLAIM 4: THE POSTMASTER INFORMED HIM THAT HE WAS BEING PLACED ON EMERGENCY PLACEMENT

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 7/16/2021 |

PS Form **2569**, March 2001

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** **EEO Investigative Affidavit** *(Continuation Sheet)* | 3 | 9 | 1F-914-0031-20 |

8. Were you the management official who made the decision to issue the Complainant the Emergency Placement in Off-Duty Status? If not, please identify the management official by full name and title.

No, I was not. To my knowledge Jessica Maggard, OIC was the management official that made the decision to place the individual on Emergency Placement. But I was not present at the time that the decision was made.

9. If it was not your decision, how were you involved?

I was not involved in any way. I was not yet at work when the decision was made.

10. Was any other management official involved in the decision to issue the Complainant the Emergency Placement in Off-Duty Status? If so, provide their full name and job title and a brief description of how they were involved.

I do not know. I was not yet at work when the decision was made.

11. Explain in detail the circumstances that led up to Complainant being issued the Emergency Placement in Off-Duty Status.

I was not yet at work when the decision was made so I did not witness first hand any of the circumstances that led up to the decision.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | 7/16/2021 |

PS Form **2569**, March 2001

Affidavit D
Page 3 of 11

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE**® <br> **EEO Investigative Affidavit** *(Continuation Sheet)* | **4** | **9** | 1F-914-0031-20 |

12. Was Complainant notified his conduct was not acceptable prior to being issued the Emergency Placement in Off-Duty Status? If so, when and by whom?

In the past the complainant has been notified numerous times on different occasions that their behavior and actions were unacceptable. But immediately prior to the decision being made I am not sure of due to the fact that I was not present because I was not yet at work.

13. Was Complainant provided a reason why he was issued the Emergency Placement in Off-Duty Status?

I don't know because I was not yet at work when the decision was made and the complainant was told.

14. Did Complainant disagree with the reason provided? If so, explain why.

I do not know because I was not present when the decision was made or when the complainant was told.

15. Was complainant's **sex** a factor in any decisions you made or actions you took in when he was issued the Emergency Placement in Off-Duty Status? If so, explain why.

No, I did not make any decisions or take any actions regarding the issuing of the Emergency Placement. I was not present at the time that it was issued.

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature | Date Signed <br> 7/16/2021 |

PS Form **2569**, March 2001

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE** ® <br> EEO Investigative Affidavit *(Continuation Sheet)* | | **5** | **9** | 1F-914-0031-20 |

16. Was complainant's **sexual orientation** a factor in any decisions you made or actions you took when he was issued the Emergency Placement in Off-Duty Status? If so, explain why.

No, I did not make any decisions or take any actions regarding the issuing of the Emergency Placement. I was not present at the time that it was issued.

17. What Postal policies, regulations and/or rules are relevant to this issue? (*Please provide copies of any policies, regulations and/or rules cited.*) Explain how they applied in this case.

I do not know because I am not aware of the specifics of the decision and actions taken because I was not yet at work or present when the decision was made.

18. Complainant identified John Miller as an employee who yells and throws parcels, yet he was not placed on Emergency Placement. Please provide the following for Derek King:

   a. What is the name of John Miller's Supervisor?
      Bryan Mulholland and Lawrence Malone

   b. What is John Miller's job title and work location?
      Rural Carrier at the Loveland Post Office 45140.

   c. What is John Miller's sex?
      Male

   d. What is John Miller's sexual orientation?
      I do not know.

   e. Explain why John Miller was treated differently when Complainant was placed on Emergency Placement.
      I am unaware of any instance that Jon Miller was treated differently when the complainant was placed on Emergency Placement.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 7/16/2021 |

PS Form **2569**, March 2001

| UNITED STATES POSTAL SERVICE® EEO Investigative Affidavit *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 6 | 9 | 1F-914-0031-20 |

19. Are you aware of any other employees under your management within the past year, with similar conduct or who **were not** placed on Emergency Placement? If so, identify the following for each:

I am not aware of any.

a. Full Name

b. Position Title and Supervisor

c. Sex

d. Sexual Orientation

e. Explain how their situation compared to Complainant's and why they were treated differently.

20. Are you aware of any other employees under your management, with similar conduct who were **also** placed on Emergency Placement? If so, identify the following for each:

Yes.

a. Full Name
   Joshua Brett

b. Position Title and Supervisor
   Clerk
   Supervisors – Lawrence Malone and Bryan Mulholland

c. Sex
   Male

d. Sexual Orientation
   I do not know.

e. Explain how their situation compared to Complainant's and why they were treated similarly.

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature | Date Signed 7/16/2021 |

PS Form 2569, March 2001

| UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|
| EEO Investigative Affidavit *(Continuation Sheet)* | 7 | 9 | 1F-914-0031-20 |

Josh was acting inappropriately on the workroom floor and was told by management to stop the behavior. He refused to follow the instructions of management and continued his inappropriate behavior on the workroom floor. He was then placed on Emergency Placement.

21. Did Complainant file a grievance or any other type of complaint regarding this issue?

Not that I am personally aware of.

a. If so, at what stage is the grievance/complaint?

b. If a final decision was reached, what was the result?

*(Please provide a copy of any relevant documentation.)*

HARASSMENT ALLEGATION

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature | Date Signed 7/16/2021 |

PS Form **2569**, March 2001

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®**<br>**EEO Investigative Affidavit** (Continuation Sheet) | **8** | **9** | 1F-914-0031-20 |

22. Did Complainant (or anyone acting on behalf of Complainant) tell you that your or anyone else's actions constituted harassment and/or a hostile work environment for him/her? If so, provide the following:

I was never told by the complainant or anyone acting on their behalf that anyone's actions toward them constituted harassment and/or a hostile work environment.

   a. When were you told?

   b. Who told you?

   c. What specifically were you told?

   d. What was your response/action?

   (If in writing, please provide a copy.)

23. Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about harassment/hostile work environment? If so, provide the following:

I am not aware that any member of management was ever told by the complainant or anyone acting on their behalf that anyone's actions toward them constituted harassment and/or a hostile work environment.

   a. Who was told?

   b. When were they told?

   c. What specifically were they told?

| **I declare under penalty of perjury that the foregoing is true and correct.** | |
|---|---|
| Affiant's Signature | Date Signed |
| | 7/16/2021 |

PS Form 2569, March 2001

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** EEO Investigative Affidavit *(Continuation Sheet)* | | **9** | **9** | 1F-914-0031-20 |

d. What was their response/action?

(If in writing, please provide a copy.)

24. Was an investigation conducted into Complainant's allegations of harassment/hostile work environment? If so, by whom and when?

Yes, it was conducted by an IMIP team. I do not recall the exact dates that they were at our office for the investigation.

25. To your knowledge, what was the outcome of the investigation? Please provide a copy of the report.

To my knowledge there were no findings of harassment and/or hostile work environment other than some members of management using the incorrect name for the complainant on occasion. I do not have a copy of the report in my possession.

26. Was Complainant informed of the outcome? If yes, how?

I personally do not know if the complainant was informed of the outcome.

27. Was any corrective or preventative action necessary? If so, what action was taken?

None was taken that I am aware of.

28. If no investigation was conducted, please explain why.

29. Have you received training on anti-harassment/hostile work environment while employed by the agency? If so, when?

Yes, in my new hire training as well as in my New Supervisor Training when I became a Form 50 Supervisor, Customer Service.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 7/16/2021 |

PS Form **2569**, March 2001

Affidavit D
Page 9 of 11

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** <br> EEO Investigative Affidavit *(Continuation Sheet)* | **10** | **9** | 1F-914-0031-20 |

30. Is the agency anti-harassment/hostile work environment policy posted in your facility?

    Yes.

31. Do you have anything relevant to add that has not already been addressed regarding the accepted claim(s) of this complaint? If so, please explain.

    Not at this time.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | 7/16/2021 |

PS Form **2569**, March 2001



**UNITED STATES**
**POSTAL SERVICE** ®

## Certification

Case Number

4J-450-0002-21

I have read the proceeding attached statement, consisting of **10** pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### USPS Standards of Conduct

Postal Service regulations require all Postal Service employees to cooperate in any Postal Service investigation. Failure to supply the requested information could result in disciplinary action, in accordance with ELM 665.3 and 665.6.

### Oath or Affirmation

Subscribed and (sworn) (affirmed) before me on the _____ day of _____, 20_____.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

_____
Signature of EEO Complaints Investigator

_____
Signature of Affiant

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

Signature of Affiant

PS Form **2571**, October 2015

Date Signed

7/16/2021



**UNITED STATES POSTAL SERVICE**

| 01 | EFFECTIVE DATE<br>04-24-2021 | **Notification Of Personnel Action** | 02 | SOCIAL SECURITY NUMBER<br>XXX-XX-6608 |
|---|---|---|---|---|

**EMPLOYEE INFORMATION**

| # | Field | Value | # | Field | Value |
|---|---|---|---|---|---|
| 03 | EMPLOYEE NAME-LAST | POWELEIT | 38 | PROBATION EXPIR DATE | |
| 04 | EMPLOYEE NAME-FIRST | ERIC | 39 | FLSA STATUS | N - NON-EXEMPT |
| 05 | EMPLOYEE NAME-MIDDLE | J | 40 | PAY LOCATION | 000 |
| 06 | MAILING ADDRESS STREET/BOX/APT | 18 MIAMIVIEW DR | 41 | RURAL CARRIER ROUTE | 00002 |
| | | | 42 | RURAL CARR-L-RTE-ID | |
| 07 | MAILING ADDRESS-CITY | LOVELAND | 43 | RURAL CARR-PAY TYPE | K - 5 DAY HEAVY ROUTE |
| 08 | MAILING ADDRESS-STATE | OH | 45 | RURAL CARR-FLSA | B |
| 09 | MAILING ADDRESS-ZIP+4 | 45140 | 46 | RURAL CARR-COMMIT | Y |
| 10 | DATE OF BIRTH | 04-05-1980 | 47 | RURAL CARR-EMA | G - GOVERNMENT VEHICLE |
| 11 | VETERANS PREFERENCE | 1 - NO PREFERENCE | 48 | RURAL CARR-HOURS | 46 |
| 12 | SEX | | 49 | RURAL CARR-MILES | 24 |
| 13 | ETHNICITY - RACE | | 50 | JOB SEQUENCE | |
| 14 | DISABILITY | | 51 | OCCUPATION CODE | 2325-01XX |
| 15 | LEAVE COMP DATE | 02-07-2015 | 52 | POSITION TITLE | RURAL CARRIER |
| 16 | ENTER ON DUTY DATE | 04-29-2006 | 53 | LABOR DIST CODE | 2500 |
| 17 | RETIREMENT COMP DATE | 02-07-2015 | 54 | DESIGNATION/ACTIVITY | 71/0 |
| 18 | SERV ANNIVERSARY PPYR | | 55 | POSITION TYPE | 1 - FULL TIME |
| 19 | TSP ELIGIBILITY | | 56 | TOUR HOURS | 0 |
| 20 | TSP SERVICE COMP DATE | 02-07-2015 | 57 | ALLOWANCE CODE | |
| 21 | PRIOR CSRS SERVICE | | 58 | EMPLOYMENT TYPE | |
| 22 | FROZEN CSRS TIME | | | **SALARY INFORMATION** | |
| 23 | LEAVE DATA-CATEGORY | 6.00 - HOURS/PP | 59 | PAY RATE CODE | P |
| 24 | LEAVE DATA-CHG PPYR | 05 2030 | 60 | RATE SCHEDULE CODE | R - RURAL |
| 25 | LEAVE DATA-TYPE | 1 - ADVANCE AL - EARN SL | 61 | GRADE/STEP | 00/03 |
| 26 | CREDIT MILITARY SERV | 0000 | 62 | BASE SALARY | 72,486.00 |
| 27 | reserved for future use | | 63 | COLA | 0.00 |
| 28 | RETIREMENT PLAN | E - FERS-FRAE | 64 | COLA ROLL-IN IND | |
| 29 | EMPLOYMENT STATUS | | 65 | NEXT STEP PPYR | 06 2022 |
| 30 | LIFE INSURANCE | C0 - Basic Only | 66 | MERIT ANNIV DATE | |
| 31 | SPECIAL BENEFITS | | 67 | MERIT LUMP SUM | 0.00 |
| | **POSITION INFORMATION** | | 68 | SPECIAL SALARY CODE | |
| 32 | EMPLOY OFFICE-FIN NO | 38-4620 | 69 | PROTECTED RSC | |
| 33 | EMPLOY OFFICE-NAME | LOVELAND PO | 70 | PROTECTED GRADE/STEP | / |
| 34 | EMPLOY OFFICE-ADDRESS | LOVELAND OH 45140-9998 | 71 | EXPIRATION PPYR | |
| | | | 72 | PROTECTED RC HOURS | 00 |
| 35 | DUTY STATION-FIN NO | 38-4620 | 73 | PROTECTED RC MILES | 000 |
| 36 | DUTY STATION-NAME | LOVELAND PO | 74 | RC GUARANTEED SALARY | 0.00 |
| 37 | APPT EXPIRATION DATE | | 75 | ANNUITY AMOUNT | 0.00 |

**NATURE OF PERSONNEL ACTION**

| 77 | NATURE OF ACTION CODE | 893 | 78 | AUTHORITY | 39-USC Sect 1001 |
|---|---|---|---|---|---|
| 79 | DESCRIPTION | STEP INCREASE | | | |

| 80 | CODE | 512 | 81 | CODE | | 82 | CODE | | 83 | CODE | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 84 | REMARKS |
|---|---|

PERSON ID:03611244 PERS ASSGN:03611244
THIS ACTION CHANGES DUE DATE FOR ADVANCEMENT TO NEXT HIGHER STEP.

| 85 | AUTHORIZATION<br>MANAGER, HUMAN RESOURCES<br>SHARED SERVICE CENTER | 86 | PROCESSED DATE | 04-26-2021 |
|---|---|---|---|---|
| | | 87 | PERSONNEL OFFICE ID | |
| | | 88 | OPF LOCATION | |

PS Form 50, January 2009 (Exception to Standard Form 50)     OPF COPY

Exhibit 1
Page 1 of 1
7:51:53 AM     6/7/2021

STD POSITION DESCRIPTION                                    U.S. Postal Service

## RURAL CARRIER  RCS-00

### FUNCTIONAL PURPOSE

Cases, delivers, and collects mail along a prescribed rural route using a vehicle; provides customers on the route with a variety of services.

### DUTIES AND RESPONSIBILITIES

1. Sorts mail in delivery sequence for the assigned route.

2. Receives and signs for accountable mail.

3. Loads mail in vehicle.

4. Delivers mail to customers along a prescribed route and on a regular schedule by a vehicle; collects monies and receipts for accountable mail; picks up mail from customers' roadside boxes.

5. Sells stamps, stamped paper and money orders; accepts C.O.D., registered, certified, and insured mail and parcel post; furnishes routine information concerning postal matters and provides requested forms to customer.

6. Returns mail collected, undeliverable mail, and submits monies and receipts to post office.

7. Prepares mail for forwarding amd maintains records of change of address information.

8. Prepares a daily trip report and maintains a list of the customers on the route.

9. Conducts special surveys when required.

10. Maintains an inventory of stamps and stamped paper as needed to provide service to customers on the route.

11. Provides for mail security at all times.

### SUPERVISION

Manager, Customer Services; Supervisor, Customer Services; or Postmaster

### SELECTION METHOD

Senior Qualified

### BARGAINING UNIT

RURAL CARRIER

(End of Document)

Document Date: 11/02/1994                        **Occupation Code: 2325-01XX**

Exhibit 2
Page 1 of 1



| | | | | |
|---|---|---|---|---|
| 01 | EFFECTIVE DATE 03-13-2021 | **Notification Of Personnel Action** | 02 | SOCIAL SECURITY NUMBER ▓▓▓ |

**EMPLOYEE INFORMATION**

| | | | | |
|---|---|---|---|---|
| 03 | EMPLOYEE NAME-LAST | BRETT | 38 | PROBATION EXPIR DATE |
| 04 | EMPLOYEE NAME-FIRST | JOSH | 39 | FLSA STATUS | N - NON-EXEMPT |
| 05 | EMPLOYEE NAME-MIDDLE | CARL | 40 | PAY LOCATION | 333 |
| 06 | MAILING ADDRESS STREET/BOX/APT | ▓▓▓ | 41 | RURAL CARRIER ROUTE | |
| | | | 42 | RURAL CARR-L-RTE-ID | |
| 07 | MAILING ADDRESS-CITY | ▓▓▓ | 43 | RURAL CARR-PAY TYPE | |
| 08 | MAILING ADDRESS-STATE | ▓▓▓ | 45 | RURAL CARR-FLSA | |
| 09 | MAILING ADDRESS-ZIP+4 | ▓▓▓ | 46 | RURAL CARR-COMMIT | |
| 10 | DATE OF BIRTH | | 47 | RURAL CARR-EMA | |
| 11 | VETERANS PREFERENCE | 1 - NO PREFERENCE | 48 | RURAL CARR-HOURS | |
| 12 | SEX | | 49 | RURAL CARR-MILES | |
| 13 | ETHNICITY - RACE | | 50 | JOB SEQUENCE | |
| 14 | DISABILITY | | 51 | OCCUPATION CODE | 2320-0003 |
| 15 | LEAVE COMP DATE | 10-26-2019 | 52 | POSITION TITLE | SALES,SVCS/DISTRIBUTION ASSOC |
| 16 | ENTER ON DUTY DATE | 11-24-2018 | 53 | LABOR DIST CODE | 4800 |
| 17 | RETIREMENT COMP DATE | 10-26-2019 | 54 | DESIGNATION/ACTIVITY | 11/0 |
| 18 | SERV ANNIVERSARY PPYR | 23 2019 | 55 | POSITION TYPE | 1 - FULL TIME |
| 19 | TSP ELIGIBILITY | | 56 | TOUR HOURS | 0 |
| 20 | TSP SERVICE COMP DATE | 11-24-2018 | 57 | ALLOWANCE CODE | |
| 21 | PRIOR CSRS SERVICE | | 58 | EMPLOYMENT TYPE | |
| 22 | FROZEN CSRS TIME | | **SALARY INFORMATION** | | |
| 23 | LEAVE DATA-CATEGORY | 4.00 - HOURS/PP | 59 | PAY RATE CODE | A |
| 24 | LEAVE DATA-CHG PPYR | 24 2022 | 60 | RATE SCHEDULE CODE | P - POSTAL SERVICE SCH-3 |
| 25 | LEAVE DATA-TYPE | 1 - ADVANCE AL - EARN SL | 61 | GRADE/STEP | 06/DD |
| 26 | CREDIT MILITARY SERV | 0000 | 62 | BASE SALARY | ▓▓▓ |
| 27 | *reserved for future use* | | 63 | COLA | 0.00 |
| 28 | RETIREMENT PLAN | E - FERS-FRAE | 64 | COLA ROLL-IN IND | |
| 29 | EMPLOYMENT STATUS | | 65 | NEXT STEP PPYR | 25 2021 |
| 30 | LIFE INSURANCE | C0 - Basic Only | 66 | MERIT ANNIV DATE | |
| 31 | SPECIAL BENEFITS | | 67 | MERIT LUMP SUM | ▓▓▓ |
| **POSITION INFORMATION** | | | 68 | SPECIAL SALARY CODE | |
| 32 | EMPLOY OFFICE-FIN NO | 38-4620 | 69 | PROTECTED RSC | |
| 33 | EMPLOY OFFICE-NAME | LOVELAND PO | 70 | PROTECTED GRADE/STEP | / |
| 34 | EMPLOY OFFICE-ADDRESS | LOVELAND OH  45140-9998 | 71 | EXPIRATION PPYR | |
| | | | 72 | PROTECTED RC HOURS | |
| 35 | DUTY STATION-FIN NO | 38-4620 | 73 | PROTECTED RC MILES | |
| 36 | DUTY STATION-NAME | LOVELAND PO | 74 | RC GUARANTEED SALARY | |
| 37 | APPT EXPIRATION DATE | | 75 | ANNUITY AMOUNT | 0.00 |

**NATURE OF PERSONNEL ACTION**

| | | | | |
|---|---|---|---|---|
| 77 | NATURE OF ACTION CODE | 893 | 78 | AUTHORITY | 39-USC Sect 1001 |
| 79 | DESCRIPTION | STEP INCREASE | | | |
| 80 | CODE | 512 | 81 | CODE | 82 | CODE | 83 | CODE | | |
| 84 | REMARKS | | | | |

PERSON ID ▓▓▓   PERS ASSGN ▓▓▓
THIS ACTION CHANGES DUE DATE FOR ADVANCEMENT TO NEXT HIGHER STEP.

| | | | | |
|---|---|---|---|---|
| 85 | AUTHORIZATION MANAGER, HUMAN RESOURCES SHARED SERVICE CENTER | | 86 | PROCESSED DATE | 03-15-2021 |
| | | | 87 | PERSONNEL OFFICE ID | |
| | | | 88 | OPF LOCATION | |

PS Form 50, January 2009 (Exception to Standard Form 50)                          OPF COPY

**Exhibit 3**
Page 1 of 3

LOVELAND POST OFFICE
OHIO VALLEY DISTRICT

 UNITED STATES
POSTAL SERVICE

**June 18, 2021**                                            ep: amw

## EMERGENCY PLACEMENT IN OFF-DUTY STATUS

JOSH BRETT ████████████████████

██████████████████████████

CLERK                              CERTIFIED#: 7020 1810 0001 3430 6862
EMPLOYEE IN: ████████           TRACKING#: 9500 1161 5856 1169 5337 44

You were verbally notified you that you were being placed into an off duty status without pay
effective June 17, 2021 and that you would remain in that status until you are advised otherwise.
The reason for this action is:

### IMPROPER CONDUCT

This is written confirmation of your being placed via the Emergency Procedure as outlined in the
National Agreement. On June 17, 2021, you yelled, cussed, and were belligerent on the
workroom floor and toward management.

