UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC J. POWELEIT
*nka* Jamie Poweleit,

               Plaintiff,                     Case No. 1:22-cv-194
                                             JUDGE DOUGLAS R. COLE

      v.

LOUIS DEJOY,
*Postmaster General,*
*United States Postal Service*,

               Defendant.

## OPINION AND ORDER

Defendant Louis DeJoy, as Postmaster General of the United States Postal Service ("USPS"), moves to dismiss (Doc. 14) Plaintiff Eric (now known as "Jamie") Poweleit's Complaint (Doc. 1). For the reasons discussed below, the Court **DENIES** USPS's Partial Motion to Dismiss (Doc. 14).

## BACKGROUND

Poweleit is a rural carrier for the USPS in Loveland, Ohio, where she began working in 2006. (Doc. 1, #2–3). She is also a transgender female. (*Id.* at #2). Until early 2020, Poweleit identified as male, used masculine pronouns, and went by her given name, Eric. (*Id.* at #3). During that time, she had no documented disciplinary issues. (*Id.*).

In early 2020, Poweleit began dressing in a feminine manner, using feminine pronouns, asking her co-workers to refer to her as "Jamie" rather than Eric, and eventually using the women's restroom. (*Id.*). Poweleit alleges that, as a result, some

of her managers and co-workers began deadnaming her and referring to her with masculine pronouns even after she corrected them. (*Id.*). She also alleges that coworkers she previously considered friends began ostracizing her and accusing her of misconduct. (*Id.*).

In January 2021, for example, Poweleit recalls a coworker telling her about that coworker's suicidal thoughts. (*Id.*). While Poweleit and the coworker were speaking, Larry Malone, a supervisor, interrupted, dismissing Poweleit's concerns and telling the pair to return to work. (*Id.*). When Poweleit protested, Malone threatened her with discipline if she did not drop the issue. (*Id.* at #3–4). A few weeks later, Malone threatened Poweleit with punishment again; Malone claimed he had written a statement about what happened but would not press it if she stopped being disruptive. (*Id.* at #4). That same day, Poweleit contacted an Equal Employment Opportunity ("EEO") counselor to report that she was being "singled out" and threatened with discipline because of her gender identity. (*Id.*).

On April 2, USPS management installed a lock on the door to the women's restroom. (*Id.*). When Poweleit asked the postmaster, Jessica Maggard, about the lock, Maggard advised that some of Poweleit's female coworkers did not believe that Poweleit was female. (*Id.*). Maggard did inform her, however, that a lock would also be installed on the men's bathroom door. (*Id.*).

On April 5, Poweleit again complained to Maggard that the lock was discriminatory and that its installation had been motivated by Poweleit's status as a transgender woman. (*Id.*). Maggard cut Poweleit off and announced over the

2

intercom, while looking directly at her, that all employees had to return to their workstations. (*Id.* at #4–5). This made Poweleit feel "humiliated" and "sick." (*Id.* at #5). Poweleit filled out a sick leave form and left. (*Id.*).

Two days later, Poweleit complained to another supervisor, Bryan Mulholland, that she could not use the women's restroom because it was locked. (*Id.*). Mulholland advised Poweleit to use the men's room, again making her feel "humiliated." (*Id.*). Two days after that, on April 9, Poweleit complained to the Occupational Safety and Health Administration ("OSHA") about the locks on the bathroom doors. (*Id.*). Poweleit believes that this led OSHA to contact USPS and request that the locks be removed from both bathrooms. (*Id.*).

On April 13, Poweleit, Maggard, an EEO counselor, and others met in an attempt to mediate Poweleit's complaints. (*Id.*). That failed, and the next day, Maggard informed Powell that she had been placed on Emergency Placement (analogous to a suspension) and could not return to work. (*Id.*). Postal inspectors and law enforcement then questioned Poweleit at her home about a report (which Poweleit alleges is false) that she had threatened to blow up or burn down the post office. (*Id.*). The postal inspectors later determined that Poweleit had not intended any threat. (*Id.* at #5–6). Poweleit then lodged another EEO complaint, this one based on her suspension and the installation of the locks. (*Id.* at #6).