Accordingly, you have been placed on emergency placement in an off duty status without pay,
pending further investigation. Article 16, Section 7, of the National Agreement states "An
employee may be immediately placed on an off-duty status (without pay) by the Employer, but
remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage,
or failure to observe safety rules and regulations, or in cases where retaining the employee on
duty may result in damage to US Postal Service property, loss of mail or funds, or where the
employee may be injurious to self or others."

You may contact me if you have questions or do not understand the reasons for your Emergency
Procedure status. You have the right to file a grievance under the Grievance-Arbitration
procedure as set forth in Article 15, Section 2, of the National Agreement, within fourteen (14)
days of your receipt of this notice.

Larry Malone
Supervisor, Customer Service

DISC

00276

Exhibit 3
Page 2 of 3

LOVELAND POST OFFICE
OHIO VALLEY DISTRICT


UNITED STATES
POSTAL SERVICE

**NOVEMBER 27, 2020**                                                    *ep: vac*

**EMERGENCY PLACEMENT IN OFF-DUTY STATUS**

**JOSH BRETT**

█████████████████████████████████████

**CLERK**                          **CERTIFIED:** 7020 1810 0001 1328359
**EMPLOYEE IN:** █████████          **TRACKING:**

This letter is written confirmation that you were verbally notified that you were being put
on Emergency Placement with-out pay, effective November 27, 2020.

The reason for this action is: On November 27, 2020, you became physically hostile and
argumentative on the workroom floor. This included you throwing a pop can across the
workroom floor and cursing loudly. Your aggressive actions raised immediate concern that
you may cause physical harm to myself or your coworkers. You were placed in an off duty
status, with-out pay, pending further investigation into your conduct.

Article 16, Section 7, of the National Agreement states, "An employee may be
immediately placed on an off-duty status (without pay) by the Employer, but remain on the
roles where the allegation involves intoxication (use of drugs or alcohol), pilferage, or
**failure to observe safety rules and regulations**, or in cases where retaining the employee
on duty may result in damage to US Postal Service property, loss of mail or funds, or
**where the employee may be injurious to self or others**".

During this time you are only permitted access in areas open to the public within any
Postal Facility. You may contact me if you have questions or do not understand the
reasons for your Emergency Procedure status. You have the right to file a grievance under
the Grievance-Arbitration procedure as set forth in Article 15, Section 2, of the National
Agreement, within fourteen (14) days of your receipt of this notice. Therefore, you are
placed in an off-duty status until further notice.

If your employee contact information for address/telephone is not up to date, you must, no
later than one (1) business day after receipt of this notice, contact HRSSC to have your
information updated and advise your immediate supervisor of your updated address and/or
telephone number.

Lawrence L. Malone III
Supervisor of Customer Service

DISC

Exhibit 3
Page 3 of 3


**UNITED STATES POSTAL SERVICE**

| 01 | EFFECTIVE DATE 03-13-2021 | | *Notification Of Personnel Action* | 02 | SOCIAL SECURITY NUMBER ▓▓▓▓▓ |
|---|---|---|---|---|---|

**EMPLOYEE INFORMATION**

| 03 | EMPLOYEE NAME-LAST | MILLER | 38 | PROBATION EXPIR DATE | |
|---|---|---|---|---|---|
| 04 | EMPLOYEE NAME-FIRST | JOHN | 39 | FLSA STATUS | N - NON-EXEMPT |
| 05 | EMPLOYEE NAME-MIDDLE | W | 40 | PAY LOCATION | 444 |
| 06 | MAILING ADDRESS STREET/BOX/APT | ▓▓▓▓▓▓ | 41 | RURAL CARRIER ROUTE | 00006 |
| | | | 42 | RURAL CARR-L-RTE-ID | |
| 07 | MAILING ADDRESS-CITY | ▓ | 43 | RURAL CARR-PAY TYPE | K - 5 DAY HEAVY ROUTE |
| 08 | MAILING ADDRESS-STATE | | 45 | RURAL CARR-FLSA | B |
| 09 | MAILING ADDRESS-ZIP+4 | ▓▓▓ | 46 | RURAL CARR-COMMIT | Y |
| 10 | DATE OF BIRTH | ▓▓▓ | 47 | RURAL CARR-EMA | G - GOVERNMENT VEHICLE |
| 11 | VETERANS PREFERENCE | 1 - NO PREFERENCE | 48 | RURAL CARR-HOURS | 45 |
| 12 | SEX | | 49 | RURAL CARR-MILES | 28 |
| 13 | ETHNICITY - RACE | | 50 | JOB SEQUENCE | |
| 14 | DISABILITY | | 51 | OCCUPATION CODE | 2325-01XX |
| 15 | LEAVE COMP DATE | 08-19-1992 | 52 | POSITION TITLE | RURAL CARRIER |
| 16 | ENTER ON DUTY DATE | 12-29-1990 | 53 | LABOR DIST CODE | 2500 |
| 17 | RETIREMENT COMP DATE | 08-19-1995 | 54 | DESIGNATION/ACTIVITY | 71/0 |
| 18 | SERV ANNIVERSARY PPYR | | 55 | POSITION TYPE | 1 - FULL TIME |
| 19 | TSP ELIGIBILITY | | 56 | TOUR HOURS | 0 |
| 20 | TSP SERVICE COMP DATE | 08-19-1995 | 57 | ALLOWANCE CODE | |
| 21 | PRIOR CSRS SERVICE | | 58 | EMPLOYMENT TYPE | |
| 22 | FROZEN CSRS TIME | | | **SALARY INFORMATION** | |
| 23 | LEAVE DATA-CATEGORY | 8.00 - HOURS/PP | 59 | PAY RATE CODE | P |
| 24 | LEAVE DATA-CHG PPYR | | 60 | RATE SCHEDULE CODE | R - RURAL |
| 25 | LEAVE DATA-TYPE | 1 - ADVANCE AL - EARN SL | 61 | GRADE/STEP | 00/12 |
| 26 | CREDIT MILITARY SERV | 0000 | 62 | BASE SALARY | ▓▓▓ |
| 27 | *reserved for future use* | | 63 | COLA | 0.00 |
| 28 | RETIREMENT PLAN | 8 - FERS | 64 | COLA ROLL-IN IND | |
| 29 | EMPLOYMENT STATUS | | 65 | NEXT STEP PPYR | |
| 30 | LIFE INSURANCE | Z5-Basic+Opt A+5x B+5x C | 66 | MERIT ANNIV DATE | |
| 31 | SPECIAL BENEFITS | | 67 | MERIT LUMP SUM | ▓ |
| | **POSITION INFORMATION** | | 68 | SPECIAL SALARY CODE | |
| 32 | EMPLOY OFFICE-FIN NO | 38-4620 | 69 | PROTECTED RSC | |
| 33 | EMPLOY OFFICE-NAME | LOVELAND PO | 70 | PROTECTED GRADE/STEP | / |
| 34 | EMPLOY OFFICE-ADDRESS | LOVELAND OH 45140-9998 | 71 | EXPIRATION PPYR | |
| | | | 72 | PROTECTED RC HOURS | 00 |
| 35 | DUTY STATION-FIN NO | 38-4620 | 73 | PROTECTED RC MILES | 000 |
| 36 | DUTY STATION-NAME | LOVELAND PO | 74 | RC GUARANTEED SALARY | 0.00 |
| 37 | APPT EXPIRATION DATE | | 75 | ANNUITY AMOUNT | 0.00 |

**NATURE OF PERSONNEL ACTION**

| 77 | NATURE OF ACTION CODE | 904 | 78 | AUTHORITY | 39-USC Sect 1001 |
|---|---|---|---|---|---|
| 79 | DESCRIPTION | CHANGE IN ROUTE | | | |
| 80 | CODE | 81 CODE | 82 CODE | 83 CODE | |

| 84 | REMARKS | | | |
|---|---|---|---|---|
| | PERSON ID ▓▓▓ | PERS ASSGN ▓▓▓ | | |

| 85 | AUTHORIZATION MANAGER, HUMAN RESOURCES SHARED SERVICE CENTER | 86 | PROCESSED DATE | 04-20-2021 |
|---|---|---|---|---|
| | | 87 | PERSONNEL OFFICE ID | |
| | | 88 | OPF LOCATION | |

PS Form 50, January 2009 (Exception to Standard Form 50)                    OPF COPY

LOVELAND POST OFFICE
OHIO VALLEY DISTRICT

 *UNITED STATES*
*POSTAL SERVICE*

April 15, 2021                                                    *ep: rlh*

**EMERGENCY PLACEMENT IN OFF-DUTY STATUS**

**ERIC POWELEIT**
**18 MIAMIVIEW DR**
**LOVELAND, OH 45140**

**RURAL CARRIER**                    CERTIFIED # 7019112000009679477360
**EMPLOYEE IN: 03611244**            TRACKING # 9505516158581105489707

You were verbally notified you that you were being placed into an off duty status without
pay effective April 14, 2021 and that you would remain in that status until you are advised
otherwise. The reason for this action is:

<div align="center">

**IMPROPER CONDUCT**

</div>

This is written confirmation of your being placed via the Emergency Procedure as outlined
in the National Agreement. On April 14, 2021 management became aware that you made
statements at work that were in direct violation of the Zero Tolerance Policy.

Accordingly, you have been placed on emergency placement in an off duty status without
pay, pending further investigation. Article 16, Section 5, of the National Agreement states
"An employee may be immediately placed on an off-duty status (without pay) by the
Employer, but remain on the rolls where the allegation involves intoxication (use of drugs
or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where
retaining the employee on duty may result in damage to US Postal Service property, loss
of mail or funds, or where the employee may be injurious to self or others."

You may contact me if you have questions or do not understand the reasons for your
Emergency Procedure status. You have the right to file a grievance under the Grievance-
Arbitration procedure as set forth in Article 15, Section 2, of the National Agreement,
within fourteen (14) days of your receipt of this notice.

*Jessica Maggard*
Jessica Maggard
A/Postmaster

DISC

Exhibit 5
Page 1 of 1



**UNITED STATES POSTAL SERVICE**®

## Employee and Labor Relations Manual

Issue 49

September 2020
Transmittal Letter

**A. Introduction**

The Postal Service™ has positioned itself to meet its current and future business objectives by maintaining a skilled and ready workforce that is diverse, engaged, efficient, and safe. This enables the Postal Service to successfully perform our long-standing mission of providing affordable, reliable, universal service.

The *Employee and Labor Relations Manual* (ELM) is a critical tool for understanding and implementing the programs and processes that contribute to this goal.

**B. Explanation**

ELM issue 49 was published in September 2020 and includes all revisions published in the *Postal Bulletin* through July 30, 2020. The Summary of Changes contains detailed information about all revisions since the publication of ELM issue 48 in March 2020. All changes published in the *Postal Bulletin* are effective immediately.

**C. Availability**

The ELM is available online and updated periodically; however, all ELM changes that are published in the *Postal Bulletin* are effective immediately. ELM issues 12.1 through 48 are available on both the Postal Service PolicyNet website and at *https://about.usps.com/manuals/elm/elmarch.htm*.

**D. Comments and Questions.**

Send comments and questions to:

> HR STRATEGIC PLANNING SPECIALIST, PRINCIPAL
> EMPLOYEE RESOURCE MANAGEMENT
> US POSTAL SERVICE
> 475 L'ENFANT PLZ SW RM 9301
> WASHINGTON DC 20260-9301

*Simon Storey*
*Vice President*
*Employee Resource Management*

512.92 **Procedures**

512.921 **Leave Earned in Prior Service in the Postal Service**

See 512.734.

512.922 **Leave Earned at Another Agency**

When an employee makes application for recredit of leave earned in another agency, the Postal Service contacts the other agency to determine if leave was forfeited at the time of separation. If not, the agency is asked to certify the leave account. The following applies:

a.  If the agency cannot find the leave record, the Postal Service will accept a statement or other evidence of leave credits. The statement should include an estimate of leave credit and reflect the factors forming the basis of the estimate.

b.  If the leave record or statement justifies it, the amount of leave shown is recredited.

512.923 **Leave Buy-Back — OWCP**

The following provisions concern leave buy-back:

a.  Under the provisions of the Injury Compensation Program, current employees may be permitted to buy back sick and annual leave they used while awaiting adjudication of their cases by OWCP. In traumatic injury cases, employees may be permitted to buy back only the leave that is used after the end of the 45-day continuation-of-pay period.

b.  When the employee buys back annual leave for a previous year that exceeds the applicable maximum (see 512.32), the excessive leave is automatically forfeited. Employees are allowed to buy back only those hours that can be carried forward.

c.  Some loss of leave may occur when the period of absence is changed to an LWOP status as a result of leave buy-back. For every 80 hours of paid leave bought back and changed to LWOP, both annual and sick leave are adjusted by the amount earned in 1 pay period. The employee must be informed of this so there will be no misunderstanding.

See Exhibit 514.4, item e, for further information.

## 513  Sick Leave

513.1 **Purpose**

513.11 **Sick Leave for Employee Incapacitation**

Sick leave insures employees against loss of pay if they are incapacitated for the performance of duties because of illness, injury, pregnancy and confinement, and medical (including dental or optical) examination or treatment.

513.12 **Sick Leave for Dependent Care**

A limited amount of sick leave may also be used to provide for the medical needs of a family member. Nonbargaining unit employees, and bargaining unit employees if provided in their national agreements, are allowed to take up to 80 hours of their accrued sick leave per leave year to give care or

otherwise attend to a family member (as defined in 515.2(a), 515.2(b), and 515.2(c) with an illness, injury, or other condition that, if an employee had such a condition, would justify the use of sick leave. If leave for dependent care is approved, but the employee has already used the maximum 80 hours of sick leave allowable, the difference is charged to annual leave or to LWOP at the employee's option. (See 515 for information about FMLA entitlement to be absent from work.)

### 513.2   Accrual and Crediting

### 513.21   Accrual Chart

Time accrued is as follows:

| Employee Category | Time Accrued |
|---|---|
| Full-time employees (except as noted below). | 4 hours for each full biweekly pay period — i.e., 13 days (104 hours) per 26-period leave year. |
| Non-executive, non-bargaining full-time career employees, and non-career employees converted to those positions, with a career appointment date on or after October 6, 2012, who are without any prior federal or USPS service that was creditable at the time of that career appointment toward the leave computation date. This accrual rate never applies to an employee who earned sick leave at the higher accrual rate above. | 3 hours for each full biweekly pay period — i.e., 9.75 days (78 hours) per 26-period leave year. |
| Part-time employees (except as noted below). | 1 hour for each unit of 20 hours in pay status up to 104 hours (13 days) per 26-period leave year. |
| Non-executive, non-bargaining part-time career employees, and non-career employees converted to those positions, with a career appointment date on or after October 6, 2012, who are without any prior federal or USPS service that was creditable at the time of that career appointment toward the leave computation date. This accrual rate never applies to an employee who earned sick leave at the higher accrual rate above. | 1 hour for each unit of 26.66 hours in pay status up to 78 hours (9.75 days) per 26-period leave year. |

### 513.22   Crediting

### 513.221   General

Sick leave is credited at the end of each biweekly pay period in which it is earned. Sick leave (earned and unused) accumulates without limitation.

### 513.222   Part-Time Employees

Part-time employees are not credited with sick leave in excess of 13 days (104 hours) per 26-period leave year.

513.223 **Leave Replacements for Rural Carriers**

Substitute rural carriers or RCAs assigned to and serving (a) a vacant route or (b) a route from which the rural carrier is on extended leave, and RCAs assigned to and serving an auxiliary route are credited with sick leave starting with the first pay period following the 90-day qualifying period.

513.224 **Auxiliary Rural Carriers**

Auxiliary rural carriers are not credited with sick leave in excess of 104 hours per leave year. If they serve in another capacity (e.g., flexible employees) in the Post Office, that service is also used in computing sick leave credit (see 513.21).

513.225 **Substitute Rural Carriers in Dual Appointment**

Substitute rural carriers in dual appointments earn sick leave only when their service is performed in a position that is subject to the Civil Service Retirement Act. The leave can be used only while they are serving in a leave-earning position.

513.226 **Leave Credit Adjustment for LWOP**

See 514.24.

513.3 **Authorizing Sick Leave**

513.31 **Policy**

513.311 **General**

Sick leave cannot be granted until it is earned, except as provided in 513.5.

513.312 **Restriction**

An employee who is in sick leave status may *not* engage in any gainful employment unless prior approval has been granted by appropriate authority (see 662, Federal Standards of Ethical Conduct).

513.32 **Conditions for Authorization**

Conditions for authorization are as follows:*

| Conditions | |
|---|---|
| Illness or injury. | If the employee is incapacitated for the performance of official duties. |
| Pregnancy and confinement. | If absence is required for physical examinations or periods of incapacitation. |
| Medical, dental, or optical examination or treatment. | If absence is necessary during the employee's regular scheduled tour. |
| For eligible employees (as indicated in 513.12), care for a family member (as defined in 515.2(a) 515.2(c), and 515.2(e)). | Up to 80 hours of accrued sick leave per leave year if the illness, injury, or other condition is one that, if an employee had such a condition, would justify the use of sick leave. |

| Conditions | |
|---|---|
| Contagious disease. A contagious disease is a disease ruled as requiring isolation, quarantine, or restriction of movement of the patient for a particular period by the health authorities having jurisdiction. | If the employee (1) must care for a family member afflicted with a contagious disease, (2) has been exposed to a contagious disease and would jeopardize the health of others, or (3) has evidence supplied by the local health authorities or a certificate signed by a physician certifying the need for the period of isolation or restriction. |
| Medical treatment for disabled veterans. | If the employee (1) presents a statement from a duly authorized medical authority that treatment is required, and (2) when possible, gives prior notice of the definite number of days and hours of absence. (Such information is needed for work scheduling purposes.) |
| Bereavement Leave for Non-Bargaining Unit Employees | This type of leave is available for all career non-bargaining unit employees. Employees may use up to 3 workdays of annual leave, sick leave, or leave without pay to make arrangements necessitated by the death of a family member or attend the funeral of a family member. Authorization of leave beyond three workdays is subject to the conditions and requirements of ELM 510. For employees opting to use available sick leave, the leave will be charged to sick leave for dependent care, if available. Documentation evidencing the death of the employee's family member is required only when the supervisor deems such documentation desirable for the protection of the Postal Service's interests. Family Member is defined as a: a. Son or daughter — biological or adopted child, stepchild, daughter-in-law, or son-in-law; b. Spouse; c. Parent, mother-in-law, or father-in-law; d. Sibling — brother, sister, brother-in-law, or sister-in-law; or e. Grandparent. The applicable provisions regarding bereavement leave for bargaining unit employees are in the respective bargaining unit's applicable national agreement. |

\* Sick leave, annual leave, or LWOP is granted as may be necessary for any of these conditions in accordance with normal leave policies and collective bargaining agreements. (See also 513.6 and 514.22.)

513.33 **Requests for Sick Leave**

513.331 **General**

Except for unexpected illness or injury situations, sick leave must be requested on PS Form 3971 and approved in advance by the appropriate supervisor.

513.332 **Unexpected Illness or Injury**

An exception to the advance approval requirement is made for unexpected illness or injuries; however, in this situation the employee must notify appropriate postal authorities of his or her illness or injury and expected duration of the absence as soon as possible.

When sufficient information is provided to determine that the absence may be covered by the Family and Medical Leave Act (FMLA), the following Department of Labor forms will be mailed to the employee's address of record along with a return envelope:

a.   WH 381, *FMLA Notice of Eligibility and Rights and Responsibilities;* and

b.   One of the following forms, as appropriate:

   (1)   WH-380-E, *FMLA Certification of Health Care Provider for Employee's Serious Health Condition.*

   (2)   WH-380-F, *FMLA Certification of Health Care Provider for Family Member's Serious Health Condition.*

   (3)   WH-385, *FMLA Certification for Serious Injury or Illness of Covered Servicemember — for Military Family Leave.*

*Note:* These forms are provided for the employee's convenience, as they solicit all required information; however, employees may use another format as long as it provides complete and sufficient information as required by the FMLA. The information provided should relate only to the specific reason associated with the request for leave protection.

PS Form 3971, *Request for or Notification of Absence,* will be provided to the employee upon his or her return to duty.

When sufficient information to determine that the absence is covered by FMLA is not provided in advance of the absence, the employee must submit a PS Form 3971 and applicable medical or other certification upon returning to duty and explain the reason for the absence. Employees may be required to submit acceptable evidence of incapacity to work as outlined in the provisions of 513.36, Sick Leave Documentation Requirements, or noted on the reverse of PS Form 3971 or on Department of Labor Form WH-381, as applicable.

The supervisor approves or disapproves the leave request. When the request is disapproved, the absence may be recorded as annual leave or, if appropriate, as LWOP or AWOL, at the discretion of the supervisor as outlined in 513.342.

513.34 **PS Form 3971, Request for or Notification of Absence**

513.341 **General**

Request for sick leave is made in writing, in duplicate, on PS Form 3971. If the absence is to care for a family member, this fact is to be noted in the Remarks section.

513.342 **Approval or Disapproval**

The supervisor is responsible for approving or disapproving requests for sick leave by signing PS Form 3971, a copy of which is given to the employee. If a supervisor does not approve a request for leave as submitted, the Disapproved block on the PS Form 3971 is checked and the reason(s) given, in writing, in the space provided. When a request is disapproved, the granting of any alternate type of leave, if any, must be noted along with the reason for the disapproval. AWOL determinations must be similarly noted.

513.35 **Postmaster Absences**

There are special requirements for postmaster absences:

a.  *Leave Replacement.* A postmaster whose absence requires the hiring of a leave replacement must notify the appropriate official.

b.  *Absence Over 3 Days.* A postmaster who is absent in excess of 3 days must submit PS Form 3971 within 2 days of returning to duty or, for an extended illness, at the end of each accounting period.