Then, on May 14, she filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*). That complaint alleged that

3

the USPS subjected her to discriminatory harassment based on her sex and status as

a transgender woman. She listed four specific events in support:

1) The January 21 incident where Malone threatened her with discipline and later (on February 17) showed her the statement he had written about that incident

2) The April 2 placing of a lock on the women's restroom

3) The April 5 humiliation by Maggard

4) The April 14 notification that she had been placed on Emergency Placement

(Doc. 14-1). Five days after she filed her formal EEOC complaint, Poweleit received

notice of USPS's intent to terminate her employment.[1] (Doc. 1, #6).

As part of the grievance process, the USPS investigated her complaint. She

requested a hearing before the EEOC as part of the investigation. That hearing was

scheduled for August 26. However, her case remained pending before the EEOC for

more than 180 days, so she filed the Complaint in this Court on April 8, 2022. *See* 29

C.F.R. § 1614.407(d). [2]

---

[1] Poweleit filed a grievance against the termination and was reinstated with back pay.

[2] The Court notes the existence of a published Sixth Circuit case that suggests that a potential plaintiff must first obtain a right-to-sue letter from the EEOC before filing suit in federal court. *Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003) (noting that "[i]t is only after these [administrative] procedures have been exhausted and the plaintiff has received a 'right-to-sue' letter, that she may pursue a claim in federal court"). However, the Court has identified no circumstances where such a requirement has been enforced against a federal employee plaintiff, and many courts have come out the opposite way. *See DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010) ("[A]s a substantive matter, [a federal employee] is not required to exhaust by securing a right-to-sue letter from the EEOC."); *see also Dellinger v. Potter*, No. 3:08-CV-00219, 2009 WL 2243834, at *5 (S.D. Ohio July 22, 2009) ("Unlike private employees, federal employees do not need a 'right-to-sue' letter from the EEOC to bring a de novo action.").

That said, the Sixth Circuit has also held the right-to-sue letter requirement, even if it applies, is a condition precedent to suit rather than a jurisdictional defect. *Parry v. Mohawk*

4

Poweleit asserts three counts: (1) harassment based on sex in violation of Title VII; (2) discrimination based on sex in violation of Title VII; and (3) retaliation in violation of Title VII. (Doc. 1, #6–8). The USPS moves to dismiss portions of Poweleit's claims for failure to exhaust administrative remedies. Specifically, the USPS seeks dismissal of any claims or portions of claims that arise from (1) the USPS's issuance of a Notice of Removal (termination) or (2) retaliation. (Doc. 14, #44). According to the USPS, this includes a portion of the first count. (*See id.* at #47 ("This first claim cannot proceed *to the extent that it relies upon allegations of the issuance of the Notice of Removal (termination) ….*") (emphasis added)). And it also includes the entirety of the second and third counts. (*See id.* (asserting that the "second claim" and the "third claim" "cannot proceed"). In short, the USPS believes that Poweleit's failure to press these two issues during the administrative proceedings precludes her from relying on either now in support of her claims.

## LAW AND ANALYSIS

A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citation omitted). Poweleit, then, "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* In making that assessment, the Court must "construe the

---

*Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). And either the parties or the court can waive a condition precedent. *Mallory v. Noble Corr. Inst.*, 45 F. App'x 463, 468 (6th Cir. 2002). Here, both parties agreed to waive the (potential) requirement that Poweleit have a right-to-sue letter. So the Court proceeds as if the caselaw required said letter and the parties waived the requirement.

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Generally, a Title VII plaintiff cannot bring claims that were not part of the original EEOC charge in a new lawsuit. *See* 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974). Such a rule both "giv[es] the employer information concerning the conduct about which the employee complains, as well as afford[s] the EEOC and the employer an opportunity to settle the dispute through conference conciliation, and persuasion." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).

Courts may, however, consider "claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). So if the facts at hand would "prompt the EEOC to investigate a different, uncharged claim," the plaintiff may bring suit. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). And the Court notes that it liberally construes pro se complaints, like Poweleit's before the EEOC. *Younis*, 610 F.3d at 362.