513.36 **Sick Leave Documentation Requirements**

513.361 **Three Days or Less**

For periods of absence of 3 days or less, supervisors may accept the employee's statement explaining the absence. Medical documentation or other acceptable evidence of incapacity for work or need to care for a family member is required only when the employee is on restricted sick leave (see 513.39) or when the supervisor deems documentation desirable for the protection of the interests of the Postal Service. Substantiation of the family relationship must be provided if requested.

513.362 **Over Three Days**

For absences in excess of 3 days, employees are required to submit medical documentation or other acceptable evidence of incapacity for work or of need to care for a family member and, if requested, substantiation of the family relationship.

513.363 **Extended Periods**

Employees who are on sick leave for extended periods are required to submit at appropriate intervals, *but not more frequently than once every 30 days,* satisfactory evidence of continued incapacity for work or need to care for a family member unless some responsible supervisor has knowledge of the employee's continuing situation.

513.364 **Medical Documentation or Other Acceptable Evidence**

When employees are required to submit medical documentation, such documentation should be furnished by the employee's attending physician or other attending practitioner who is performing within the scope of his or her practice. The documentation should provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her normal duties for the period of absence. Normally, medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.

Supervisors may accept substantiation other than medical documentation if they believe it supports approval of the sick leave request.

513.365 **Failure to Furnish Required Documentation**

If acceptable substantiation of incapacitation is not furnished, the absence may be charged to annual leave, LWOP, or AWOL.

513.37 **Return to Duty**

An employee returning from an FMLA-covered absence because of his or her own incapacitation must provide documentation from his or her health care provider that he or she is able to perform the functions of the position with or without limitation. Limitations described are accommodated when practical. Bargaining unit employees must also comply with requirements in 865.

513.38 **Performance Ability Questioned**

When the reason for an employee's sick leave is of such a nature as to raise justifiable doubt concerning the employee's ability to satisfactorily and/or safely perform duties, a *fitness-for-duty medical examination* is requested through appropriate authority. A complete report of the facts, medical and otherwise, should support the request.

513.39 **Restricted Sick Leave**

513.391 **Reasons for Restriction**

Supervisors or installation heads who have evidence indicating that an employee is abusing sick leave privileges may place the employee on the restricted sick leave list. In addition, employees may be placed on the restricted sick leave list after their sick leave use has been reviewed on an individual basis and the following actions have been taken:

a. Establishment of an absence file.

b. Review of the absence file by the immediate supervisor and higher levels of management.

c. Review of the absences during the past quarter of LWOP and sick leave used by employees. (No minimum sick leave balance is established below which the employee's sick leave record is automatically considered unsatisfactory.)

d. Supervisor's discussion of absence record with the employee.

e. Review of the subsequent quarterly absences. If the absence logs indicate no improvement, the supervisor is to discuss the matter with the employee to include advice that if there is no improvement during the next quarter, the employee will be placed on restricted sick leave.

513.392 **Notice and Listing**

Supervisors provide written notice to employees that their names have been added to the restricted sick leave listing. The notice also explains that, until further notice, the employees must support *all* requests for sick leave by medical documentation or other acceptable evidence (see 513.364).

513.393 **Recision of Restriction**

Supervisors review the employee's PS Form 3972 for each quarter. If there has been a substantial decrease in absences charged to sickness, the employee's name is removed from the restricted sick leave list and the employee is notified in writing of the removal.

### 513.4 Charging Sick Leave

#### 513.41 Full-Time Employees

##### 513.411 General

General provisions are as follows:

a. Sick leave is not charged for legal holidays or for nonworkdays established by Executive Order.

   ***Exception:*** If employees shown to be eligible in 434.422 elect to receive annual leave credit in lieu of holiday leave pay (see 512.65) and then become ill during their scheduled tour, sick leave may be charged to supplement work hours, up to the limit of their regular work schedule, on the holiday worked, provided the requirements of section 513.32 are met.

b. Sick leave may be charged on any scheduled workday of an employee's basic workweek.

##### 513.412 Minimum Unit Charge

Minimum unit charges are as follows:

| Employee Category | Minimum Unit Charge |
|---|---|
| All full-time nonexempt employees. | One-hundredth of an hour (0.01 hour). |
| Full-time exempt. | (See 519.7) |
| Regular rural carriers. | 1 day (8 hours). |
| Substitute rural carriers and RCAs when in a leave-earning status and serving: | |
| 1. Vacant routes. | 1 day (8 hours). |
| 2. Routes from which rural carriers are on extended leave. | 1 day (8 hours). |
| RCAs when in a leave-earning status and servicing auxiliary routes. | 1 hour. |
| Auxiliary rural carriers. | 1 hour. |
| Triweekly rural carriers. | (See 512.54). |

##### 513.413 Special Situations

The following provisions concern special situations:

a. *A–E Postmasters.* A–E postmasters are charged sick leave the same as annual leave (see 512.524).

b. *Rural Carriers.* Rural carriers who are absent because of illness on Saturdays are charged sick leave based on the computations used for their annual leave charges (see 512.53).

c. *Replacement Rural Carriers.* Substitute rural carriers and RCAs in a leave earning status and serving (a) vacant routes and (b) routes from which rural carriers are on extended leave are charged sick leave in the same manner as rural carriers. RCAs in a leave earning status and serving auxiliary routes are charged sick leave in the same manner as auxiliary rural carriers.

d. *Triweekly Rural Carriers.* Triweekly rural carriers are charged sick leave the same as for annual leave (see 512.54).

513.42 **Part-Time Employees**

513.421 **General**

General provisions are as follows:

a.   Absences due to illness are charged as sick leave on any day that an hourly rate employee is scheduled to work except national holidays.

**Exception:** If employees shown to be eligible in 434.422 elect to receive annual leave credit in lieu of holiday leave pay (see 512.65), sick leave may be charged to supplement work hours, up to the limit of their regular work schedule, on the holiday worked, provided the requirements of section 513.32 are met.

b.   Except as provided in 513.82, paid sick leave may not exceed the number of hours that the employee would have been scheduled to work, up to:

(1)   A maximum of 8 hours in any one day.

(2)   40 hours in any one week.

(3)   80 hours in any one pay period. If a dispute arises as to the number of hours a part-time flexible employee would have been scheduled to work, the schedule is considered to have been equal to the average hours worked by other part-time flexible employees in the same work location on the day in question.

c.   Limitations in 513.421b apply to paid sick leave only and not to a combination of sick leave and workhours. However, part-time flexible employees who have been credited with 40 hours or more of paid service (work, leave, or a combination of work and leave) in a service week are not granted sick leave during the remainder of that service week. Absences, in such cases, are treated as nonduty time that is not chargeable to paid leave of any kind. (Sick leave is not intended to be used to supplement earnings of employees.)

513.422 **Minimum Unit Charge**

Minimum unit charges are as follows:

| Employee Category | Minimum Unit Charge |
|---|---|
| All part-time nonexempt employees. | One-hundredth of an hour (0.01 hour). |
| Part-time exempt employees. | (See 519.7.) |

513.5 **Advanced Sick Leave**

513.51 **Policy**

513.511 **May Not Exceed Thirty Days**

Sick leave not to exceed 30 days (240 hours) may be advanced in cases of an employee's serious disability or illness if there is reason to believe the employee will return to duty. Sick leave may be advanced whether or not the employee has an annual leave or donated leave balance.

513.512 **Medical Document Required**

Every request for advanced sick leave must be supported by medical documentation of the illness.

Exhibit 6
Page 10 of 21

# 6 Employee Relations

## 610 Employee Services

### 611 Scope

Service programs help employees understand their jobs better and eliminate many distractions caused by personal job-related problems. Employees are encouraged to ask supervisors or officials for advice or assistance on important matters even if unrelated to business. The vice president of Employee Resource Management must approve employee services not listed in this subchapter.

### 612 Information Media

#### 612.1 Responsibility

Supervisors inform their employees on all official matters affecting them through printed material or bulletin boards.

#### 612.2 Methods

##### 612.21 Official Directives

Major subject manuals are the basic source documents outlining Postal Service operational policies. Postal Bulletins, management instructions, handbooks, memorandums of policy, etc., instruct, explain, or detail the implementation of a specific policy or regulation.

##### 612.22 Unofficial Communications

Newsletters, memos, etc., are communications used for information only.

##### 612.23 Bulletin Boards

###### 612.231 Utility and Convenience

Bulletin boards serve as a means of providing to employees information of interest, such as that required by law or regulation, official management information, and items of general interest. Bulletin boards are to be placed in sufficient numbers and in locations convenient to employees — at or near employee entrances, lunchrooms, locker rooms, or elsewhere in the work area. It is useful to separate board space into broad categories for different types of material, such as:

a. *Required by Law or Regulation.* Required material that tends to be permanent includes notices about:

  (1) Local fire emergency plan.

665 **Postal Service Standards of Conduct**

665.1 **General Expectations**

665.11 **Loyalty**

Employees are expected to be loyal to the United States government and uphold the policies and regulations of the Postal Service.

665.12 **Performance of Public Duties**

Employees are expected to serve on juries and to act as witnesses when summoned by official sources.

665.13 **Discharge of Duties**

Employees are expected to discharge their assigned duties conscientiously and effectively.

665.14 **Reporting Violations**

Allegations of violations of postal laws by postal employees, including mail theft, must be reported immediately to the Office of Inspector General.

665.15 **Obedience to Orders**

Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing to the official in charge of the installation or may appeal through official channels.

665.16 **Behavior and Personal Habits**

Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal employees be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off-duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute.

665.17 **Reporting Requirements for Sex Offenders**

An employee who is required by the law of any jurisdiction to register as a sex offender must report in writing that he or she is subject to this requirement, as follows:

a. Any employee who is not an Area or Headquarters employee must make their report to the District Manager of Human Resources; Area employees must make their report to their Area Manager of Human Resources; and Headquarters employees must make their report to the Headquarters Manager, Corporate Personnel.

September 2020 **643**

j.   *Office equipment* — includes, but is not limited to, personal computers, printers and modems, computer software (including Web browsers), telephones, facsimile machines, photocopiers, consumable office products, and office supplies.

k.   *Personnel action* — means an appointment, promotion, adverse action or other disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, a decision concerning pay, benefits, awards, education or training that may reasonably be expected to lead to an appointment, promotion, or performance evaluation, a decision to order psychiatric testing or evaluation, or any other significant change in duties, responsibilities, or working conditions.

# 670   Diversity, Equal Employment Opportunity, and Prevention of Employment Discrimination

## 671   Diversity Overview

All employees share responsibility for achieving the Postal Service's goals to build a diverse and inclusive workforce in which all employees are afforded equal employment opportunity. The Postal Service believes that its efforts to achieve this goal will enhance the ability of the Postal Service and its employees to accomplish the following:

■   Deliver the high level of service demanded by its customers and the competitive environment.

■   Meet its responsibilities to the American public.

The Postal Service promotes:

■   The diversity of its workforce. We strive to build an inclusive environment that respects the uniqueness of every individual and encourages the contributions of people from different backgrounds, experiences, and perspectives.

■   Diversity and inclusion in a manner that instills confidence that employment decisions are made in accordance with our equal employment opportunity policies — where all employees are treated fairly based on merit and neither advantaged nor disadvantaged based on factors like sex, sexual orientation, age, race, religion, national origin, military service, or disability.

The Postal Service reflects strategies to achieve diversity and inclusion by providing equal employment opportunity and refraining from discrimination in the following areas:

■   Recruitment.

■   Selection.

■   Promotion (including succession planning and opportunities for training and development).

■   Retention of employees.

The Postal Service expects its executives and managers to integrate inclusive values and strategies into the Postal Service's day-to-day personnel management.

## 672 Federal Laws and Regulations, Equal Employment Opportunity, and Prohibiting Employment Discrimination

### 672.1 Laws

These federal laws require the Postal Service to provide equal employment opportunity, to refrain from employment discrimination, or both:

a. Title VII of the Civil Rights Act of 1964, as amended, which provides for equal employment and prohibits discrimination based on race, color, religion, sex, or national origin.

b. The Pregnancy Discrimination Act of 1978 amended Title VII to include discrimination because of pregnancy, childbirth, or a medical condition related to pregnancy or childbirth.

c. The Age Discrimination in Employment Act of 1967, which prohibits employment discrimination based on age for individuals 40 and older.

d. The Rehabilitation Act of 1973, which provides for equal employment opportunity and prohibits discrimination based on disability.

e. The Architectural Barriers Act of 1968, which requires the Postal Service to make its facilities accessible to individuals with disabilities.

f. The Genetic Information Nondiscrimination Act (GINA) of 2008, which prohibits discrimination based on genetic information.

g. The Equal Pay Act of 1963, which prohibits discrimination in pay based on sex.

### 672.2 Equal Employment Opportunity Regulations

The Equal Employment Opportunity Commission has issued regulations and management directives that govern the Postal Service's efforts to provide equal employment opportunity and to prevent discrimination:

a. 29 C.F.R. part 1614 governs federal sector equal employment opportunity complaints of discrimination.

b. Equal Employment Opportunity Commission Management Directive 715 provides policy guidance and standards for establishing, maintaining, and reporting on the Postal Service's program of equal employment opportunity.

c. Equal Employment Opportunity Commission Management Directive 110 provides policy guidance and standards for processing complaints of discrimination.

### 673  Postal Service Policy

#### 673.1  General Information on Policies

Postal Service policies on diversity, equal employment opportunity, and prevention of employment and workplace harassment can be found on PolicyNet under Memorandums of Policy (MOP). To locate MOPs, go to the Postal Service's *Blue* page. In the left-hand column, under "Essential Links," click PolicyNet from the drop-down menu. Click MOPs.

#### 673.2  Diversity and Inclusion Statement

The Diversity and Inclusion statement expresses:

a.    The Postal Service's overall focus on diversity and inclusion, and

b.    How diversity and inclusion relates to the mission of the Postal Service.

#### 673.3  Equal Employment Opportunity Policy Statement

The Equal Employment Opportunity Policy Statement covers the Postal Service's legal obligations:

a.    To provide equal employment opportunity and prevent discrimination in employment, and

b.    To affirm the importance of these policies to the mission of the Postal Service.

#### 673.4  Policy on Workplace Harassment

The Policy on Workplace Harassment covers:

a.    The Postal Service's commitment to providing a work environment free of harassment.

b.    Management's responsibility to:

(1)    Prevent harassment, and

(2)    Investigate complaints of harassment.

#### 673.5  Complaint Processes

Depending on the nature of the complaint and the status of the employee, Postal Service employees may use several processes to pursue complaints against the Postal Service for alleged violations of the Postal Service's equal employment opportunity and anti-discrimination policies.

For more information on these processes, see sections 666.2 and 666.3, which include a process to pursue complaints for discrimination that complies with the Equal Employment Opportunity Commission's regulations.

The Postal Service is committed to fair treatment of all its employees. Harassment and disparate treatment based on actual or perceived sexual orientation or identity are not permitted or condoned. Complaints of discrimination based on sexual orientation or identity are not permitted under Title VII of the Civil Rights Act of 1964. However, employees should report any variance from this policy to a management official at the earliest opportunity.

673.6 **Accountability for Diversity and Inclusion, Equal Employment Opportunity, and Prevention of Discrimination**

673.61 **Employees**

All employees are expected to treat coworkers with dignity and respect. Employees must refrain from workplace harassment or other discrimination based on the following:

- Race.
- Sex (including sexual orientation, gender identity, and gender stereotypes).
- National origin.
- Any other category protected by law or Postal Service policy.

For additional information, refer to Publication 553, *Employee's Guide to Understanding, Preventing, and Reporting Harassment.*

673.62 **Management**

All executives, managers, and supervisors share in the responsibility for the following:

a. Promoting diversity and inclusion,

b. Promoting equal employment opportunity, and

c. Preventing discrimination.

For additional information, refer to the following resources:

- Publication 552, *Manager's Guide to Understanding, Investigating, and Preventing Harassment.*
- The Policy on Workplace Harassment.
- The Diversity and Inclusion Statement.

674 **Organizational Responsibilities**

674.1 **Chief Human Resources Officer and Executive Vice President**

The Chief Human Resources Officer (CHRO) and Executive Vice President fills the following roles:

- The Postal Service's Equal Employment Opportunity (EEO) Director under Equal Employment Opportunity Commission regulations.
- The principal advisor to the Postmaster General and Chief Executive Officer.

Under the authority of the CHRO, the vice presidents of Employee Resource Management and Labor Relations are responsible for recommending policies and developing programs to address the following:

- Diversity and inclusion.
- Equal employment opportunity.
- The prevention of discrimination.

674.2 **Functional Organizations**

674.21 **Employee Resource Management**

The vice president of Employee Resource Management is responsible for overseeing the Postal Service Diversity and Inclusion Program. This encompasses national employment and diversity activities, including the following:

a.  Developing equal employment opportunity and anti-discrimination plans at the following levels:

(1)  Headquarters.

(2)  Area.

(3)  Performance cluster.

b.  Developing and implementing Postal Service policies related to the employment, placement, and promotion of employees within a diverse workforce. This includes a particular responsibility for protection of the rights of veterans, disabled veterans, and individuals with disabilities.

674.22 **Labor Relations**

The vice president of Labor Relations is responsible for the Postal Service EEO complaint processing program. This official or his or her designees render the final agency decision of the Postal Service regarding complaints of discrimination emanating from employees or applicants for employment.

674.3 **Inclusiveness and Diversity Advisory Committees**

The guidelines for establishing Inclusiveness and Diversity Advisory Committees appear in Management Instruction EL-670-2009-7, *Inclusiveness and Diversity Advisory Committees.*

675 **Special Emphasis Programs**

675.1 **Nature of Programs**

The Postal Service has established special emphasis programs within the framework of existing laws, policies, and regulations. These programs focus attention on the special needs, obstacles, and concerns of specified groups.

675.2 **Objectives**

The primary objectives of the special emphasis programs are to ensure the following:

a.  All employees are fully utilized in the Postal Service workforce.

b.  All employees have an equal opportunity to compete in every aspect of employment including, but not limited to, the following:

(1)  Recruitment.

(2)  Hiring.

(3)  Retention.

(4)  Training.

(5)  Career development.

(6)  Promotions.

These programs do not seek preferential treatment; instead, they ensure equality of opportunity through the following:

a.  Positive actions taken to eliminate barriers and

b.  A continued commitment to achieving the goals and objectives set by Postal Service policy.

### 675.3 Additional Information

For information on the Rehabilitation Act of 1973, reasonable accommodation, disability definitions, and employment and placement issues, review these resources:

■  Handbook EL-307, *Reasonable Accommodation, An Interactive Process*.

■  The Postal Service Reasonable Accommodation Assistance Center (PRAAC) on the Postal Service Intranet website.

## 676 On-Site EEO Evaluations

[Reserved.]

# 680 Participation in Supervisory and Managerial Organizations

## 681 Participation Rights

Postal personnel have the right, freely and without fear of penalty or reprisal, to join or assist a supervisory or managerial organization or to refrain from such activity. Personnel are protected in the exercise of such rights. No interference, restraint, coercion, or discrimination to encourage or discourage membership in such an organization will be effected in the Postal Service. The limitations set forth in Title 39, United States Code 1004(b), however, are dispositive on whether organizations are officially recognized by the Postal Service as a matter of law for consultative purposes.

## 682 Postal Service Representation at Organization Gatherings

### 682.1 Explanation

The Postal Service recognizes the need for effective rapport with the postmasters' and supervisors' associations. Part 682 establishes policies and procedures for official Postal Service representation at meetings and conventions of the National Association of Postmasters of the United States (NAPUS), the National League of Postmasters of the United States (League), and the National Association of Postal Supervisors (NAPS). Any requested exceptions to these policies and procedures must be submitted in advance to the vice president of Labor Relations.

and maintenance procedures, based on the latest criteria from OSHA, are available on the Safety Resources Web site.

### 811.3 Off-site Safety

The Postal Service safety and health program and OSHA standards and regulations cover Postal Service employees who perform Postal Service duties in private employers' establishments, as well as while delivering mail and performing other activities off Postal Service property. To ensure that employees are protected, safe and healthful working conditions must be provided through:

a.   Engineering and administrative controls,

b.   Personal protective equipment (PPE),

c.   Enforcement of safe work practices,

d.   Withdrawal of employees from the private sector facility, and

e.   If necessary, curtailment of mail.

### 811.4 Records Retention and Disposition

### 811.41 Records Control Schedule

General retention and disposal instructions for the records and forms referenced in 810 through 850 can be found in the appendix, Records Control Schedules. Additional information can be found in Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management,* section 6-3.3, Retention Periods, and in the Electronic Records and Information Management Systems (eRIMS) on the intranet.

### 811.42 PS Form 8214, Certificate of OSHA, Safety, and Environmental Records Transfer

OSHA requires each establishment to maintain records and produce them when requested. The purpose of PS Form 8214 is to ensure that these required records are transferred when there is a change in establishment or installation head at a Post Office, station, or branch.

## 812 Management Responsibilities

### 812.1 Headquarters

### 812.11 Postmaster General and Chief Executive Officer

The Postmaster General and chief executive officer is responsible for establishing and maintaining an effective, comprehensive national occupational safety and health program that fully complies with the OSH Act.

### 812.12 Chief Operating Officer and Executive Vice President

The chief operating officer and executive vice president ensures that area management implements and maintains effective area safety and health programs by, among other activities, monitoring Area Executive Safety and Health Committee activities during quarterly business reviews.

### 812.13 **Officers**

Officers of the Postal Service are delegated the authority and responsibility to ensure safe and healthful working conditions and practices within their functional areas and to ensure compliance with OSHA standards and regulations.

### 812.14 **Vice President of Employee Resource Management**

The vice president of Employee Resource Management is delegated the authority and responsibility to administer and evaluate the national safety and health program.

## 812.2 **Area Offices**

### 812.21 **Vice President of Area Operations**

Vice presidents of Area Operations are responsible for providing effective safety and health programs in their areas and for ensuring compliance with OSHA standards and regulations.