## A.    Notice of Removal/Termination

The USPS first argues that, if Poweleit's claims rely on the Notice of Removal (or her termination), the Court should dismiss those claims. This, the USPS argues, is because Poweleit did not bring a claim related to the Notice of Removal before the EEOC. It is obviously true that Poweleit's EEOC complaint did not mention the

Notice of Removal (or, of course, her termination). When Poweleit filed that complaint, she had not yet received the Notice and thus had not been terminated. The question then becomes whether her claim related to the Notice of Removal could reasonably grow out of an investigation of her original claim. *Id.* Poweleit believes she has met this burden; the USPS disagrees.

Although the Sixth Circuit has not spoken on this specific issue, other district courts looking at similar facts have allowed claims like Poweleit's. *See Morales v. NorthShore Univ. HealthSystem*, No. 20C2175, 2022 WL 313755, at *3 (N.D. Ill. Feb. 2, 2022) (finding that "termination claims could be reasonably expected to grow out of an investigation into [a plaintiff's] allegations involved in her suspension claims"); *see also Benard v. Washington County*, 465 F. Supp. 2d 461, 472 (W.D. Pa. 2006) (declining to dismiss a wrongful termination claim that was "based on the same facts as [the plaintiff's] unlawful suspension and retaliation claims").

Poweleit has the better argument here. The Court does not find it a stretch to think that an employee complaining about discrimination who is then suspended may also be terminated for escalating her complaints—especially when her employer had already refused to act on the discrimination in the first place, as Poweleit has alleged. Terminating Poweleit while suspended "[grew] out of the factual allegations" she put in her EEOC complaint. *See Younis*, 610 F.3d at 362.

## B.    Retaliation

The USPS also argues that Poweleit's retaliation claim should be dismissed. The Court disagrees here as well. In the Sixth Circuit, retaliation that grows out of a

separate EEOC charge is "reasonably expected" and thus does not require a separate EEOC filing. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002). And this makes sense. After all, "requiring a plaintiff to file a second EEOC charge for retaliation … could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." *Delisle v. Brimfield Twp. Police Dep't*, 94 F. App'x 247, 254 (6th Cir. 2004) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)) (cleaned up).

Poweleit filed her EEOC complaint on May 14. She received notice of the USPS's intent to terminate her employment only five days later. True enough, Poweleit did not check the box signifying a retaliation claim on her EEOC complaint form. But Poweleit did allege that Maggard "humiliate[d]" her on the intercom after she complained about the bathroom lock being added and that, after she complained more, the USPS placed her on an emergency placement program. (Doc. 1, #4–5). Far from discrete acts, Poweleit's EEOC complaint contains specific allegations of escalating discipline following her complaint of discrimination. Accepting Poweleit's alleged facts as accurate, she has "related facts to the EEOC which would have prompted an investigation into retaliation." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir. 1999). And the USPS could have reasonably expected that these events might lead to a retaliation claim.

The USPS's reliance on *Younis* and *Scott v. Eastman Chem. Co.*, 275 F. App'x 466 (6th Cir. 2008), is misplaced. In *Younis*, the Sixth Circuit found a retaliation

claim not foreseeable when there were no facts alluding to it in the original complaint, and the claimant had already been terminated before his EEOC complaint. 610 F.3d at 360, 362–63. As the Court just detailed, Poweleit's EEOC complaint makes a retaliation claim reasonably expected. And in *Scott*, the retaliation claim that the Court rejected occurred *four years* after the plaintiff filed her original EEOC charge. 275 F. App'x at 474. Here, Poweleit alleges that the USPS retaliated against her both for her claiming discrimination and for her EEOC complaint, and the USPS terminated her a mere five days after she filed her EEOC complaint. A retaliatory event five days after a complaint is far more expected than one made four years later. The merits of this claim remain to be seen, but Poweleit's retaliation claim can proceed. The USPS's Partial Motion to Dismiss (Doc. 14) is **DENIED**.

      **SO ORDERED.**

March 31, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

9