### 812.22 **Area Human Resources Managers**

Area Human Resources managers are responsible for monitoring area safety and health programs and performance in compliance with national policy and direction.

## 812.3 **District Managers**

### 812.31 **District Managers**

District managers are responsible for implementing the occupational safety and health programs within their jurisdiction. Additionally, they must develop a district accident reduction plan (ARP) using the Safety Toolkit to achieve the corporate objectives of reducing injury, illness, and motor vehicle accidents. Refer to the Safety Resources Web site and the Safety Toolkit for additional information on developing, implementing, and monitoring ARPs.

### 812.32 **Installation Heads and Managers**

Installation heads and managers are responsible for:

a.   Employee safety and health;

b.   Implementation of the occupational safety and health program;

c.   Compliance with OSHA standards and regulations, including maintenance of the accident reports, OSHA Log, and Summary of Injuries and Illnesses through the Employee Health and Safety (EHS) system; and

d.   Developing, implementing, and monitoring facility ARPs using the Safety Toolkit to achieve the corporate objectives of reducing injuries, illnesses, and motor vehicle accidents. Refer to the Safety Resources site and the Safety Toolkit for additional information on developing, implementing, and monitoring ARPs.

Installation heads are encouraged to attend annual safety and health training.

812.4    **Middle-Level Managers**

Middle-level managers are responsible for the safety and health program within their operations. This includes responsibility for:

a.    Administering OSHA-mandated written programs;

b.    Conducting accident prevention activities;

c.    Training employees; and

d.    Evaluating the safety performance of supervisors.

e.    Coordinating activities, including correction of safety deficiencies, with other operational managers.

Middle-level managers are encouraged to attend annual safety and health training.

812.5    **Supervisors' Responsibilities**

812.51    **General**

Supervisors are responsible for:

a.    Identifying and correcting physical hazards;

b.    Investigating and reporting accidents;

c.    Administering OSHA-mandated written programs;

d.    Conducting accident prevention activities;

e.    Training employees;

f.    Developing job safety analyses; and

g.    Enforcing safe work practices.

Supervisors are encouraged to attend annual safety and health training.

812.52    **Observation of Work Practices**

Supervisors will observe employees' work practices to ensure that they are working safely and document their observations on:

a.    PS Form 4588, *Observation of Work Practices — Delivery Services,* or

b.    PS Form 4589, *Observation of Work Practices — General,* whichever is appropriate.

When used correctly, these forms can:

a.    Help the supervisor and the employee to identify and eliminate work practices that could lead to accidents and injuries.

b.    Give the supervisor an opportunity to recognize and reinforce safe work practices.

812.6    **Safety and Health Objectives**

For each fiscal year, managers at every level in every function must have in their performance plans safety and health objectives tied to corporate safety indicators and their facility-specific ARPs. Annually, Headquarters will issue management policy and procedures for ARPs tailored to address national safety indicators and priorities.




# AGREEMENT

between the
United States Postal Service
and the
National Rural Letter Carriers' Association

## 2018–2021

Handbook EL-902

Exhibit 7
Page 1 of 7

## ARTICLE 2
## NON-DISCRIMINATION AND CIVIL RIGHTS

### Section 1. Statement of Principle

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status. In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against disabled employees, as prohibited by the Rehabilitation Act.

### Section 2. Discrimination Grievances

Grievances arising under this Article may be filed at Step 2 of the grievance procedure unless filed directly at the national level, in which case, the provisions of this Agreement for initiating grievances at that level shall apply.

## ARTICLE 3
## MANAGEMENT RIGHTS

The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:

a.  To direct employees of the Employer in the performance of official duties;

b.  To hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees;

c.  To maintain the efficiency of the operations entrusted to it;

d.  To determine the methods, means, and personnel by which such operations are to be conducted;

e.  To prescribe a uniform dress to be worn by letter carriers and other designated employees; and

f. To take whatever actions may be necessary to carry out its mission in emergency situations; i.e., an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature.

## ARTICLE 4
## TECHNOLOGICAL AND MECHANIZATION CHANGES

### Section 1. Statement of Principle

Both parties recognize the need for improvement of mail service.

### Section 2. Advance Notice

The Union will be informed as far in advance of implementation as practicable of technological or mechanization changes which affect jobs, including new or changed jobs in the area of wages, hours, or working conditions. When major new mechanization or equipment is to be purchased and installed, the Union at the national level will be informed as far in advance as practicable, but no less than 90 days in advance.

### Section 3. Resolution of Differences

Upon receiving notice of the changes, an attempt shall be made at the national level to resolve any questions as to the impact of the proposed change upon affected employees, and if such questions are not resolved within a reasonable time after such change or changes are operational, the unresolved questions may be submitted by the Union to arbitration under the grievance-arbitration procedure. Any arbitration arising under this Article will be given priority in scheduling.

### Section 4. New Jobs

Any new job or jobs created in the rural carrier craft by techno-logical or mechanization changes shall be offered to present regular rural carrier employees capable of being trained to per-form the new or changed job, and the Employer will provide such training. During training, the employee will be paid based on

of each rural carrier to plan annual leave at times when a leave replacement is available. If the leave replacement for the route is committed to serve another regular rural route, such leave replacement is not available. A regular rural carrier should not be unreasonably denied annual leave because of the leave replacement's assignment to a vacant route, auxiliary route, or a route where the regular rural carrier is on extended leave.

**B. Forfeiting Leave**

Care shall be exercised to assure that no employee is required to forfeit any part of that employee's annual leave.

**C. Approved Leave**

All previously approved annual leave requests must be honored except in serious emergency situations.

**Section 3. Sick Leave**

The Employer agrees to continue the administration of the present sick leave program, which shall include the following specific items:

    a.  Credit employees with sick leave as earned.

    b.  Charge to annual leave or leave without pay (at employee's option) approved absence for which employee has insufficient sick leave.

    c.  Employee becoming ill while on annual leave may have leave charged to sick leave upon request.

    d.  Regular rural carriers shall be charged sick leave in minimum units of one day.

    e.  For periods of absence of three (3) days or less, a supervisor may accept an employee's certification as reason for an absence.

**Section 4. Saturday Leave**

A.  The approved absence on a Saturday of a regular rural carrier, substitute, or rural carrier associate in a leave earning capacity, which occurs within or at the beginning or end of a period of annual or sick leave, shall be without charge to

Should a case scheduled for hearing be resolved, withdrawn, or postponed more than 45 days prior to the hearing date, the next case pending on the discharge list for that Area Panel will be scheduled in its place. Should a case scheduled for hearing be resolved, withdrawn, or postponed less than 45 days, but more than 15 days prior to the hearing date, the next case pending on the discharge list for that district will be scheduled in its place. If there are no other discharge cases pending in the same district, the next pending non-discharge case in the same district will be scheduled. If there are no pending non-discharge cases in the same district, the parties may mutually agree to schedule a pending discharge case for a different district within the same Area Panel.

If the parties cancel an arbitration hearing date, resulting in a fee to the arbitrator, the party responsible for the cancellation is responsible for the fee. If the cancelled date is the result of mutual settlement or the unavailability of a back-up case, the parties will share in the cost of the fee.

Normally, a stenographic record shall not be taken at these hearings, nor post hearing briefs filed. However, either party may make exception to this policy. Arbitration hearings shall be held during working hours. Employee witnesses shall be on Employer time when appearing at the hearing provided the time spent as a witness is part of the employee's regular working hours.

## ARTICLE 16
## DISCIPLINE PROCEDURE

### Section 1. Statement of Principle

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to

observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in rein- statement and restitution, including back pay.

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Dis- cussions of this type shall be held in private between the employee and the supervisor. Such discussions are not con- sidered discipline and are not grievable.

Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of a prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

The appropriate discipline which should be issued to a rural carrier craft employee may differ according to the offense; however, it is generally the case for those offenses that warrant progressive discipline, employees receive: letter of warning, seven-day suspension, fourteen-day suspension, and removal.

**Section 2. Letter of Warning**

A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning which shall include an explanation of a deficiency or misconduct to be corrected.

**Section 4. Discharge or Crime Situation**

In the case of discharge, any employee shall be entitled to an advance written notice of the charges against the employee and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the employee's case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure.

When there is a reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the advance notice requirement shall not apply and such an employee may be immediately removed from a pay status.

Nothing in Section 3 will preclude time-off suspensions in instances where modification of a discharge is agreed to by the parties as a settlement or a third party determines to reduce the penalty of discharge to a time-off suspension. Such instances of time-off suspension or non-pay, non-duty status do not entitle the employee to a day of reflection.

**Section 5. Emergency Procedure**

An employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to discharge the employee, the emergency action taken under this section may be made the subject of a separate grievance.

Louis DeJoy
Postmaster General, CEO


**UNITED STATES POSTAL SERVICE**

July 1, 2021

## Equal Employment Opportunity Policy Statement

The United States Postal Service® (Postal Service™) reaffirms its long-standing commitment to equality of opportunity in every aspect of employment. Equal employment opportunity (EEO) is not only a legal requirement under our nation's laws, but also a business imperative. EEO is a critical component of the Postal Service's efforts to recruit, develop, and retain the most qualified, diverse workforce to support our organization's strategic mission of delivering to every household in America.

It is the policy of the Postal Service that all employees and applicants for employment be afforded equal opportunities in employment without regard to race, color, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, religion, age (40 or over), genetic information, disability, or retaliation for engaging in an EEO-protected activity. As part of its program of equal employment opportunity, the Postal Service prohibits discrimination or harassment based on any of these categories. In addition, it is also the policy of the Postal Service to prohibit discrimination or harassment based on marital status; status as a parent; and past, present, or future military service. All employees must refrain from practicing or tolerating discrimination or harassment.

Employees found to have taken actions that violate this policy and our country's EEO laws may be subject to corrective action up to and including removal from the Postal Service.

All of us, executives, managers, supervisors, and employees, share in the responsibility for successfully incorporating the Postal Service's policy on equal employment opportunity in every aspect of our duties and complying with this country's EEO laws.

Louis DeJoy

475 L'Enfant Plaza SW
Washington, DC 20260-0010
www.usps.com

Exhibit 8
Page 1 of 1

Louis DeJoy
Postmaster General, CEO


**UNITED STATES**
**POSTAL SERVICE**

July 1, 2021

## Postal Service's Policy on Workplace Harassment

The United States Postal Service® (Postal Service™) is committed to providing a work environment free of harassment based upon race, color, religion, sex (including pregnancy, sexual orientation, and gender identity including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, uniformed (military) service, or in reprisal for an employee's or applicant's complaint about, or opposition to, discrimination or participation in any process or proceeding designed to remedy discrimination. The Postal Service's workplace must be one in which all employees are treated with dignity and respect by supervisors, subordinates, and coworkers. Supervisors and managers will take prompt action to prevent, address, and remedy workplace conduct that is contrary to this policy.

### Prohibited Activities

Harassment is unwelcome verbal or physical conduct, which is so severe or pervasive that it interferes with or changes the conditions of one's employment by creating a hostile, intimidating, or abusive working environment. Examples may include, but are not limited to, making offensive or derogatory comments or engaging in physically threatening, intimidating, or humiliating behavior based upon race, color, religion, sex (including pregnancy, sexual orientation, and gender identity including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, past, present, or future uniformed (military) service, or in reprisal for an employee's or applicant's complaint about or opposition to discrimination or participation in any process or proceeding designed to remedy discrimination. These activities are prohibited by the Postal Service's policy and may amount to harassment in violation of federal antidiscrimination laws. Violation of this policy may result in disciplinary action up to and including termination. The Postal Service is committed to providing its employees a safe, productive, and inclusive workplace and will tolerate nothing less.

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature such as, but not limited to, making or threatening to make employment decisions based on an employee's submission to, or rejection of, sexual advances or requests for sexual favors; deliberate or repeated unsolicited remarks with a sexual connotation or physical contact of a sexual nature that is unwelcome to the recipient; or behavior that creates a sustained hostile or abusive work environment so severe or pervasive that it unreasonably interferes with or changes the conditions of one's employment.

Although not every instance of inappropriate behavior may fit the legal definition of harassment, such behavior in the workplace undermines morale and violates the Postal Service's standards of conduct. Disciplinary action may result even if the conduct does not constitute harassment under the law.

### Management Responsibility

All managers and supervisors are responsible for preventing harassment and inappropriate behavior that could lead to illegal harassment, and must respond promptly when they learn of any such conduct. Any manager or supervisor who receives a complaint must see that a prompt and thorough investigation is conducted. Investigations of all forms of harassment must be done in

475 L'Enfant Plaza SW
Washington, DC 20260-0010
www.usps.com

00309

Exhibit 9
Page 1 of 2

- 2 -

accordance with the "Initial Management Inquiry Process (IMIP)." Materials are available in Publication 552, *Manager's Guide to Understanding, Investigating, and Preventing Harassment*. When harassment or inappropriate conduct is found, managers must take prompt and effective corrective action.

**Employees' Rights and Responsibilities**

Postal Service employees who believe that they are the victims of harassment prohibited under this policy (i.e., harassment based on race, color, religion, sex (including pregnancy, sexual orientation, and gender identity including transgender status), national origin, age (40 or over), mental or physical disability, genetic information, uniformed (military) service, or in reprisal for an employee's or applicant's complaint about or opposition to discrimination or participation in any process or proceeding designed to remedy discrimination) or who have witnessed such harassment or inappropriate conduct, should bring the situation to the attention of a supervisor, a manager, or the manager of Human Resources. Refer to Publication 553, *Employee's Guide to Understanding, Preventing, and Reporting Harassment* for further information. In accordance with this policy, supervisors, managers, managers of Human Resources, or the next higher level manager (HQ and HQ-field units) are responsible for ensuring that direct and prompt action is taken to investigate and, where appropriate, remedy such misconduct when brought to their attention. The Postal Service will protect the confidentiality of harassment complainants to the fullest extent possible.

Employment discrimination or reprisal for engaging in an Equal Employment Opportunity (EEO)-protected activity is prohibited. Employees may request pre-complaint counseling through the online Postal Service EEO efile application at *https://efile.usps.com* or in writing by providing their name, Social Security or employee identification number, address, and telephone number to: National EEO Investigative Services Office-EEO Contact Center, Post Office Box 21979, Tampa, FL 33622-1979. In addition, bargaining unit employees may seek relief through the relevant grievance-arbitration procedures, and if applicable, non-bargaining unit employees may use the grievance procedures described in Section 652.4, *Employee and Labor Relations Manual*.

Allegations involving any possible criminal misconduct should, at a minimum, be reported to law enforcement authorities as follows: any physical misconduct relating to workplace harassment (i.e., any physical assault, threat of a physical assault, or stalking) should be reported to the United States Postal Inspection Service® (USPIS®); use of any electronic device, computer, or Internet to transmit threatening or harassing communications, obscene or indecent images and materials, should be reported to the Office of Inspector General (OIG).

Reprisal against employees who raise a claim of harassment, report inappropriate conduct, or provide evidence in any investigation is illegal and can result in disciplinary action, and should be referred to the USPIS or OIG, as appropriate.

The Postal Service does not tolerate any type of harassment, inappropriate conduct, or reprisal in the workplace.

Louis DeJoy

Exhibit 9
Page 2 of 2

# Manager's Guide to Understanding, Investigating, and Preventing Harassment

November 2018



Exhibit 10
Page 2 of 38

# Contents

Steps for Managers to Address Workplace Harassment . . . . . . . . . . . . . . . . . . . .   1

Overview of Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Understanding Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Purpose of This Guide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Definition of Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Costs and Effects of Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Your Role as Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

What Illegal Harassment Is. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Why You Must Know About Workplace Harassment . . . . . . . . . . . . . . . . . . . . . . . .   9

Two Types of Illegal Harassment Under the Law . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    Tangible Employment Action or Quid Pro Quo Harassment . . . . . . . . . . . . . . . . . .  10

    Hostile Environment Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

        Definition and Examples . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

        Crossing the Line Between Social Nuisance and Harassment . . . . . . . . . . . . . . .  11

Sexual Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    Examples of Sexual Harassment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    The Problem of Perception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    The Importance of Communicating That Words or Actions Are Unwelcome . . . . . . . .  12

    Sexual Harassment and the Office Romance . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    Same-Sex and Sexual Orientation Harassment . . . . . . . . . . . . . . . . . . . . . . . . . .  13

    Contractors, Vendors, and Other Third Parties . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Retaliation Is Illegal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

What You Must Do to Prevent Workplace Harassment. . . . . . . . . . . . . . . . . . . . .  13

Role and Responsibility of the Manager, Postmaster, and Supervisor . . . . . . . . . . . . .  13

Educate Yourself and Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Enforce Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Maintain Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Initial Management Inquiry Process at-a-Glance . . . . . . . . . . . . . . . . . . . . . . . . .  15

Initial Management Inquiry Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Receiving the Complaint and Beginning the Inquiry . . . . . . . . . . . . . . . . . . . . . . . . .  16

Conducting the Interviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

    Interviewing the Alleging Harassee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

    Interviewing the Alleged Harasser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    Interviewing the Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

# Contents *(continued)*

Evaluating the Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

Maintaining Confidentiality and Documenting the Inquiry . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Consulting With Human Resources and Taking Remedial Action . . . . . . . . . . . . . . . . . . . . .   22

    Determination 1: Inquiry Is Inconclusive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

    Determination 2: Harassment Has Not Occurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

    Determination 3: Harassment or Improper Conduct Has Occurred . . . . . . . . . . . . . . .   23

**Initial Management Inquiry Process Checklist.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

**Workplace Harassment Interview Guidelines** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Interview With Alleging Harassee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Interview With Alleged Harasser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

Interviews With Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

**Policy Statements, Regulations, and Publications** . . . . . . . . . . . . . . . . . . . . . . . .   32

# Steps for Managers to Address Workplace Harassment

| 1 Respond Promptly | 2 Obtain Information | 3 Begin IMIP | 4 Evaluate Information | 5 Plan of Action | 6 Follow Up |
|---|---|---|---|---|---|
| If approached with a harassment complaint or situation, schedule a meeting in a private location.<br><br>Review relevant:<br>■ Information.<br>■ Policies.<br>■ Procedures.<br><br>Listen objectively.<br><br>Advise on:<br>■ Confidentiality.<br>■ Responsibility.<br>■ Rights.<br><br>Address sensitivity of situation during inquiry | Define:<br>■ Issue.<br>■ Nature.<br>■ Scope.<br><br>Consider:<br>■ Safety issues.<br>■ Reporting structure.<br><br>Communicate Employee Assistance Program (EAP) and Equal Employment Opportunity (EEO) options.<br><br>Inform and confer with Manager, Human Resources (HR), local district or area office (for Headquarters (HQ) and HQ field units, Manager, HR HQ).<br><br>Discuss remedies.<br><br>If further inquiry is warranted, proceed to Initial Management Inquiry Process (IMIP). | Gather IMIP forms.<br><br>Arrange separate interviews for all parties involved.<br><br>Advise on IMIP process.<br><br>Gather detailed data.<br><br>Request a written statement.<br><br>Establish timelines for follow-up.<br><br>Review checklist on page 25.<br><br>If, in the course of this IMIP, you believe that the nature and scope of the complaint warrants outside investigation or that resolution is not feasible, you must refer the complaint to Manager, HR, local district or area office (for HQ and HQ field units, Manager, HR HQ). | Assess credibility of statements.<br><br>Gather missing data.<br><br>Identify the type of harassment discussed.<br><br>Evaluate employment status change.<br><br>Inform and confer with Manager, HR, local district or area office (for HQ and HQ field units, Manager, HR HQ).<br><br>The immediate supervisor in your local district, area office, or HQ and HQ field units, may consult with field counsel, Labor Relations office, or HQ counsel, to determine the appropriate remedy or disciplinary action.<br><br>If criminal action has occurred, notify the Postal Inspection Service and local law enforcement.<br><br>Report to the Office of the Inspector General (OIG) any use of electronic devices, computer, or Internet to transmit harassing communications. | Consult about remedies or discipline with Manager, HR, and Labor Relations (for HQ and HQ field units, Manager, HR HQ).<br><br>Ensure that the investigation was conducted properly.<br><br>Deliver the determination separately to harasser and harassee.<br><br>Emphasize:<br>■ Retaliation is illegal.<br>■ Report future incidents.<br><br>Resolve issues.<br><br>Document action taken.<br><br>Send IMIP documents to Manager, HR, local district or area (for HQ and HQ field units, to Manager, HR HQ).<br><br>The Manager, HR, will ensure the completed inquiry is entered into the Workplace Environment Tracking System (WETS). | Maintain confidentiality.<br><br>Convey Postal Service's Zero Tolerance Harassment Policy in:<br>■ Remedial training.<br>■ Stand-up talks.<br>■ Staff meetings.<br><br>Educate yourself and personnel on up-to-date policy.<br><br>Enforce Postal Service policy.<br><br>Follow up and monitor the workplace. |

Manager's Guide to Understanding, Investigating, and Preventing Harassment

# Overview of Steps

If an employee reports a harassment complaint or situation to you, **your role as a manager is to stop, listen, inquire, and try to resolve the harassment complaint.** Keep in mind that the employee is trying to address a sensitive topic.



## Respond Promptly

**RESPOND PROMPTLY** to the complaint regardless of its form or content. Remember that you could receive a complaint with no prior warning. Any report of harassment is enough to start an inquiry. So whenever possible:

1. Set time aside to discuss the alleging harassee's concerns.

2. Assess the location of the conversation due to its sensitive nature; be aware of your surroundings and the effect the environment can have on an individual's willingness to provide information.

3. Briefly review the information, policies, and procedures surrounding the issue you are discussing.

4. Advise parties of confidentiality rights and their limitations; discuss your responsibility in handling the complaint.

5. Advise the alleging party that he or she has a right to report any inappropriate conduct without fear of retaliation and that you take harassment and allegations of harassment seriously.



## Obtain the Information

Remember: Your responsibility is to ensure that a fair, impartial, prompt, and thorough investigation of the alleged misconduct takes place. To **OBTAIN THE INFORMATION,** you need to begin the Initial Management Inquiry Process (IMIP). You will:

1. Determine preliminarily if the conduct the alleging party described is considered harassment or inappropriate workplace behavior.

2. Assess the nature and scope of the problem in the workplace.

3. Determine whether there is a potential safety issue and if there is an immediate need to separate the parties involved or modify reporting relationships.

4. Inform the individual who reported the harassment of his or her Employee Assistance Program (EAP) options.

5. Inform the alleging harassee that he or she has a right to file a complaint with an Equal Employment Opportunity (EEO) Representative within 45 days of the inappropriate conduct.

6. Determine whether you can remedy the problem or whether you need to refer to or involve a manager, supervisor, or Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ).

7. Determine whether formal documentation is warranted.



## Begin IMIP Process

If an inquiry is warranted, **BEGIN IMIP PROCESS**. Gather guideline forms provided in this publication. There is a separate form for each party involved (i.e., alleging harassee, alleged harasser, and witness). Conduct interviews with involved parties separately. Ask questions in an open-ended manner to allow for elaboration. Remain consistent throughout the process, as follows:

1. Interview the alleging harassee and the alleged harasser separately. Arrange a meeting in an appropriate location. Advise of confidentiality rights and their limitations. Advise that the allegations and the IMIP are taken very seriously.

   a. For the alleging harassee — Establish that the person is comfortable having you handle the inquiry and discuss your responsibility in handling the complaint. Display candor and listen with an open mind. Do not form any judgments.



## 3

**Begin IMIP Process**

*(continued)*

**b.** For the alleged harasser — Advise that this is an initial inquiry to gather facts. Be fair and remain objective; remember the concept of "innocent until proven guilty."

**2.** Gather information from both parties, as well as any witnesses, and take detailed notes of facts from questions asked such as:

  **a.** Who was involved?

  **b.** What occurred and when?

  **c.** Where did it take place?

  **d.** How frequent was it and how long did it continue?

  **e.** Why do they think it occurred?

  **f.** What was the impact?

  **g.** Were there any witnesses?

These questions are a starting point and not the only ones you may have to ask. Some responses to a question will require follow-up questions to fill in missing information.

**3.** Request that the alleging harassee prepare a written statement. However, this is not a prerequisite to taking action and is not a requirement if the alleging harassee refuses to document the incident.

**4.** Advise that retaliation is illegal, will not be tolerated, and will be reported.

**5.** Thank the alleging harassee, alleged harasser, and participating witnesses separately for their cooperation with the inquiry, and invite all parties involved to come back if they have more facts to provide.

**6.** Inform both the alleging harassee and the alleged harasser that you will keep them informed during the process and establish a timeline to follow up.

**7.** Be sure to use this guideline to document the interview appropriately, so you can be prepared to send your report to the Manager, Human Resources, local or area office (for HQ and HQ field units, Manager, HR HQ). Maintain confidentiality.

  **a.** You must document all serious and recurring cases of alleged harassment and inappropriate action, including corrective actions taken.

  **b.** Some complaints can be resolved simply between parties without a formal written record.

  **c.** You are not required to document the interview for a minor, single incident. However, you should make a personal note of the incident and make sure to retain these confidential records for further reference when necessary. When in doubt, document.

**8.** Do not insist that the alleging harassee provide you with witnesses or detailed evidence. While helpful, you do not need it to take action.



## 4

**Evaluate Information**

**EVALUATE INFORMATION**, review notes, and determine the next steps by doing the following:

**1.** Assess the credibility of all information collected. Ensure that the facts are based on observation and evidence rather than conclusion or assumption. Stick to the facts.

**2.** Consider whether you need to conduct further interviews to clarify inconsistencies or gather missing information.

**3.** Determine whether the employee suffered a significant change in employment status due to the alleged harassment (e.g., demotion, denial, or discharge).

**4.** Assess whether management knew or should have known about the harassment or inappropriate workplace behavior. Throughout the inquiry and resolution process, confer with the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ).



**Evaluate Information**
*(continued)*



**Plan of Action**

5. The immediate supervisor or issuer, in your local district, area office or HQ and HQ field units, may consult with field counsel, Labor Relations office, or HQ counsel to determine the appropriate remedy or corrective action in accordance with Postal Service policies, procedures, guidelines, rules, regulations, and collective bargaining agreements. Remember it is critical to be consistent in the application of discipline.

6. In the event of possible criminal actions (such as physical assault or stalking), notify the Postal Inspection Service and local law enforcement. Report to the Office of Inspector General (OIG) any use of electronic device, computer, or the Internet to transmit threatening or harassing communications, indecent images, or materials.

Develop a **PLAN OF ACTION**, consult with Human Resources, and take remedial action as appropriate. Convey that the Postal Service is committed to eliminating harassment and inappropriate workplace behavior. It is your responsibility to see that a fair, impartial, prompt, and thorough investigation of the alleged misconduct has taken place. With regard to determinations:

1. If an inquiry is **INCONCLUSIVE** or shows that harassment or inappropriate workplace behavior **HAS NOT** occurred, inform both the alleging harassee and the alleged harasser (separately) of the determination and report the reasons for the conclusion.

   a. When reporting to the alleging harassee:

      1) Acknowledge that the harassee did the right thing by reporting the incident and cooperating with the inquiry.

      2) Emphasize that if another incident occurs, he or she should report it immediately.

   b. When reporting to the alleged harasser, inform the harasser that you will place nothing in his or her personnel folder.

2. If an inquiry shows that harassment or inappropriate workplace behavior **HAS** occurred:

   a. Take prompt action to end current harassment or improper conduct:

      1) Ensure that you consult with the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ) and your field counsel, Labor Relations office, or HQ counsel on how to determine consistently the appropriate remedy or disciplinary action.

      2) Resolve the problem and take remedial action, if necessary.

   b. Inform both the alleging harassee and alleged harasser separately of the determination of the IMIP inquiry, the reason for the conclusion, and the actions to be taken.

   c. When reporting to the harassee:

      1) Acknowledge that the harassee did the right thing by coming forward and cooperating with the inquiry. Apologize to the employee on behalf of the organization, including upper management.

      2) Emphasize that if another incident occurs, he or she should report it immediately.

Manager's Guide to Understanding, Investigating, and Preventing Harassment



**Plan of Action**

*(continued)*

    **d.** Resolve the problem and take remedial action, if necessary:

      **1)** When a remedy is determined, administer the chosen remedy appropriately. Make sure that discipline is consistent with the severity of the conduct and is executed consistently.

      **2)** Remedial actions may include discussion, remedial training, letter of warning, suspension, transfers, demotion, discharge, or any combination of these.

      **3)** Documentation is confidential:

        **a)** For a minor, single incident, inform the harassee that the notes can be placed in the manager's personnel folder for future reference.

        **b)** For a serious or recurring incident, inform the harassee that the Postal Service will keep for 4 years at the appropriate Human Resources office.

**3.** Consulting with each party separately, assess whether all parties involved feel able to continue to work in the area. If not, consult with Manager, Human Resources, at the local or area office (for HQ and HQ field units, Manager, HR HQ) to explore the possibilities available.

**4.** Record the date and subject matter for your notes. Fully document actions taken on the appropriate guideline forms (on pages 26-31) and ensure that all IMIP files are sent, under confidential cover, to your Manager, Human Resources, at the applicable district or area office (for HQ and HQ field units, Manager, HR HQ) via Certified Mail® service with Return Receipt, promptly upon completion. The Manager, Human Resources, will review the information to ensure that the inquiry is appropriately resolved. The Postal Service must keep the files for 4 years after the management inquiry is completed.

**5.** Manager, Human Resources, will ensure that the completed inquiry is entered into the Workplace Environment Tracking System (WETS).

**6.** Regardless of determination, in all cases reiterate that retaliation against any person for reporting or providing information on potential harassment is illegal and will not be tolerated.



**Follow Up**

Always **FOLLOW UP** in the workplace to ensure that employees are aware of and follow the appropriate standards of conduct and monitor the workplace openly for harassment issues. Seriously consider if you can:

**1.** Provide remedial training to address an issue raised during the inquiry.

**2.** Use periodic stand-up talks or staff meetings as forums to reinforce your commitment and message of zero tolerance for harassment.

November 2018 | 5

Exhibit 10

Page 9 of 38

Religion 552

# Understanding Harassment

## Purpose of This Guide

This guide provides you — the manager, postmaster, or supervisor — with:

- A definition and examples of workplace harassment, including harassment that is illegal under federal discrimination laws.

- Information on costs and effects of harassment in the workplace.

- Investigative action you must take when you receive allegations of harassment or become aware of harassing behavior.

- Action you must take to stop any harassing behavior found in your investigation.

- The follow-up and appropriate corrective actions you must take.

## Definition of Harassment

The term *harassment* is commonly used by the public and is defined by law. Federal laws and the laws of each state define harassment, resulting in many definitions. Because of this complexity, it is difficult to come up with a standard definition of harassment that is correct in every context. However, in general, harassment is unwelcome behavior directed at an individual, which the individual finds offensive and harmful, and that a reasonable person would view as unwelcome or offensive.

Workplace harassment includes personal interactions characterized by bullying behaviors, personal attacks, acts of intimidation or threats, and behavior that may humiliate, embarrass, and belittle others. Harassment can take the form of verbal comments, actions, gestures, and displays. Usually the offensive behavior occurs often, over a period of time.

Illegal workplace harassment is harassment based on one or more of the bases protected by federal antidiscrimination laws, including Title VII of the Civil Rights Act, the Rehabilitation Act, and the Age Discrimination in Employment Act. These federal laws prohibit discrimination, which includes harassment based on race, color, religion, national origin, sex (including pregnancy, sexual orientation, and gender identity including transgender status), age (40+), physical or mental disability, genetic information, and uniformed (military) service. For example, sexual harassment is a type of harassment based on sex and is, therefore, prohibited by federal law. These laws also prohibit retaliation for participating in EEO activity.

To make you aware of the potential legal liability of the Postal Service for the behavior of its employees, the definition of illegal harassment under federal law and Equal Employment Opportunity Commission (EEOC) regulations and guidance is defined more fully on page 10. Be aware that Postal Service policy requires managers, supervisors, and postmasters to follow the procedures outlined in this publication. They must investigate, stop, and correct all forms of harassment and inappropriate behavior they become aware of — whether or not the behavior is illegal under federal law.

Be sure to read the *Postal Service Policy on Workplace Harassment,* which is available on the Postal Service *PolicyNet* website:

- Go to *http://blue.usps.gov.*

- In the left-hand column, under "Essential Links", click *PolicyNet.*

- Click *MOPs.*

- The direct URL for the Postal Service *PolicyNet* website is *http://blue.usps.gov/cpim.*

Manager's Guide to Understanding, Investigating, and Preventing Harassment

# Costs and Effects of Harassment

Harassment, including harassing behavior that may not be illegal under federal law, undermines morale in the workplace. It undermines the morale of the individual being targeted, persons witnessing the harassment, and persons who hear about the harassment from the target and witnesses. Workplace harassment can affect a person's emotional and physical well-being, reputation, and physical safety. Targets of workplace harassment may experience stress, depression, low self-esteem, loss of sleep, and even post-traumatic stress disorder. Harassment can also impact the home environment of those affected at work.

These effects on individual employees also have a negative effect on productivity, product quality, job satisfaction, attendance, and employee retention in the workplace. The costs of illegal harassment can also include attorney fees, settlements, and court costs. Harassment can also affect workers' compensation costs.

Research indicates that thirty-seven percent of American workers have been bullied at work.[1] Even basic incivility has an effect on the workplace. For example, one study shows the following responses of 800 managers and employees in 17 industries who were workers on the receiving end of incivility at work.[2] Incivility included rudeness, insensitivity, and disrespect inflicted by another worker.

| Percent Affected | Effect of Incivility on Targeted Individual |
|---|---|
| 48 | Intentionally decreased their work effort. |
| 47 | Intentionally decreased the time spent at work or future interactions. |
| 38 | Intentionally decreased the quality of their work. |
| 80 | Lost work time worrying about the incident. |
| 63 | Lost work time avoiding the offender. |
| 66 | Said that their performance declined. |
| 78 | Said that their commitment to the organization declined. |
| 12 | Said that they left their job because of the uncivil treatment. |
| 25 | Admitted to taking their frustration out on customers. |

Harassing behavior is unprofessional. Postal Service managers, postmasters, and supervisors are responsible for setting the parameters of appropriate behavior at work and for addressing inappropriate behavior by their employees. Successful managers, postmasters, and supervisors do not harass, bully, or speak to employees in a condescending or threatening manner. Successful managers, postmasters, and supervisors lead by example; they stop and correct harassing and inappropriate behavior by their employees.

Never take harassment allegations lightly. The costs of harassment to our employees and our bottom line are costs the Postal Service cannot afford.

# Your Role as Management

As Postal Service management, you must:

- Avoid behavior that could be interpreted as harassment. Lead by example!

- Identify and stop workplace behavior that could constitute harassment.

- Respond promptly[3] and appropriately to those who come forward with complaints of harassing conduct.

---

[1] Workplace Bullying Institute & Zogby International, *U.S. Workplace Bullying Survey,* Waitt Institute, 2007.

[2] Christine M. Pearson and Christine L. Porath, *The Price of Incivility,* Harvard Business Review, January-February 2013.

[3] What is considered "prompt" depends upon the circumstances, but an inquiry or investigation should begin as soon as possible after an allegation, and it should be completed in no more time than is needed to thoroughly inquire into and, where applicable, document the matter.

This guide provides you — the managers, postmasters, and supervisors of the Postal Service — with tools to address the following:

- Allegations of harassment in the workplace.

- Harassing or inappropriate behavior that you may witness.

Eliminating all harassing behavior from the workplace will enable you to have a more efficient operation and will contribute to a more productive, healthier work environment. Even if a certain behavior does not seem to be "harassment" as defined by law, if it is inappropriate, take corrective action, if applicable, and **STOP IT!**

# What Illegal Harassment Is

Illegal harassment is a form of discrimination that violates federal antidiscrimination laws including Title VII of the Civil Rights Act, the Rehabilitation Act, and the Age Discrimination in Employment Act.

Under federal antidiscrimination law, harassment is defined as unwelcome verbal or physical conduct that demeans or shows hostility or aversion toward an individual or group of individuals because of their race, color, religion, sex (including pregnancy, sexual orientation, and gender identity including transgender status), national origin, age (40+), mental or physical disability, genetic information, uniformed (military) status, or in retaliation for EEO activity. To be considered harassment under the law, the behavior must also:

1. Result in an intimidating, hostile, or offensive work environment;

2. Unreasonably interfere with an individual's work performance; or

3. Otherwise, adversely affect an individual's employment opportunities.

The behavior must alter, **in its totality,** the terms, conditions, and privileges of employment.

Examples of harassment may include:

1. Making offensive or derogatory comments, nicknames, or slurs;

2. Engaging in negative stereotyping;

3. Engaging in physically threatening, intimidating, or humiliating actions; or

4. Circulating written graphic material (by paper or e-mail or by making it viewable in the workplace) that belittles or shows hostility or aversion toward an individual or group protected under the anti-discrimination laws.

Rape is a criminal offense. Report it immediately to local law enforcement agencies and the Postal Inspection Service. Other acts involving force or coercion may constitute criminal offenses. You should report assault and battery to local law enforcement, the Inspection Service, or both.

# Why You Must Know About Workplace Harassment

Your reaction to complaints of harassment plays a large part in whether the Postal Service will be held responsible for workplace harassment, particularly when claims of a hostile work environment are involved.

The law requires managers, postmasters, and supervisors to take action in the face of harassing behavior. As the person in charge, you are often the first person to whom an employee complains about improper conduct. You are also in a position to do something about harassment. In short, you are expected to manage your workplace and foster an atmosphere conducive to work. You must conduct a thorough inquiry[4] into a harassment complaint, see that inappropriate conduct stops, and take action to ensure that such conduct does not recur.

---

[4]  A thorough inquiry or investigation includes interviews with all parties involved and all witnesses to the alleged conduct.

You cannot ignore the problem, because it may likely continue. Consequently, productivity will continue to suffer. Even worse, some employees may suffer serious emotional and psychological harm from such harassment. **The bottom line:** **Harassment in the workplace is bad for your employees and bad for the Postal Service. You must respond promptly to all complaints and eliminate harassing behaviors.**

# Two Types of Illegal Harassment Under the Law

## Tangible Employment Action or *Quid Pro Quo* Harassment

A *tangible employment action* is an action that significantly changes an employee's employment status, such as hiring, firing, promoting, demoting, changing work assignments, or reassigning an employee. *Tangible employment action harassment* is the harassment of a subordinate by someone with supervisory authority that results in a tangible employment action.

This is usually called *quid pro quo harassment. Quid pro quo* means "something for something," and it usually involves sexual harassment. Following are examples of *quid pro quo harassment:*

- A supervisor fires or demotes a subordinate because the subordinate rejects the supervisor's sexual demands.

- A supervisor makes statements such as:

  — "Have dinner with me tonight, or I'll see to it that you don't pass your probationary period."

  — "You'll get that promotion, but only if you go out with me."

*Quid pro quo harassment* is the use of power and authority to alter an employee's job conditions or economic benefits because the employee or applicant either submits to or refuses to submit to the unwelcome demands of the person in authority.

Be aware that if the employee does not submit to the demand and the manager, postmaster, or supervisor then carries out the threat so that a tangible employment action (e.g., demotion, denial of promotion, or discharge) results, it is *quid pro quo harassment.* The Postal Service could be automatically liable for harassment. Even if the threat is not carried out, the statement could still constitute hostile environment harassment.

## Hostile Environment Harassment

### Definition and Examples

*Hostile environment harassment* covers a broad range of behaviors and situations. It is defined most often as a pattern of continuing, unwelcome behavior that does either of the following:

- Unreasonably interferes with an employee's work performance.

- Creates an intimidating, hostile, or offensive work environment.

Examples of behavior that could result in a finding of hostile environment harassment include:

- Using racially derogatory words, phrases, or nicknames.

- Telling jokes or stories with national origin themes.

- Displaying posters or symbols offensive to individuals of a certain race, sex, national origin, religion, etc.

- Making derogatory or intimidating references to an employee's mental or physical impairment.

- Applying pressure for dates.

- Making offensive remarks about a person's looks, clothing, or body parts.

- Whistling or catcalling.

- Using sexual innuendo.

- Spreading false rumors about a person's sex life.

- Blocking a person's path.

- Following a person continually (i.e., stalking).

Keep in mind that behavior which is not necessarily sexual in nature, but which is nonetheless demeaning or abusive toward members of one sex, may also constitute hostile environment harassment.

A single incident, unless it is severe, generally does not constitute illegal harassment. The conduct must be severe or continuing and pervasive. Factors considered in a legal determination of hostile environment harassment include the following:

- Frequency of the discriminatory conduct.

- The severity.

- Whether it was physically threatening or humiliating (as opposed to a mere offensive utterance).

- Whether it unreasonably interferes with work performance.

**Crossing the Line Between Social Nuisance and Harassment**

One of the most difficult aspects of the hostile work environment claim is differentiating between conduct that is overly friendly, rude, or tasteless, and conduct that is so offensive, relentless, and severe that it warrants being labeled as harassment. You should not tolerate either behavior and you should implement corrective action in both cases. The following points are helpful in determining what constitutes workplace harassment:

- The inappropriate behavior must be severe or pervasive enough to interfere with the employee's work conditions or create an abusive work environment.

  — Generally, there must be multiple incidents of verbal misconduct to create enough of a pattern of discriminatory behavior to alter the work environment.

  — Isolated incidents of offensive sexual displays or remarks generally are not enough to create a hostile work environment.

  — The exception is conduct that is extremely severe, such as sexual assault, which could constitute an abusive work environment the first time it happens.

  — It is helpful to investigate whether the employee has previously complained about inappropriate behavior.

- The conduct must be unwelcome. It is neither invited nor solicited, and the person must consider it undesirable and offensive.

- You must evaluate the conduct from the perspective of a "reasonable person." Harassment laws are not designed to protect the hypersensitive individual from offense. This does not mean that a good manager allows employees to provoke even a hypersensitive colleague; harassing behavior is inappropriate, even if it is not illegal.

- Hostile work environment claims can encompass harassing behavior that is not necessarily sexual in nature. For example, it can be singling out one sex with acts of aggression, intimidation, hostility, rudeness, name calling, or other types of abusive conduct.

- Behavior or actions can be considered harassment even if the alleged harasser did not intend to offend.

# Sexual Harassment

## Examples of Sexual Harassment

Jane's supervisor subjected her to frequent obscenities — crowded her in her office, made knee-to-knee contact with her, and slapped her on the buttocks. The court found sexual harassment, saying, "A slap on the buttocks in the office setting has yet to replace the handshake."

Darla and two other women were subjected to crude and obscene name-calling; were intimately touched; and, when they used the restroom at their station, were spied upon by the men. The men also flashed pictures of couples engaged in sexual acts and scrawled obscenities on the women's vehicles. The women reported the abuse to their supervisor, but nothing was done. The three women eventually moved to lesser positions in other facilities. The court found sexual harassment was so severe and pervasive as to alter the women's working environment.

## The Problem of Perception

What one person considers offensive, another may consider harmless. Distinguishing between harassment and social insensitivity is very difficult. Unfortunately, the law does not provide a "bright-line" rule about exactly what comments and behaviors constitute harassment. However, bear in mind that, if a "reasonable person" would find the behavior so offensive as to interfere with his or her work performance, then a "reasonable person" would likely consider it harassment. Postal Service policy is to act to STOP any inappropriate behavior, investigate, and ensure that the inappropriate conduct does not recur — even if the behavior doesn't rise to the legal definition of harassment.

## The Importance of Communicating That Words or Actions Are Unwelcome

If someone is being harassed, he or she should tell the alleged harasser in no uncertain terms to stop the behavior. If the employee is not able to do so alone, the employee can ask a friend or a trusted coworker to help him or her talk to the alleged harasser. This does not mean that the victim has to confront the alleged harasser or put the allegation in writing. Nonverbal behavior can also be sufficient in some cases to communicate that the behavior is unwelcome. **"No" means "no,"** whether it is communicated verbally or nonverbally. However, a clearly communicated verbal "no" is usually more effective in stopping harassment. In all cases of harassment, employees should also report the incident to one of the following:

- Their immediate supervisor or manager.
- Another supervisor or manager.
- The Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ).

## Sexual Harassment and the Office Romance

The Postal Service strongly discourages supervisory and managerial employees from engaging in romantic and/or physical relationships with their subordinate employees. Perceptions of unfair treatment often arise under these circumstances and undermine employee morale.

When a supervisor or manager who engages in office romances appears to favor those with whom he or she is involved, the supervisor's or manager's behavior tends to foster a belief among other employees that their chances for advancement depend upon their willingness to engage in similar conduct with the supervisor or manager. Relationships between supervisors or managers and employees that are based on such a belief are not considered fully consensual. Therefore, to avoid allegations of harassment and/or unfair treatment, supervisors or managers should not engage in relationships with their subordinate employee.

Exhibit 10
Page 16 of 38

### Same-Sex and Sexual Orientation Harassment

Harassment by a coworker or manager of the same sex as the employee is a violation of the law. While Title VII of the Civil Rights Act of 1964 does not explicitly include sexual orientation or gender identity in its list of protected bases, the Equal Employment Opportunity Commission (EEOC) interprets the statute's sex discrimination provision as prohibiting discrimination against employees on the basis of sexual orientation and gender identity. This is consistent with Supreme Court case law, as well as other court decisions (*http://www.eeoc.gov/eeoc/newsroom/wysk/lgbt_examples_decisions.cfm*) holding that employment actions motivated by gender stereotyping are unlawful sex discrimination. The EEOC has taken the position that existing sex discrimination provision in Title VII protect lesbian, gay, bisexual, and transgender (LGBT) applicants and employees against employment bias.[5] Postal Service policy prohibits such discrimination, and we will not tolerate it.

### Contractors, Vendors, and Other Third Parties

Just as the Postal Service will not tolerate harassment by or against its employees, it also will not tolerate harassment by or against anyone in the workplace, including contractors, vendors, and other third parties who may be in the workplace only temporarily. Employees have the right to complain about harassment by such individuals. Conversely, these individuals can also complain about harassment by Postal Service employees. Either way, once either group brings improper behavior to the attention of the Postal Service, management must take steps promptly to investigate and stop it.

# Retaliation Is Illegal

Retaliation against an employee who raises a harassment claim or provides evidence in an investigation is illegal. The Postal Service may find management employees who fail to fulfill their obligation under Postal Service policy regarding harassment claims to have retaliated against an employee because of the adverse effect of the management employee's willful indifference.

# What You Must Do to Prevent Workplace Harassment

## Role and Responsibility of the Manager, Postmaster, and Supervisor

It is your role to listen, inquire, and try to resolve a harassment complaint. If you do not have the authority to conduct an inquiry, you must take it to a manager, postmaster, or supervisor who does.

## Educate Yourself and Others

- Educate yourself on the topic of workplace harassment. Make sure your staff is aware that harassment is illegal, and ensure that your staff is aware of the Postal Service's policy against harassment.

- Identify for employees some of the possible consequences of engaging in improper behavior, whether or not it meets the definition of illegal workplace harassment. In addition, express strong disapproval of harassment in any form.

- Educate your employees and supervisors in identifying harassment, the remedies available, and how to stop inappropriate behavior.

---

[5] *What You Should Know About EEOC and the Enforcement Protections for LGBT Workers,* retrieved from *www.EEOC.gov.*

Manager's Guide to Understanding, Investigating, and Preventing Harassment

- Inform your employees of their right to report inappropriate conduct without fear of retaliation. Make sure they know that complaints will be kept confidential during the investigation (to the extent possible). Ask Human Resources professionals in your local district or area office for help as necessary, and keep your Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ) informed as you resolve complaints that may arise in your unit.

- Document employee training on harassment.

## Enforce Policies

- Take every incident or complaint seriously. Do not ignore harassing or improper behavior or believe it to be only a personal matter between the alleged harasser and alleging harassee.

- Conduct harassment inquiries promptly and, where necessary, take inquiries to the next appropriate level.

- Stop all inappropriate behavior.

- Confer with and inform the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ) of any harassment allegations and inquiries. If Human Resources personnel or others conduct an inquiry or investigation, stay informed of their progress. It is your responsibility to ensure that any inquiry or investigation is brought to appropriate closure.

- Take remedial action when appropriate. The action should be commensurate with the severity of the conduct.

- Follow up to ensure that harassment does not continue and that retaliation does not occur.

- Inform employees of their rights and remedies, including their right to file a complaint by requesting EEO counseling, within 45 days of the inappropriate conduct, through the online Postal Service EEO efile application at *https://efile.usps.com.*

- Alternatively, they may request EEO counseling through the mail by providing their name, Social Security or employee identification number, address, and telephone number to: NEEOISO – EEO Contact Center, PO Box 21979, Tampa, FL 33622-1979.

However, do not dismiss employees by telling them to file an EEO complaint or a grievance. You must manage the problem yourself, even if the employee also chooses to file a grievance, EEO complaint, or both.

## Maintain Confidentiality

It is very important to let employees know that confidentiality will be maintained to the greatest extent possible. However, it is equally important to remind them that at certain points in the management inquiry process and, if applicable, the EEO process, it may be necessary to provide information that will identify the harassee, harasser, and all witnesses to officials such as the:

- Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ).

- EEO Alternate Dispute Resolution (ADR) specialist.

- EEO investigator.

Exhibit 10
Page 18 of 38

Manager's Guide to Understanding, Investigating, and Preventing Harassment

# Initial Management Inquiry Process at-a-Glance



# Initial Management Inquiry Process

## Purpose

The Initial Management Inquiry Process (IMIP) allows managers, postmasters, and supervisors to whom an employee brings a complaint to get enough information at the outset to do the following:

1. Determine whether there is an immediate need to separate the harasser and harassee.

2. Determine whether there is an immediate need to recommend that an employee seek Employee Assistance Program (EAP) counseling.

3. Determine whether other employees are being harassed.

4. Assess the nature and scope of the problem in the workplace.

5. Decide you, as the manager or supervisor, can remedy the problem, or whether to refer to your Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ) for further investigation because of the individuals involved or the nature and scope of the charges.

The IMIP requires you to react promptly to complaints alleging harassment and compels you to deal with the problem. In short, an inquiry prevents both blanket dismissal of such complaints or only referring the issue to an EEO ADR specialist. While the latter is appropriate when the employee wishes to bring a complaint, it is not appropriate only to refer the employee to an EEO ADR specialist instead of dealing with the employee's problem.

If for some reason supervisory employees do not have the authority to launch an inquiry, they must bring the complaint to the attention of a higher-level supervisor or manager who does. Generally, the IMIP will not replace or serve as a substitute for the harassment investigation normally conducted by Human Resources. If, in the course of this initial management inquiry, you believe that the nature and scope of the complaint warrant outside investigation or that resolution is not feasible, you must refer the complaint to the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ).

## Receiving the Complaint and Beginning the Inquiry

Listed below are steps to follow when you receive a complaint and begin the IMIP.

1. Listen carefully to the person making the complaint.

   *Note:* You may receive a complaint with no prior warning.

2. Confer with the Manager, Human Resources (or designee), in your local district or area office (for HQ and HQ field units, Manager, HR HQ) about any harassment allegations and inquiries.

3. Gather the necessary inquiry forms by following the process set forth in this publication. Conduct a thorough and impartial inquiry.

4. Separately interview the alleging harassee, the alleged harasser, and all witnesses. Begin with broad questions, and then ask questions specific to the complaint. Remember to pose your questions in a nonthreatening manner. Thoroughness is important. See "Conducting the Interviews," on page 17 for more information on this topic.

5. Gather pertinent information (e.g., policies, procedures, laws, and practices). If necessary, contact your Manager, Human Resources (or designee), in your local district or area office (for HQ and HQ field units, Manager, HR HQ).

6. Act promptly. Do not let the complaint languish. Failure to act promptly may result in loss of evidence or a finding that the employer did not act reasonably to correct harassing behavior.

Publication 552

Exhibit 10
Page 20 of 38

# Conducting the Interviews

## Interviewing the Alleging Harassee

Here are the steps to follow when you are interviewing the alleging harassee:

1.  Find an appropriate place that ensures confidentiality to hear the complaint. Remain objective; listen with an open mind.

2.  Ensure that the alleging harassee is comfortable with having you handle the inquiry.

3.  Advise the alleging harassee of the need for confidentiality and its limitations. You will maintain confidentiality to the greatest extent possible, but at certain points in the management inquiry process, you may need to provide information that will identify the harassee to officials such as the Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ) or an EEO ADR specialist.

4.  Discuss your responsibilities in handling the complaint, such as the possible need to take it to another level or to take immediate action against the alleged harasser if you find there was harassment or inappropriate behavior.

5.  Listen carefully and empathetically, repeating what you hear if necessary for clarification. Take detailed notes of the facts (e.g., who, what, when, where, why, and how). Did anyone else observe the alleged harassment or have knowledge of the behavior at issue? Get the specific details, for example:

    a.  Type of conduct.

    b.  Period over which the conduct occurred.

    c.  Frequency of occurrence, i.e., is this an isolated event or one of a pattern of similar events).

6.  Determine the identity of the alleged harasser (or harassers). Has the alleged harasser engaged in similar behavior toward other employees?

7.  Ask for the alleging harassee's reaction to the behavior at issue. Did he or she ask the alleged harasser to stop? If not, determine why not, in a non-accusatory manner. Did the alleging harassee indicate in any other way that he or she objected to the conduct?

8.  Get information on the effect of this conduct on the alleging harassee. Try to discern whether the person suffered any adverse employment action, economic harm, or both.

9.  Determine the time between the conduct at issue and when the alleging harassee made the report. If there was a time delay, find out why, in a non-accusatory manner.

10. Ask if the alleging harassee has spoken to others (in or outside the workplace), has taken notes, has received letters, saved e-mails or otherwise documented the incident.

11. Determine the alleging harassee's safety. Consider whether you should move the alleged harasser. In general, if you believe the alleging harassee could benefit from counseling, suggest a referral to the EAP, which is available to provide employees with emotional support for problems that may result from being harassed. Notify the Postal Inspection Service and local law enforcement in the event of possible criminal action.

12. Find out what the alleging harassee needs to perform his or her work effectively. Can he or she continue to work for or with the alleged harasser?

13. Request a written statement either before or after you act. However, do not insist on a written statement if the alleging harassee refuses to document the incident.

14. Realize that another person's report is enough to start the inquiry. Do not insist that the alleging harassee personally report the allegation of harassment before you act.

15. Do not insist on corroboration or detailed evidence. While it is helpful, its absence should not deter your action.

16. Show empathy and do not pass judgment on the allegations presented.

17. Advise the alleging harassee that retaliation against any person for reporting or providing information on charges is illegal and will not be tolerated. Advise the alleging harassee to report any retaliation to you immediately.

18. Thank the alleging harassee for making the report and invite him or her to come back if he or she has more facts to add.

19. Document the interview and send your written report to the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ). You must document all serious and recurring cases of alleged harassment or inappropriate actions, including corrective actions taken. You are not required to document the interview for a minor, single incident. However, you should make a personal note of the incident. You must keep personal notes confidential and retained for future reference when necessary.

20. Follow up with the alleging harassee to:

   **a.** Advise him or her of the progress of the investigation.

   **b.** Ensure that the harassment has not resumed.

   **c.** Ensure that the alleging harassee has not suffered retaliation.

*Note:* Confidentiality is important to prevent libel, slander, or invasion of privacy claims.

## Interviewing the Alleged Harasser

Here are the steps to follow when you are interviewing the alleged harasser:

1. Contact the alleged harasser and set a time to meet with him or her. Do it promptly.

2. Advise the alleged harasser that this is an initial inquiry and that the purpose is to gather the facts. Emphasize that you take both the allegations and this IMIP seriously.

3. Advise the alleged harasser of the need for confidentiality and its limitations. You will maintain confidentiality to the greatest extent possible, but at certain points in the management inquiry, you may need to provide information that will identify him or her to the Manager, Human Resources (for HR and HQ field units, Manager, HR HQ), an EEO ADR specialist, or both.

4. Be fair and remain objective; remember the concept of "innocent until proven guilty."

5. Ask the alleged harasser open-ended questions in a non-accusatory manner to allow for elaboration.

6. Ask the alleged harasser to explain the incident (or incidents). Request a written statement. If the alleged harasser refuses to put something in writing, do not insist on a written statement either before or after you act. Obtain as many details as possible. Ask the alleged harasser, "Do you know of the incidents the alleging harassee is reporting?" Respond as follows, based on the alleged harasser's "response" or "answer".

   **a.** If he or she admits to the incident, determine:

      **1)** When and where the incident occurred.

      **2)** Specific details about the incident.

      **3)** Whether there were observers or whether the alleged harasser spoke to anyone else about the incident.

      **4)** How the alleging harassee reacted to his or her comments or actions.

   **b.** If he or she does not admit to the incident, determine:

      **1)** The alleged harasser's perception of his or her working relationship with the alleging harassee.

2)  The alleged harasser's perception of the reported incident.

3)  Whether the alleged harasser and alleging harassee socialize outside the workplace.

4)  The alleged harasser's perception of why the alleging harassee made the allegation.

5)  Whether the alleged harasser has recently taken any action relative to the alleging harassee that the alleging harassee found objectionable. Also, determine whether the alleging harassee suffered any adverse employment action or tangible job detriment.

7.  Repeat answers for clarification without changing what the alleged harasser says.

8.  Based on the answers provided, address new concerns and ask any additional questions, such as who, what, when, where, why, and how, and ask the following questions:

    a.  Are there other people I should talk to?

    b.  Were there other incidents that need to be discussed?

9.  Ask the alleged harasser to tell you in his or her own words how the alleging harassee reacted to his or her comments or actions.

10. Inform the alleged harasser of the possibility of disciplinary action that could result because of his or her actions.

11. Advise the alleged harasser that retaliation against the alleging harassee or anyone providing evidence is illegal and will not be tolerated. Advise him or her of the need to avoid contact with the alleging harassee until the inquiry is completed.

12. Thank the alleged harasser for responding, and invite him or her to come back if he or she has more facts to add.

13. Document the interview and send the information to the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ). You must document all cases involving allegations of harassment or inappropriate actions, including corrective actions taken, if the actions are serious, recurring, or both. You are not required to document the interview for a minor, single incident. However, you should make a personal note of the incident. You must keep personal notes confidential and retain them for future reference when necessary.

14. Keep the alleged harasser informed by establishing a time when you will get back to him or her. Keep the scheduled time, or make contact with him or her to reschedule if more time is needed.

## Interviewing the Witnesses

Here are the steps to follow when you are interviewing the witness (or witnesses):

1.  Assure the witness that his or her cooperation is important.

2.  Inform the witness of the need for confidentiality and its limitations. You will maintain confidentiality to the greatest extent possible, but at certain points in the management inquiry process, you may need to provide information that will identify him or her to the Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ), an EEO ADR specialist, or both.

3.  Share the seriousness of the allegation.

4.  Avoid giving details about the allegation. **Your job is to get details.**

5. Ask the witness what he or she knows of the incident. Get as many details as possible, such as who, what, when, where, why, and how, and ask the following questions:

   a. Were there other observers of the incident (or incidents)?

   b. How did the alleging harassee react?

   c. Has the witness spoken to anyone else about the incident?

   d. Is the witness aware of similar behavior by the alleged harasser toward other employees?

   e. Is the witness aware of any other improper conduct in the workplace?

6. Based on the answers provided, address new concerns and ask any additional questions, such as who, what, when, where, why, and how, and:

   a. Are there other people you should talk to?

   b. Are there other incidents that need to be discussed?

7. Advise the witness that retaliation against him or her for providing information on charges is illegal and will not be tolerated. Advise the witness to report any retaliation to you immediately.

8. Thank the witness for providing information and invite him or her to come back if he or she has more facts to add.

9. Document the interview and send the information to the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ). You must document all cases involving allegations of harassment or inappropriate actions. Your documentation should include corrective actions taken if the actions are serious, recurring, or both. You are not required to document the interview for a minor, single incident. However, you should make a personal note of the incident. You must keep personal notes confidential and retain them for future reference when necessary.

## Evaluating the Information

Here are the steps to follow when evaluating the information:

1. Determine your next step by reviewing your notes.

2. Assess the credibility of the information given by the alleging harassee, alleged harasser, and all witnesses. Stick to the facts. For example:

   a. Do the stories of the alleged misconduct match or come close?

   b. What is the chronology of events?

   c. Did the alleged harasser deny anything?

   d. Did the alleged harasser admit to anything?

   e. Did the alleged harasser contradict himself or herself?

3. Consider whether you need to conduct another interview to get missing information. Ask yourself these questions:

   a. Have I clarified all inconsistencies between the people interviewed?

   b. If not, what other questions need to be asked?

4. Ask yourself the following:

   a. Did behavior occur that was sexual or based on sex, race, religion, disability, etc.?

   b. Was the behavior unwelcome? Are all the facts based on observations and evidence rather than conclusions or assumptions?

Exhibit 10
Page 24 of 38

5. Consider:

   a. The nature and severity of the conduct. Was it hostile, abusive, or threatening toward members of one sex, race, religion, etc.?

   b. The effect of the conduct on the alleging harassee and on a reasonable person.

   c. The relationship of the two employees. Is there a difference in power (i.e., levels of employees in the organization)? Was there past, or is there present, romantic involvement? Is there an ongoing personal feud? Do the alleging harassee and alleged harasser get along well?

   d. Did the alleging harassee communicate, verbally or nonverbally, that the alleged harasser's conduct was unwelcome? Did the alleged harasser continue the conduct?

6. If the alleged harasser is a postmaster, manager, or supervisor, determine whether the alleging harassee suffered a significant change in employment status due to his or her reaction to the alleged harassment (e.g., demotion, denial of promotion, or discharge). Use the following questions to help determine the reasons:

   a. What reasons did the alleged harasser give for the personnel action (i.e., not to hire or promote or to give a poor performance evaluation or discipline)?

   b. Does the evidence support the alleged harasser's reasons for the personnel action?

7. If the alleged harassment is by a coworker, contractor, or other third party, assess whether management knew or should have known of the harassment.

   a. Did the alleging harassee tell the alleged harasser that his or her behavior was unwelcome? Did he or she continue? Who else received or participated in the alleged harassment?

   b. How widespread or pervasive was the conduct?

   c. Did the alleged misconduct occur in private or in public areas?

   d. Were other complaints lodged against the alleged harasser?

8. Confer with the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ) throughout the inquiry and resolution processes.

9. Determine corrective action in accordance with Postal Service policies, procedures, guidelines, rules, regulations, and bargaining agreements. Consult with your district or area Labor Relations office as applicable. It is critical that you be consistent in the application of discipline and Postal Service policies and procedures.

# Maintaining Confidentiality and Documenting the Inquiry

Some complaints can be resolved simply and directly between the parties without the need for a formal written record. You need to decide early in the process whether formal documentation is warranted. A good rule of thumb: **When in doubt, document.** Always remember that confidentiality is key.

To maintain confidentiality:

- Do **not** leave documents exposed on your desk or on your computer.

- Do **not** give documents or notes to anyone to type for you.

- Place all documents in a separate, locked personal file. If you do not have a locked file, get one! Do **not** file by any identifier. File as "inquiry" only.

- Do **not** place documents in any of the involved parties' personnel files.

- When the inquiry is completed, place all documents in a sealed envelope marked "CONFIDENTIAL — to be opened by Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ), ONLY." Sign your name on the seal.

- Send your documents to your applicable district or area Manager, Human Resources (for HQ or HQ field units, Manager, HR HQ) by Certified Mail service with Return Receipt. Store all management inquiry files in a central location at the applicable district or area Human Resources office. Keep the files for 4 years after the management inquiry is completed.

## Consulting With Human Resources and Taking Remedial Action

### Determination 1: Inquiry Is Inconclusive

1. If the inquiry is inconclusive:

   a. Report to the alleging harassee.

      1) Inform him or her that the investigation is inconclusive and why.

      2) Emphasize that if another incident occurs, he or she should report it immediately.

      3) Ask whether he or she feels able to continue to work in that area; if not, consult with your Manager, Human Resources, at the local or area office (for HQ and HQ field units, Manager, HR HQ) to explore the possibility of transfer or relocation.

      4) If appropriate, refer him or her to the Employee Assistance Program (EAP). The Postal Service EAP Hotline number is 1-800-EAP-4-YOU (1-800-327-4968) or TTY 1-888-325-2914.

   b. Report to the alleged harasser.

      1) Inform him or her that the investigation is inconclusive.

      2) Inform him or her that nothing was placed in his or her personnel folder.

      3) Advise him or her that if he or she engages in inappropriate behavior in the future, you will take disciplinary action.

      4) Emphasize that you will thoroughly investigate any other reported incidents.

      5) Advise the alleged harasser that it is illegal to retaliate against a person who has either made a complaint of harassment or who offers evidence in an investigation.

   c. Follow up and check in on the workplace to ensure that employees are aware of and are following appropriate standards of conduct.

      1) Seriously consider whether remedial training will address the issues raised in the inquiry. For example, depending on the circumstances, training in workplace harassment awareness and prevention, communication skills, or diversity could be effective in remedying workplace issues.

      2) Monitor the workplace and make your monitoring actions known to the workforce. This way, employees will be aware that you will not tolerate future misconduct. Let employees know that you are available as a resource should any misconduct occur in the future.

      3) Consider periodic stand-up talks or staff meetings as forums to reinforce your message that you will not tolerate harassment in the workplace.

## Determination 2: Harassment Has Not Occurred

**2.** If you find that harassment has not occurred:

    **a.** Inform both the alleging harassee and alleged harasser — separately — of the determination that harassment did not occur and the reasons for your conclusions.

    **b.** Ask whether the alleging harassee feels able to continue to work in that area; if not, then consult with your Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ), and explore the possibility of transfer or relocation.

    **c.** Deal promptly with any conduct other than harassment that needs improvement (e.g., rudeness, disparate treatment, or poor judgment).

    **d.** Advise the alleged harasser that retaliation is illegal.

    **e.** Follow up by monitoring the workplace to see that additional harassment, retaliation, or both does not occur and continue employee education. Consider whether workplace harassment training or EAP counseling would be helpful for the entire workgroup.

    **f.** Note the date and subject matter for your personal notes.

## Determination 3: Harassment or Improper Conduct Has Occurred

**3.** If you find that harassment or improper conduct has occurred, you must do the following for a:

    **a.** Minor, single incident:

        **1)** Stop the conduct. Resolve the problem. Take remedial action as necessary.

        **2)** Advise the alleged harasser that retaliation against any person for reporting or providing information on charges is illegal and will not be tolerated.

        **3)** Report results to the alleging harassee.

        **4)** Follow up in the workplace to see that additional harassment, retaliation, or both do not occur.

        **5)** Note the date and subject matter for your personal records or notes.

    **b.** Serious or recurring incident:

        **1)** Take prompt action to end current harassment or improper conduct and to deter it in the future. Concerning remedies, consult with the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ) and your Managing Counsel, Area, or the Managing Counsel, Employment and Labor Law (HQ), as appropriate.

        **2)** Fully document actions taken. Use the interview guidelines and forms in this publication.

        **3)** Advise the alleged harasser that retaliation against any person for reporting or providing information on charges is illegal and will not be tolerated. Take disciplinary action if appropriate.

        **4)** Make sure discipline is prompt and commensurate with the severity of the conduct. Remedial actions may include:

            **a)** Discussion.

            **b)** Remedial training.

            **c)** Letter of warning.

            **d)** Suspension.

            **e)** Transfer.

Manager's Guide to Understanding, Investigating, and Preventing Harassment

    **f)**  Demotion.

    **g)**  Discharge.

**5)** Restore the alleging harassee to achieve satisfactory resolution of the matter. For example, consider apologizing to the employee on behalf of the organization, including upper management.

**6)** Follow up and check the workplace to see that additional harassment or retaliation does not occur and continue employee education.

**7)** Submit your findings under confidential cover to the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ). Human Resources will keep files on the inquiry for 4 years. Human Resources will conduct annual reviews to ensure a work climate that is free from inappropriate and unlawful behavior.

Exhibit 10
Page 28 of 38

# Initial Management Inquiry Process Checklist

Before you finalize your Initial Management Inquiry Process (IMIP), make sure that you:

❏ Advise all parties of the need for confidentiality and its limitations.

❏ Advise all parties of your responsibility to conduct an inquiry and mention the potential for requesting further investigation by Human Resources.

❏ Investigate promptly. Conduct a thorough and impartial inquiry. Get detailed facts from the parties involved (e.g., who, what, when, where, why, and how). Follow all procedures in this publication and conduct a thorough, impartial inquiry. Use the guidelines in this publication for interviewing the alleging harassee, alleged harasser, and all witnesses. Use additional sheets as necessary.

❏ If you believe that immediate remedial action is necessary (e.g., separate employees and offer counseling), consult with the Manager, Human Resources, in your local district or area office (for HQ and HQ field units, Manager, HR HQ).

❏ Advise all parties that retaliation against any person for reporting or providing information on potential harassment is illegal and will not be tolerated.

❏ Follow up with the alleging harassee to advise on what he or she can expect to occur during the inquiry, and keep the alleging harassee advised of the progress of your inquiry.

❏ Remember that the inquiry is an ongoing process; invite all persons interviewed to come back if they have more facts to add.

❏ Take prompt disciplinary action where appropriate, after consulting with Labor Relations.

❏ Advise harassee of his or her rights with regard to resolving the complaint.

❏ Convey the Postal Service's commitment to eliminating harassment and your responsibility to see that a fair, impartial, prompt, and thorough investigation of the alleged misconduct takes place.

❏ Contact the Manager, Human Resources (or designee), promptly after receiving a complaint.

❏ When the IMIP is complete, submit all forms under confidential cover to the local district or area Manager, Human Resources (for HQ and HQ field units, Manager, HR HQ). The Manager, Human Resources, reviews the information to ensure that the inquiry is appropriately resolved.

Manager's Guide to Understanding, Investigating, and Preventing Harassment

# Workplace Harassment Interview Guidelines

## INTERVIEW WITH ALLEGING HARASSEE

Date: *(DD/MM/YYYY)*

### ALLEGING HARASSEE INFORMATION

**Name:** *(First Name, Last Name)*

Title:

Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

Tour and Hours of Duty:

Date(s) and time(s) the event(s) occurred:

***Note:*** Advise alleging harassee of your responsibility to see that a prompt and thorough management inquiry of the conduct takes place.

### CONTACT INFORMATION OF INDIVIDUALS WHO ALLEGEDLY COMMITTED HARASSMENT

**1. Name:** *(First Name, Last Name)*

Title:

Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

**2. Name:** *(First Name, Last Name)*

Title:

Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

**3. Name:** *(First Name, Last Name)*

Title:

Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

### INCIDENT / ACTION INFORMATION

Date of Alleged Incident/Action: *(DD/MM/YYYY)*

Describe specifically the incident(s) and the date(s) on which the incident(s) occurred.

---

Interview Form HE – Page 1 of 3

Workplace Harassment Interview Guidelines

26 | November 2018

00340

Publication 552

Exhibit 10
Page 30 of 38

Manager's Guide to Understanding, Investigating, and Preventing Harassment

## ALLEGING HARASSEE INFORMATION

Name of Harassee: *(First Name, Last Name)*                     Job Location: *(Name of Facility, Street, City, State, Zip Code)*

Was this an isolated event or a pattern of similar events or behavior?

What was your reaction?

How did this conduct or behavior affect you? How did it make you feel?

Can you continue to work at your current location?

Can you identify other individuals with knowledge of the alleged conduct at issue or of similar actions or behaviors by the charged individual(s) in the past? (Include observations, what people heard, and who you told about the events in question.)

Are there any documents or other physical evidence that may support the claim of the alleged occurrences? If so, identify them.

Manager's Guide to Understanding, Investigating, and Preventing Harassment

### ALLEGING HARASSEE INFORMATION

Name of Harassee: *(First Name, Last Name)*  Job Location: *(Name of Facility, Street, City, State, Zip Code)*

Have you previously complained about this or related acts of harassment to a supervisor or manager? If so, please identify the individual(s) to whom you complained, the date(s) of the complaint(s), and the resolution(s), if any.

Ask the alleging harassee how he or she would like the matter resolved.

Ask the alleging harassee if there is any question not asked that should have been, and if there is anything else about the allegations or any other information related to the inquiry that he or she would like to provide.

### FORMS AND FOLLOW UP

Submit all forms under confidential cover to the Manager, Human Resources, local district or area (for HQ and HQ field units, Manager, HR HQ) upon prompt completion of the management inquiry. The Manager, Human Resources, reviews the information to ensure appropriate resolution of the inquiry.

Manager's Guide to Understanding, Investigating, and Preventing Harassment

# INTERVIEW WITH ALLEGED HARASSER

Date: *(DD/MM/YYYY)*

## ALLEGED HARASSER INFORMATION

Name: *(First Name, Last Name)*

Title:

Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

Tour and Hours of Duty:

Dates of Interview: *(DD/MM/YYYY)*

## INCIDENT/ACTION INFORMATION – Provide a factual statement regarding the allegations.

Date of Alleged Incident/Action: *(DD/MM/YYYY)*

Do you recall the incident? If yes, then what is your recollection of the incident?

How did the alleging harassee react to your words or actions?

Can you identify any witness with knowledge of this incident, either directly or indirectly through you?

Can you identify any documents or other supporting evidence?

Is there any other information that should be considered in evaluating this case—e.g., perception of working relations with alleging harassee or perception of why the charge was made?

Interview Form HR – Page 1 of 2

Publication 552

Workplace Harassment Interview Guidelines

November 2018 | 29

00343

Exhibit 10
Page 33 of 38

Manager's Guide to Understanding, Investigating, and Preventing Harassment

## ALLEGED HARASSER INFORMATION

Name of Harasser: *(First Name, Last Name)*     Job Location: *(Name of Facility, Street, City, State, ZIP Code™)*

Has anyone ever made allegations of this type against you before? When? And where? Describe the circumstances, including whether the allegations were investigated and the outcome.

Have you ever been disciplined for improper conduct or harassment?

## FORMS

Submit all forms under confidential cover to the Manager, Human Resources, local district or area (for HQ and HQ field units, Manager, HR HQ) upon prompt completion of the management inquiry. The Manager, Human Resources, reviews the information to ensure appropriate resolution of the inquiry.

Interview Form HR – Page 2 of 2

Workplace Harassment Interview Guidelines

30 | November 2018

00344

Publication 552

Exhibit 10
Page 34 of 38

# INTERVIEWS WITH WITNESSES

Date: *(DD/MM/YYYY)*

## WITNESS INFORMATION

**Name:** *(First Name, Last Name)*

Title:

**Job Location:** *(Name of Facility, Street, City, State, ZIP Code™)*

Tour and Hours of Duty:

Length of time the witness has known the alleging harassee:

Length of time the witness has known the alleged harasser:

Date of Interview: *(DD/MM/YYYY)*

## INCIDENT/ACTION INFORMATION

**Provide a factual statement regarding the allegations, noting what you saw or heard, where and when the incident occurred, and anyone else who was there.**

Date of Alleged Incident/Action: *(DD/MM/YYYY)*

Do you recall the incident? If yes, then what is your recollection of the incident? Describe the parties' reactions.

Provide identities of other persons with knowledge of information relevant to this inquiry—either because (1) they are aware of similar behavior by the alleged harasser toward other employees, or (2) you spoke to anyone else about the incidents.

Provide any other information that should be considered in this case.

## FORMS

Submit all forms under confidential cover to the Manager, Human Resources, local district or area (for HQ and HQ field units, Manager, HR HQ) upon prompt completion of the management inquiry. The Manager, Human Resources, reviews the information to ensure appropriate resolution of the inquiry.

Interview Form W – Page 1 of 1

Workplace Harassment Interview Guidelines

00345

November 2018 | 31

Exhibit 10
Page 35 of 38

# Policy Statements, Regulations, and Publications

The following policy statements and publications are available on the Postal Service *PolicyNet* website. Go to *http://blue.usps.gov*. In the left-hand column, under "Essential Links", click *PolicyNet*. The direct URL for the Postal Service *PolicyNet* website is *http://blue.usps.gov/ cpim*.

- Memorandum of Policy (MOP) HR-03-29-2018, *Equal Employment Opportunity Policy Statement.*

- MOP HR-03-163-2017-2, *Postal Service Policy on Workplace Harassment.*

- *Employee and Labor Relations Manual,* Subchapter 660, Conduct*:*

  — 662, Federal Standards of Ethical Conduct

  — 665, Postal Service Standards of Conduct

- Publication (PUB) 552, *Manager's Guide to Understanding, Investigating, and Preventing Harassment.*

- PUB 553, *Employee's Guide to Understanding, Preventing, and Reporting Harassment.*

Exhibit 10
Page 37 of 38



Publication 552
PSN 7610-03-000-7591

Exhibit 10
Page 38 of 38

# Employee's Guide to Understanding, Preventing, and Reporting Harassment

November 2018



Handbook EL-312

Dear Postal Service Employee:

The United States Postal Service® wants you to know that harassment and other inappropriate conduct based on race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, age (40+), mental or physical disability, genetic information, past, present, or future uniformed (military) service), or in retaliation for previous Equal Employment Opportunity (EEO) or Uniformed Services Employment and Reemployment Rights Act (USERRA) activity will not be tolerated in the workplace. Although not every instance of inappropriate behavior may fit the legal definition of harassment, such behavior in the workplace undermines morale and violates the Postal Service's standards of conduct.

Publication 553 provides information about workplace harassment and inappropriate conduct. This is important because the only way to achieve a workplace free of harassment and inappropriate behavior is to make sure everyone knows what it is, what to do if it happens, and how to prevent it. You, as an employee, must do your part. Read and become familiar with this guide and report improper behavior.

The Supreme Court has ruled that workplace harassment is improper and unlawful. The law requires employers to take reasonable steps to end harassment in the workplace. If you feel you are being harassed, report it to your immediate supervisor or manager; another supervisor or manager; the manager of Human Resources; or a special agent of the Office of the Inspector General. Help is available, but you must do your part by reporting it.

Know your rights. Take responsibility.

Megan J. Brennan
Postmaster General, CEO

Exhibit 11
Page 2 of 16
00350

Employee's Guide to Understanding, Preventing, and Reporting Harassment

# What You Should Know About Workplace Harassment

## You have a right to work in an environment free of harassment.

The Postal Service is committed to providing its employees with a safe, productive, and inclusive workplace. To achieve a workplace free of harassment, the Postal Service wants to make sure that every employee knows what harassment is, what to do if it happens, and what they can do to prevent it. These three topics are covered in this publication.

Please also read the "Postal Service Policy on Workplace Harassment" which is available on the Postal Service's *PolicyNet* Web site.

Use these instructions to find the policy on the *PolicyNet* Web site:

- Go to *http://blue.usps.gov*.
- Under "Essential Links" in the left-hand column, click *PolicyNet.*
- Click on MOPs.
- The policy can be found under both the "Human Resources" and "Postmaster General" categories.

The direct URL for the Postal Service's *PolicyNet* Web site is *http://blue.usps.gov/cpim*.

Violation of the "Postal Service Policy on Workplace Harassment" may result in disciplinary action up to and including removal. Any inappropriate conduct, even that which does not meet the legal definition of harassment, may result in disciplinary action. Such inappropriate behavior in the workplace undermines morale and violates the Postal Service's policies and standards of conduct. See *Employee and Labor Relations Manual* (ELM) 660, Conduct, and 670, Diversity, Equal Employment Opportunity, and Affirmative Employment, and Handbook EL-312, *Employment and Placement,* Section 777, Enforcement of USERRA.

Employee's Guide to Understanding, Preventing, and Reporting Harassment

# What Harassment Is

Although it's a familiar term, harassment is not always easy to define. What one person might think of as harassing behavior, another may think of as kidding or joking around, or, if the harassment is sexual in nature, as mild, inoffensive flirtation. Harassment can cover a wide variety of behaviors. It may consist of words, actions, or, most often, a combination of the two. It can range from the display of derogatory cartoons to the crime of rape. In situations involving EEO prohibited activity, the victim may not be the only person who is harassed, but may be anyone who hears or witnesses the offensive conduct and is affected by it.

Under federal antidiscrimination laws, harassment is defined as unwelcome verbal or physical conduct that demeans or shows hostility or aversion toward an individual or group of individuals because of their race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status), national origin, age (40+), mental or physical disability, genetic information, past, present, or future uniformed (military) service, or in retaliation for EEO or USERRA activity. To be considered harassment under the law, the behavior must also (1) result in an intimidating, hostile, offensive work environment; (2) unreasonably interfere with an individual's work performance; or (3) otherwise adversely affect an individual's employment opportunities.

Harassment under the law is unwelcome conduct based on race, color, religion, sex (including pregnancy, sexual orientation, and gender identity, including transgender status),, national origin, age (40+), mental or physical disability, genetic information, past, present, or future uniformed (military) service, or in retaliation for previous EEO or USERRA activity that, in its totality, alters the terms, conditions, and privileges of employment, thereby violating the antidiscrimination laws.

Examples of harassment may include: (1) making offensive or derogatory comments, nicknames, or slurs; (2) engaging in negative stereotyping; or (3) engaging in physically

Exhibit 11
Page 4 of 16
00352
Publication 553 I **3**

threatening, intimidating, or humiliating actions. Harassment also may include circulating written or graphic material (by paper or email message or by making it viewable in the workplace) that belittles or shows hostility or aversion toward an individual or group.

However, the antidiscrimination statutes are not a "general civility code." Petty slights, simple teasing, annoying behavior, offhand comments, or isolated incidents (unless extremely serious) will not rise to the level of illegality. To be considered harassment under the law, the conduct must be so objectively offensive that it changes the "conditions" of the victim's employment. The Equal Employment Opportunity Commission describes two types of harassment that change the conditions of employment: (1) harassment that results in a tangible employment action; and (2) harassment that is so severe or pervasive that it creates a hostile work environment.

Sexual harassment includes obvious things such as an invitation to have sex in exchange for favors or unwelcome intimate touching, patting, or grabbing. It can also include less obvious behaviors such as making repeated comments about a person's appearance. Other behaviors — such as brushing up against someone, displaying sexually explicit pictures or email messages, and making frequent sexual comments or jokes — may also constitute sexual harassment.

Rape or other actions involving physical violence, force, or coercion are also criminal offenses. Report these immediately to local law enforcement agencies and the Postal Inspection Service.

## Two Types of Harassment Under the Law

### Tangible Employment Action or Quid Pro Quo Harassment

Tangible employment action harassment is the harassment of a subordinate by someone with supervisory authority that results in a tangible employment action. A tangible employment action is an action that significantly changes

Exhibit 11
Page 5 of 16

an employee's employment status, such as hiring, firing, promoting, demoting, changing work assignments, and reassigning an employee.

This is usually called "Quid Pro Quo" harassment. Quid pro quo means "something for something," and it usually involves sexual harassment. Following are examples of quid pro quo harassment: (1) a supervisor fires or demotes a subordinate because he or she rejects the supervisor's sexual demands; (2) a supervisor promotes a subordinate because he or she submits to the supervisor's sexual demands; or (3) a manager denies an applicant a promotion or assignment because the applicant frequently has military duty.

Quid pro quo harassment is the use of power and authority to alter an employee's job conditions or economic benefits because the employee or applicant either submits to or refuses to submit to the unwelcome demands of the person in authority. If a subordinate rejects the demands of a person in authority and the threat is not carried out, the threat of a tangible employment action in itself could constitute hostile environment harassment.

## Hostile Environment Harassment: Crossing the Line Between Social Nuisance and Harassment

Hostile environment harassment covers a broad range of behaviors and situations. It is most often defined as a pattern of continuing unwelcome behavior that unreasonably interferes with an employee's work performance or that creates an intimidating, hostile, or offensive work environment.

Examples of behavior that could result in a finding of hostile environment harassment include:

■ Using racially derogatory words, phrases, or nicknames.
■ Telling jokes or stories with national origin themes.
■ Making derogatory comments relating to and arising out of a person's military service.
■ Complaining about the person's absence to perform military service.

Exhibit 11
00354
Page 6 of 16    Publication 553 I 5

- Displaying posters or symbols offensive to individuals of a certain race, sex, national origin, religion, etc.
- Making derogatory or intimidating references to an employee's mental or physical impairment.
- Applying pressure for dates.
- Repeatedly requesting that an employee leave military service or ask to be excused from military duties.
- Making offensive remarks about a person's looks, clothing, or body parts.
- Whistling or catcalling.
- Using sexual innuendo.
- Spreading false rumors about a person's sex life.
- Blocking a person's path.
- Following a person continually (stalking).

Keep in mind that behavior which is not necessarily sexual in nature but which is nonetheless demeaning or abusive toward members of one sex may also constitute hostile environment harassment.

A single incident, unless it is severe, generally does not constitute harassment. The conduct must be severe or continuing and pervasive. Factors considered in a legal determination of hostile environment harassment include frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with work performance.

Determining whether the conduct at issue rises to the level of harassment is not easy. Behavior that is insensitive, juvenile, or boorish — even though it may be offensive to some people — may not constitute harassment as defined under the law. However, employees should not, and managers must not, tolerate inappropriate behavior in the workplace. The Postal Service does not condone inappropriate behavior.

## Who Is Protected From Harassment

Under the law, all employees are protected from harassment based on their race, color, religion, sex (including pregnancy,

sexual orientation, and gender identity, including transgender status), national origin, age (40+), mental or physical disability, genetic information, past, present, or future uniformed (military) service, or in retaliation for previous EEO or USERRA activity. Both men and women are protected from sexual harassment by the opposite or the same sex.

## The Problem of Perception

What one person considers offensive, another may consider harmless. Distinguishing between harassment and social insensitivity is very difficult. Unfortunately, the law does not provide a "bright-line rule" that identifies which comments and behaviors constitute harassment. However, if a "reasonable person" would find the behavior so offensive as to interfere with his or her work performance, then it is likely to be considered harassment. The Postal Service's policy is to act to stop any inappropriate behavior, investigate, and ensure that the inappropriate conduct does not recur — even if the behavior doesn't rise to the legal definition of harassment.

## Importance of Communicating That Words or Actions Are Unwelcome

If you are being harassed, you should let the harasser know in no uncertain terms to stop the behavior. If you are not able to do so alone, you could ask a friend, a union representative, or a trusted coworker to help you talk to the harasser. This does not mean that you have to confront the alleged harasser or put it in writing. For instances of sexual harassment, nonverbal behavior may be sufficient in some cases to communicate that the behavior is unwelcome. "No" means "no," whether it is communicated verbally or nonverbally. However, a clearly communicated verbal "no" is generally more effective in stopping harassment.

In all cases of harassment, you also should report the incident to your immediate supervisor or manager, to another supervisor or manager, or to the Manager of Human Resources.

Exhibit 11
00356
Page 8 of 16    Publication 553 I **7**

# Sexual Harassment and the Office Romance

The Postal Service strongly discourages supervisory and managerial employees from engaging in romantic and/or physical relationships with their subordinate employees. Perceptions of unfair treatment often arise under these circumstances and undermine employee morale.

When a supervisor or manager who engages in office romances appears to favor those with whom he or she is involved, the supervisor's or manager's behavior tends to foster a belief among other employees that their chances for advancement depend upon their willingness to engage in similar conduct with the supervisor or manager. Relationships between supervisors or managers and employees that are based on such a belief are not considered fully consensual. Therefore, to avoid allegations of harassment and/or unfair treatment, supervisors and managers should not engage in relationships with their subordinate employees.

# How to Tell If Your Behavior Amounts to Harassment

Sometimes actions intended as innocent fun may be perceived as harassing behavior. The line between harassment and overly friendly actions or joking around is often a fine one. The important distinction is that harassment is unwelcome. Also, keep in mind that your behavior may offend someone other than the person to whom it is directed.

The workplace should not be a place where people are subject to offensive comments, actions, or behavior. Be alert for signs, verbal or nonverbal, that your behavior is unwelcome. If you are unsure, consider asking.

# Inappropriate Behavior

Inappropriate behavior in the workplace, even if it does not rise to the legal definition of harassment, may violate the Postal Service's policies and/or standards of conduct. Inappropriate behavior often leads to incidents of harassment. Make sure that your behavior does not offend anyone.

If you are offended by someone else's behavior, report the behavior to your supervisor or manager so that it can be addressed. If the offending person is your supervisor or manager, report the behavior to another supervisor or manager, or to the Manager of Human Resources.

## What to Do If You Are Harassed

### First, Tell the Harasser to Stop!

Sometimes, people are unaware that their behavior is offensive or harassing until it is brought to their attention. Communicating your belief that the behavior is offensive and making it clear that you want it to stop may be sufficient to end the offensive or harassing behavior. Reminding people that harassment is illegal or inappropriate behavior can also help to reinforce your message.

If you are not comfortable confronting the harasser alone, ask a friend, union representative, or a trusted coworker to help you talk to the harasser. However, you are not required to tell the harasser to stop before reporting the matter to those in authority.

### Second, Report It!

Whether or not you get the harasser to stop, report harassing behavior to those in authority who are responsible for stopping the harassment, and who will make a record of it. You can write, or just talk, to any of the following:

- Your immediate supervisor or manager.
- Any supervisor or manager.
- The manager of Human Resources.
- A Special Agent of the Office of the Inspector General.
- A Postal Service Inspector, when you believe that criminal misconduct is involved.

If you are uncomfortable making a report yourself, you can ask a union representative or a coworker to speak to a manager on your behalf. The Postal Service will protect the confidentiality of harassment complaints to the extent possible.

Exhibit 11
00358
Page 10 of 16   Publication 553 I 9

Once you report the harassing behavior, it is management's responsibility to act to stop any inappropriate behavior, investigate, and ensure that harassing or inappropriate conduct does not recur — even if the behavior doesn't rise to the legal definition of harassment.

Keep a written record of everyone you speak to about the incident(s), including supervisors and witnesses and the dates you spoke to them. In some circumstances, you could lose your right to pursue a successful legal action if you fail to take advantage of these internal Postal Service procedures for reporting and resolving harassment complaints. To preserve all of your rights, use the process and report harassing behavior.

The Employee Assistance Program (EAP) is available to give you emotional support for problems that may result from being harassed. Contact an EAP counselor at 800-EAP-4-YOU (800-327-4968).

You also have the right to pursue a complaint through the EEO process. If you choose to do so, you must request EEO counseling, within 45 days of the act(s) giving rise to the claim, through the online Postal Service EEO efile application at *https://efile.usps.com*, or by writing to: NEEOISO – EEO Contact Center, PO Box 21979, Tampa, FL 33622-1979. Your filing must be timely, or you could lose your right to pursue your complaint under federal law.

You also have a right to pursue a complaint involving employment matters covered by USERRA to the Department of Labor, Veterans Employment and Training Service by calling toll free: 866-4-USA-DOL (866-487-2365). Deaf and Hard of Hearing employees can call toll free: 877-889-5627. Employees may also file a complaint with the Merit Systems Protection Board (MSPB) electronically at *https://e-appeal.mspb.gov*.

Bargaining unit employees also may seek relief through grievance-arbitration procedures. Some nonbargaining unit employees also may use the grievance procedures described in ELM 652.4, Other Appealable Actions.

Exhibit 11
00359
Page 11 of 16

## What Supervisors and Managers Must Do to Prevent Harassment

The law requires employers to take reasonable steps to end harassment in the workplace and to remedy the situation when harassment is found.

Managers or supervisors who receive information regarding a situation that may involve harassment are required to:

- Conduct a thorough inquiry, or ensure that the information reaches a manager or supervisor who has the authority to conduct the inquiry.
- Determine if the employees involved need to be moved apart.
- Take prompt action to put an end to the harassment.
- Follow up with corrective action when appropriate.

If you believe that a person to whom you have reported harassment has not taken prompt action, discuss the matter with another appropriate person. Even if you use the EEO or USERRA complaint process or another process, Postal Service management is still required to address your report of workplace harassment.

## What You Can Do to Prevent Harassment

You can help stop harassment in the workplace by the following actions:

- Do not condone harassment or inappropriate behavior by participating in the activity or remaining silent.
- Do not ignore teasing, jokes, remarks, or questions directed at you or at others that may be hurtful, inappropriate, or illegal.
- Ask the person or persons doing the harassing or behaving inappropriately to stop, even if the behavior is not directed at you.
- Report harassing behavior to your immediate supervisor or manager, another supervisor or manager, or the Manager of Human Resources.

Exhibit 11
00360
Page 12 of 16
Publication 553 | 11

Employee's Guide to Understanding, Preventing, and Reporting Harassment

When you report harassing behavior, those in authority
have the responsibility to see that a prompt and thorough
investigation is conducted and to remedy the situation.

*Help is available. Do your part. Take appropriate action.*

## Why You Need Not Fear Retaliation

Retaliation against an employee who raises a claim of
harassment, reports inappropriate conduct, or provides
evidence in an investigation is illegal and will not be
tolerated. As a Postal Service employee, you need to
understand that you are protected. Report retaliation to a
supervisor, manager, the Manager of Human Resources, or a
Special Agent of the Office of the Inspector General.

You also may initiate an EEO complaint by contacting the
EEO Centralized Intake Center to begin the EEO counseling
process or a USERRA complaint by contacting the
Department of Labor, Veterans Employment and Training
Service (DOL/VETS) or the Merit Systems Protection Board
(MSPB). Bargaining unit employees also may seek relief
through grievance-arbitration procedures. Some non-
bargaining unit employees also may use the grievance
procedures described in ELM 652.4, Other Appealable
Actions. ELM 666.3, Whistleblower Protection, describes
procedures for reporting allegations of reprisal for making
whistleblower-protected disclosures as described in ELM
666.18, Reprisal for Release of Information, to the Office of
Inspector General.

## When Harassment Becomes Assault

If you believe you are the victim of a criminal assault, sexual
or otherwise, contact local law enforcement and Postal
Service Inspectors and seek immediate medical attention.

## Contractors, Vendors, and Other Third Parties

Just as the Postal Service will not tolerate harassment by or
against its employees, it also will not tolerate harassment by
or against anyone in the workplace, including contractors,

00361
Exhibit 11
Page 13 of 16

vendors, and other third parties who may be in the workplace only temporarily. If you feel you are being harassed, you should report the incident to a manager, supervisor, or the Manager of Human Resources.

## Other Resources

For further assistance and support contact the following:

USPS EEO Centralized Intake Center
888-EEO-USPS (888-336-8777)

Deaf and Hard of Hearing Employees
888-325-2914

Office of Inspector General Hotline
888-USPS-OIG (888-877-7644)

Deaf and Hard of Hearing Employees
866-OIG-TEXT (866-644-8398)

You may also contact the Office of Inspector General Hotline by email at *hotline@uspsoig.gov*.

Department of Labor/Veterans Employment and Training Service
866-4-USA-DOL (866-487-2365)

Employer Support of the Guard
800-336-4590, select option 1

USPS Employee Assistance Hotline
800-327-4968

National Domestic Violence Hotline
800-799-7233

National Sexual Assault Hotline
800-656-4673

Exhibit 11
000363
Page 15 of 16



UNITED STATES POSTAL SERVICE ®

# Achieving a Violence-Free Workplace Together

## Workplace Violence Prevention Program

Publication 45
November 2011



## Postmaster General's Foreword

The Postal Service's Workplace Violence Prevention Program provides employees with resources and awareness of prevention and response measures. Everyone, every day, must do their part in maintaining a safe work environment by reporting all perceived acts of aggression, violence, or threats.

Patrick R. Donahoe
Postmaster General

## Workplace Violence Zero Tolerance Policy

Zero tolerance means that every act or threat of violence, regardless of the initiator, elicits an immediate and firm response. The response could result in corrective action, up to and including, removal of the offender from employment with the Postal Service.

The concept of zero tolerance is based on the belief that no employee should have to work in an atmosphere of fear and intimidation. Every threat and every act of inappropriate behavior must be addressed.

The zero tolerance policy provides the foundation for prevention, but that is only part of our prevention efforts and strategies.

Exhibit 12
00366
Page 2 of 6

## Workplace Violence Prevention

There are six organizational strategies for reducing workplace violence.

- **Selection.** Hire the right individual for the right job in the first place.
- **Security.** Ensure appropriate safeguards for employees, customers, and property.
- **Communication of policy.** Consistently communicate and enforce Postal Service policy regarding violent and inappropriate behavior.
- **Environment and culture.** Create a work setting and maintain an atmosphere that is perceived to be fair and free from unlawful and inappropriate behavior.
- **Employee support.** Ensure that managers, supervisors, and employees are aware of the resources available to assist them in dealing with the problems at work and at home.
- **Separation.** When separation is necessary, handle the process professionally, including assessing inappropriate behavior and potentially violent circumstances. See Publication 106, *Guide to Professional Parting,* for details on handling separations.



## Training and Development

The Postal Service offers a number of training courses and developmental initiatives designed to improve violence prevention efforts.

- **Workplace violence awareness training.** This course assists managers and supervisors in identifying behavioral warning signs of at-risk employees and potentially threatening situations.
- **Threat Assessment Teams (TATs).** Each district has a TAT, a cross-functional, multidisciplinary team, that assesses threatening situations and develops risk abatement plans to prevent violence.
- **TAT member training course.** This course is mandatory for TAT members, and it provides information on the threat assessment process and workplace violence prevention strategies. Updates are also provided to team members on workplace violence prevention statistics, research issues, and trends.
- **National Committee on Workplace Violence Prevention.** The committee brings field experts to provide oversight and recommendations on the maintenance, development, and enhancement of policies and procedures that guide the Workplace Violence Prevention Program.

## Postal Inspection Service

Callers can reach the appropriate Postal Inspection Service office by dialing 1-877-876-2455 from 8 a.m. to 4:30 p.m. in all time zones. After business hours, press Option No. 2, for Emergency situations, and your call is automatically routed to a special operator for assistance.

Exhibit 12
00368
Page 4 of 6

## Know Your Resources

- Human Resources
- Union Leadership
- Management Associations
- Threat Assessment Teams
- Medical Units
- Inspection Service
  877-876-2455 (24 Hours)
- Employee Assistance Program
  800-EAP-4YOU
  800-327-4968 (24 Hours)
  877-492-7341 TTY

**Your role in creating and maintaining a violence-free workplace is critical to our success.**

*What can you do?*

Choose to behave in a way that promotes a positive work environment. Act in a professional manner, even when you are having a bad day.

Report all threats to management officials, your Threat Assessment Team (TAT) or the Postal Inspection Service.

Remember that the Employee Assistance Program is available 24 hours a day for all postal employees and their families. The EAP provides crisis counseling, referral, and short-term counseling for all of life's challenges. Call for yourself or a family member.

Exhibit 12
00369
Page 5 of 6



## Workplace Violence Statistics

- Workplace violence is a problem worldwide and the third leading cause of death in the workplace.
- Most workplace violence is not reported.
- Men are statistically more likely to be victims of violence at work; however, homicide is the leading cause of work-related death for women.
- Domestic violence victims who are actively trying to leave the relationship are at an increased risk of being assaulted or stalked in the workplace.
- Workplace-related psychological aggression is far more prevalent than work-related physical violence.
- Employees in professional and service occupations reported the highest level of physical violence at work.

*References:*
E. Kelloway, J. Barling, and J. Hurrel, Jr.
*Handbook of Workplace Violence.*
Thousand Oaks, CA:
Sage Publications, 2006.
National Institute of
Occupational Safety and
Health, 2007.

Publication 45, November 2011
PSN 7610-02-000-9948
Exhibit 12
(0370)
Page 6 of 6

National EEO Investigative Services Office                                    June 04, 2021



ERIC J POWELEIT
18 MIAMIVIEW DR
LOVELAND OH 45140-2720

                                        **Agency Case Number: 4J-450-0002-21**

Dear ERIC J POWELEIT:

The investigation of the above referenced case has been assigned to:

                    MICHAEL COX, CONTRACT EEO INVESTIGATOR

The investigator will contact you regarding the investigation of the referenced complaint.  Any questions you may have regarding the investigation should be directed to the investigator.

The investigator may choose the method of conducting the interview and may use written interrogatories or a telephonic interview. If you have any questions or concerns about how the investigator is performing, please contact Jaime A. Witt, EEO Services Analyst, at the number below or by mail.

Sincerely,


_____
 Dino DeSorbo
 Manager, EEO Services

cc: Investigator Michael Cox
       EEO Services Analyst Jaime A. Witt


Jaime A. Witt
EEO Services Analyst
PO Box 21979
Tampa FL  33622-1979
Tel. (813) 739-2032
FAX: (813) 739-2098

National EEO Investigative Services Office

June 04, 2021

 **UNITED STATES POSTAL SERVICE**

MICHAEL COX

RE: Letter of Authorization

ERIC J POWELEIT
vs.
Louis DeJoy, Postmaster General
U.S. Postal Service
4J-450-0002-21

Dear Michael Cox :

You have been assigned to conduct an investigation of the complaint of discrimination referenced above. Enclosed is the formal complaint, report of counseling, and any related correspondence or documentation. Your investigation should be completed and returned to Jaime A. Witt, EEO Services Analyst, using the contact information below, in accordance wth the terms of the statement of work and the task order.

You are authorized to:

▶ Investigate all aspects of this complaint.

▶ Require all Postal employees to cooperate in the investigation (ELM 665.3)

▶ Require Postal employees who have knowledge of the issue(s) raised in the complaint to provide testimony in affidavit or under oath, affirmation, or penalty of perjury.

Sincerely,

Dino DeSorbo
Manager, EEO Services

cc: Jaime A. Witt
EEO Services Analyst
PO Box 21979
Tampa FL 33622-1979
Tel. (813) 739-2032
Fax:(813) 739-2098

 **UNITED STATES
POSTAL SERVICE**

## Litigation Hold Notice

This matter concerns the following: **Eric Poweleit 4J-450-0002-21, On January 21, 2021 his
Supervisor threatened him with discipline and then on February 17, 2021 he provided him
with the statement he wrote concerning the January 21st incident, which he believes
contains false information, Management put a lock on the women's restroom, the
Postmaster humiliated him, and the Postmaster informed him that he was being placed on
Emergency Placement**

I understand that I have been identified as an individual likely to have materials -- information,
documents, or physical objects -- relevant to this matter. I further understand that under the law,
the Postal Service, and its employees, have an obligation to preserve all evidence that is
potentially relevant to this complaint, including all documents, recordings, electronically stored
information, and physical objects. This obligation extends to materials that presently exist, as well
as to all potentially relevant materials that are created in the future. My signature on this
document indicates that I have complied with the obligations set out below.

**Search.** I have searched and identified all sources of information potentially related to this
dispute, including: hard copy files, desktop/laptop computers, network storage drives, removable
storage devices (e.g. CD/DVDs, USB Flash drives, memory sticks), Internet storage locations,
and personal digital assistants (PDAs).

**Save.** I have saved all materials that are potentially relevant to this complaint, including my
personal notes and email. Where I have found a hard copy and electronic copy of the same
document, I have preserved both versions. Either by myself, or with the assistance of Information
Technology staff, I have saved e-mail and any other electronically stored information, and have
taken steps to ensure that the files I have identified are preserved against automatic deletion.

**Segregate.** I have moved all hard copy documents, e-mails, and other electronically stored
information into separate electronic and hard copy folders that I have designated for this matter.
The electronic folders are on the Postal Service data network, not in Outlook or on my computer's
hard drive. I have moved my potentially relevant e-mails to this folder in order to avoid the
automatic deletion of e-mail in my Outlook account.

I will preserve, for five years from the date that I sign this Notice, all potentially relevant
information that presently exists, as well as potentially relevant materials created in the future,
unless I am notified by a representative of the Law Department that I am no longer required to
save this information, or that I must save it for a longer period.

_Jessica Maggard_
Signature

_Postmaster_
Title

_Jessica Maggard_
Print Name

_7/7/21_
Date

00373

Miscellaneous
Page 3 of 6

## Litigation Hold Notice

This matter concerns the following: **Eric Poweleit 4J-450-0002-21, On January 21, 2021 his Supervisor threatened him with discipline and then on February 17, 2021 he provided him with the statement he wrote concerning the January 21st incident, which he believes contains false information, Management put a lock on the women's restroom, the Postmaster humiliated him, and the Postmaster informed him that he was being placed on Emergency Placement**

I understand that I have been identified as an individual likely to have materials -- information, documents, or physical objects -- relevant to this matter. I further understand that under the law, the Postal Service, and its employees, have an obligation to preserve all evidence that is potentially relevant to this complaint, including all documents, recordings, electronically stored information, and physical objects. This obligation extends to materials that presently exist, as well as to all potentially relevant materials that are created in the future. My signature on this document indicates that I have complied with the obligations set out below.

**Search.** I have searched and identified all sources of information potentially related to this dispute, including: hard copy files, desktop/laptop computers, network storage drives, removable storage devices (e.g. CD/DVDs, USB Flash drives, memory sticks), Internet storage locations, and personal digital assistants (PDAs).

**Save.** I have saved all materials that are potentially relevant to this complaint, including my personal notes and email. Where I have found a hard copy and electronic copy of the same document, I have preserved both versions. Either by myself, or with the assistance of Information Technology staff, I have saved e-mail and any other electronically stored information, and have taken steps to ensure that the files I have identified are preserved against automatic deletion.

**Segregate.** I have moved all hard copy documents, e-mails, and other electronically stored information into separate electronic and hard copy folders that I have designated for this matter. The electronic folders are on the Postal Service data network, not in Outlook or on my computer's hard drive. I have moved my potentially relevant e-mails to this folder in order to avoid the automatic deletion of e-mail in my Outlook account.

I will preserve, for five years from the date that I sign this Notice, all potentially relevant information that presently exists, as well as potentially relevant materials created in the future, unless I am notified by a representative of the Law Department that I am no longer required to save this information, or that I must save it for a longer period.

_____
Signature

Title: _Supervisor, Customer Service_

_Bryan Mulholland_
Print Name

Date: _7/16/2021_


UNITED STATES
POSTAL SERVICE

## Litigation Hold Notice

This matter concerns the following: **Eric Poweleit 4J-450-0002-21, On January 21, 2021 his Supervisor threatened him with discipline and then on February 17, 2021 he provided him with the statement he wrote concerning the January 21st incident, which he believes contains false information, Management put a lock on the women's restroom, the Postmaster humiliated him, and the Postmaster informed him that he was being placed on Emergency Placement**

I understand that I have been identified as an individual likely to have materials -- information, documents, or physical objects -- relevant to this matter. I further understand that under the law, the Postal Service, and its employees, have an obligation to preserve all evidence that is potentially relevant to this complaint, including all documents, recordings, electronically stored information, and physical objects. This obligation extends to materials that presently exist, as well as to all potentially relevant materials that are created in the future. My signature on this document indicates that I have complied with the obligations set out below.

**Search.** I have searched and identified all sources of information potentially related to this dispute, including: hard copy files, desktop/laptop computers, network storage drives, removable storage devices (e.g. CD/DVDs, USB Flash drives, memory sticks), Internet storage locations, and personal digital assistants (PDAs).

**Save.** I have saved all materials that are potentially relevant to this complaint, including my personal notes and email. Where I have found a hard copy and electronic copy of the same document, I have preserved both versions. Either by myself, or with the assistance of Information Technology staff, I have saved e-mail and any other electronically stored information, and have taken steps to ensure that the files I have identified are preserved against automatic deletion.

**Segregate.** I have moved all hard copy documents, e-mails, and other electronically stored information into separate electronic and hard copy folders that I have designated for this matter. The electronic folders are on the Postal Service data network, not in Outlook or on my computer's hard drive. I have moved my potentially relevant e-mails to this folder in order to avoid the automatic deletion of e-mail in my Outlook account.

I will preserve, for five years from the date that I sign this Notice, all potentially relevant information that presently exists, as well as potentially relevant materials created in the future, unless I am notified by a representative of the Law Department that I am no longer required to save this information, or that I must save it for a longer period.

Signature _____

Title _Supervisor Customer Service_

Print Name _Lawrence L. Malone_

Date _7-13-2021_

 **UNITED STATES POSTAL SERVICE** ®

U.S. Postal Service®
## Agreement to Extend 30-Day EEO Counseling Process

| Case No. |
| --- |
| 4J-450-0002-21 |
| Date Initiated |
| February 17, 2020 |

In accordance with 29 C.F.R. §1614.105(e), I hereby agree to postpone the final interview and to extend the informal counseling process for a period up to 60 additional days. In signing this agreement, I understand that I retain my right to file a formal complaint if the matter(s) which I raised during counseling is not resolved within 90 calendar days from the date of my first contact with the EEO Office, and at anytime thereafter up to 15 calendar days after receiving my notice of right to file a discrimination complaint.

**Privacy Act Statement**

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service™ (USPS®) or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local, or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel. For more information regarding our privacy policies, visit *www.usps.com/privacypolicy.*

| Signature of Counselee | Print Name | Date |
| --- | --- | --- |
| E-SIGNED by Eric (Jamie) Poweleit on 2021-03-08 20:03:31 CST | Eric J. Poweleit | |

PS Form **2567-A,** March 2012

00376